# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FELLOWES, INC., | Civil Action No.: 07 C 7237 |
| Plaintiff, | **DECLARATION OF NICHOLAS PETERS IN SUPPORT OF AURORA CORP. OF AMERICA'S MOTION TO DISMISS, TRANSFER, OR STAY THIS LAWSUIT** |
| vs. | |
| AURORA CORP. OF AMERICA, | |
| and, | Judge: Charles P. Kocoras |
| AURORA OFFICE EQUIPMENT, LTD. | Magistrate Judge: Arlander Keys |
| Defendants. | |

## DECLARATION OF NICHOLAS PETERS

I, Nicholas Peters, declare:

1.  I am an associate of Fitch, Even, Tabin & Flannery, attorneys of record for Defendant Aurora Corp. of America ("Aurora") in the above captioned matter.  I have personal knowledge of the following and if called upon I could and would competently testify thereto.

2.  Attached hereto as Exhibit "A" is a true and correct copy of the complaint filed by Aurora in the Central District of California, filed December 26, 2007, file stamped at 10:46 a.m.

3.  Attached hereto as Exhibit "B" is a true and correct copy of Fellowes, Inc.'s motion and memorandum in support of its motion to dismiss, transfer or stay the California action, filed on January 22, 2008.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration is executed on this __30th__ day of January, 2008 in Chicago, Illinois.


Nicholas Peters

DECLARATION OF NICHOLAS PETERS IN SUPPORT OF AURORA CORP. OF AMERICA'S
MOTION TO DISMISS, TRANSFER OR STAY THIS LAWSUIT

EVAN FINKEL #100673
evan.finkel@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 226-4058

WILLIAM P. ATKINS
william.atkins@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Telephone: 703.770.7900
Facsimile: 703.770.7901

Attorneys for Defendant
FELLOWES, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA CORP. OF AMERICA, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FELLOWES, INC., an Illinois corporation,<br><br>Defendant | ) Case No. CV 07-8306-GHK (AJWx)<br>)<br>) DEFENDANT'S MOTION TO<br>) DISMISS, TRANSFER, OR STAY<br>) THIS LAWSUIT OR,<br>) ALTERNATIVELY, FOR A MORE<br>) DEFINITE STATEMENT<br>)<br>) Before The Honorable George H. King<br>) Hearing:   February 25, 2008<br>) Time:      9:30 a.m.<br>) CrtRm:     650 |

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2008 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable

George H. King.  Defendant  Fellowes, Inc. moves this Court for an Order dismissing this case.

A patent issued on December 25, 2007 to Fellowes, Inc. ("Fellowes").  The next day, Fellowes filed a patent infringement case in the United States District Court for the Northern District of Illinois.  That same day, the plaintiff in this present case, Aurora Corp. of America ("Aurora America"), also filed this declaratory judgment action.  Fellowes now files motions to dismiss, transfer, or stay this lawsuit, or alternatively, for a more definite statement.

Fellowes moves this Court for an Order dismissing this case by declining to accept plaintiff's request for a declaratory judgment under 28 U.S.C. § 2201 or, transferring it to the United States District Court for the Northern District of Illinois for consideration under 28 U.S.C. § 1404(a).  In the alternative, Fellowes moves for a stay of this case while the Illinois case proceeds.

Should these motions be denied Fellowes moves for a dismissal under Rule 12(b)(6) due to the inadequacy of the complaint.  If the case is not dismissed or transferred, Fellowes seeks a more definite statement regarding the scant allegations of unenforceability and invalidity.

Fellowes' Illinois case includes the patent which is at issue in this present California case as well as a second Fellowes' patent that was not included here.  These two patents are asserted in the Illinois case against Aurora America and its related manufacturing entity.

Aurora America's case appears to be focused on invalidity of the patent and unenforceability.  These are causes of action that center on what an  Illinois inventor and/or his attorney knew or did not know and publicly available information.

The convenience of the parties and witnesses and the interests of justice will be furthered by dismissing this declaratory action or transferring the case to the Northern District of Illinois, which has a greater significant connection to the dispute.  Fellowes has its headquarters there, along with its New Product Development team, which

includes two of the three inventors. The third inventor is not a Fellowes' employee but also lives in the Northern District of Illinois. The company's and inventor's documents are located there as well. One of Aurora's customers, United Stationers, Inc., is also located there, as is the Underwriters Laboratory, Inc. which approves items like paper shredders for sale in the United States.

The grounds for this motion are more fully set forth in Fellowes' Memorandum of Law in Support and in supporting affidavits, which are being filed concurrently with this document.

Dated: January 22, 2008    PILLSBURY WINTHROP SHAW PITTMAN LLP
EVAN FINKEL
WILLIAM P. ATKINS


By: /s/ _____
        Evan Finkel
        William P. Atkins
        Attorneys for Defendant
        FELLOWES, INC.

1
**WANG, HARTMANN & GIBBS, P.C.**
A Professional Law Corporation
2   Richard F. Cauley (SBN: 109194)
Franklin E. Gibbs (SBN: 189015)
3   Erick P. Wolf (SBN: 224906)
1301 Dove Street, Suite 1050
4   Newport Beach, CA 92660
Telephone: (949) 833-8483
5   Facsimile: (949) 833-2281

6

7   Attorneys for Plaintiff

8                **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
9

10  AURORA CORP. OF AMERICA, a         Case No.   CV07-8306 GHK (AJWx)
Delaware corporation,
11                                     COMPLAINT FOR:
Plaintiff,
12                                     1. DECLARATORY JUDGMENT OF
NON-INFRINGEMENT; AND
13  vs.                                2. DECLARATORY JUDGMENT OF
INVALIDITY;
14
15  FELLOWES, INC., an Illinois        DEMAND FOR JURY TRIAL
corporation,
16
17                 Defendant.

18

19
20       Plaintiff Aurora Corp. of America ("Aurora"), for its complaint against

21  Defendants Fellowes, Inc. ("Fellowes"), states as follows:

22
**NATURE OF THE ACTION**
23
24       1.      This is an action for declaratory relief regarding invalidity and non-

25  infringement of U.S. Patent No. 7,311,276 ("the '276 Patent"), a true and correct

26  copy of which is attached as Exhibit 1, to this Complaint.

27

28

- 1 -
**COMPLAINT**

1

**PARTIES**

2      2.    Plaintiff Aurora is a Delaware corporation with a principal place of

3  business at 3500 Challenger Street, Torrance, CA 90503.

4      3.    Defendant Fellowes is an Illinois corporation with a principal place of

5  business at 1789 Norwood Ave., Itasca, IL 60143.

6

7

**JURISDICTION AND VENUE**

8      4.    This action seeks declaratory judgment under the Declaratory

9  Judgment Act, 28 U.S.C. § 2201 et seq. and under the Patent Laws of the United

10  States, including 35 U.S.C. § 1 et seq. It presents an actual case or controversy

11  under Article III of the United States Constitution and serves a useful purpose in

12  clarifying and settling the legal rights at issue.

13      5.    This Court has subject matter jurisdiction over this action under 28

14  U.S.C. Sections 1331 and 1338(a).

15      6.    This Court has personal jurisdiction over Fellowes as, it solicits,

16  transacts, and is regularly doing business within California and this District.

17      7.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c)

18  and/or 1400(b).

19

20

**FACTS**

21      8.    On May 30, 2007, attorneys for Fellowes sent Aurora a cease and

22  desist letter alleging that Aurora's shredders marketed under the Touchguard name

23  incorporated Fellowes' Safe Sense® technology which is allegedly the subject of

24  U.S. Patent Publication Nos. 2006-0054725 A1 and 2006-0054724 A1 (which

25  issued into the '276 Patent). The letter demanded that Aurora cease sales of the

26  allegedly infringing shredders prior to the time the patent issued. A true and

27  correct copy of this letter is attached as Exhibit 2.

28

**COMPLAINT**

1     9.     On June 8, 2007, Tai-Hoon Matlin, one of the '276 Patent's

2  inventors, declared in a second declaration to the PTO, that Aurora shredder Model

3  No. AS1019CS was covered by each and every limitation of at least claims 1, 5,

4  and 6 of the present application (which issued into the '276 Patent).  A true and

5  correct copy of the Second Declaration of Tai-Hoon Matlin is attached as Exhibit 3

6  ("Second Matlin Declaration").

7     10.    Fellowes incorporated the Second Matlin Declaration into its August

8  2, 2007 Request for Reconsideration submitted to the PTO, using it to overcome an

9  obviousness objection as "additional evidence of non-obviousness," specifically

10  "copying and adoption of invention by others."  See "Remarks" section of Request

11  for Reconsideration at p. 25-26, a true and correct copy of which is attached as

12  Exhibit 4.

13

14             **First Cause of Action**

15       **(Declaratory Judgment of Non-Infringement)**

16     11.    Aurora repeats and realleges paragraphs 1 through 10 as though fully

17  set forth herein.

18     12.    Fellowes has claimed that Aurora's shredding products including

19  Aurora shredder Model No. AS1019CS infringe the '276 Patent and has

20  demanded that Aurora cease and desist offering to sell these products in the United

21  States.

22     13.    An actual, present, and justiciable controversy has arisen between

23  Fellowes and Aurora concerning Aurora's right to sell its shredding products

24  including Aurora shredder Model No. AS1019CS in the United States.

25     14.    Aurora seeks declaratory judgment from this Court that its shredding

26  products including Aurora shredder Model No. AS1019CS do not infringe the '276

27  Patent.

28

**COMPLAINT**

## <u>Second Cause of Action</u>

## <u>(Declaratory Judgment of Invalidity)</u>

15. Aurora repeats and realleges paragraphs 1 through 14 as though fully set forth herein.

16. Fellowes claim that the '276 Patent is valid and enforceable, while Aurora believes the '276 Patent is invalid and unenforceable.

17. An actual, present, and justiciable controversy has arisen between Fellowes and Aurora concerning the validity and enforceability of the '276 Patent.

18. Aurora seeks declaratory judgment from this Court that the '276 Patents is invalid and unenforceable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Aurora requests that the Court grant the following relief:

A. A declaratory judgment against Fellowes that Aurora's shredding products including Aurora shredder Model No. AS1019CS do not infringe the '276 Patent;

B. A declaratory judgment against Fellowes that the '276 Patent is invalid and unenforceable;

C. Attorneys' fees;

D. Costs; and

E. For such other and further relief as the Court may deem proper.

Dated: December 26, 2007

WANG, HARTMANN & GIBBS
A Professional Law Corporation

By: _____
Richard F. Cauley
Franklin E. Gibbs
Erick P. Wolf
Attorneys for Plaintiff

- 4 -

COMPLAINT

1                           **DEMAND FOR JURY TRIAL**

2

       Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal

3 Rules of Civil Procedure.

4

5 Dated: December 26, 2007               WANG, HARTMANN & GIBBS

6                              A Professional Law Corporation

7                By:

8                            Richard F. Cauley

9                            Franklin E. Gibbs

                           Erick P. Wolf

10                            Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

# Exhibit 1

**Exhibit 1**



US007311276B2

(12) **United States Patent**     (10) **Patent No.:**   **US 7,311,276 B2**

Matlin et al.     (45) **Date of Patent:**     **Dec. 25, 2007**

(54) **SHREDDER WITH PROXIMITY SENSING SYSTEM**

(75) Inventors: **Tai hoon K Matlin**, Round Lake Beach, IL (US); **Eric Gach**, Mount Prospect, IL (US)

(73) Assignee: **Fellowes Inc.**, Itasca, IL (US)

(\*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 17 days.

(21) Appl. No.: **10/937,304**

(22) Filed: **Sep. 10, 2004**

(65) **Prior Publication Data**

US 2006/0054724 A1    Mar. 16, 2006

(51) **Int. Cl.**
*A01F 21/00* (2006.01)
*B02C 23/00* (2006.01)
*B23Q 11/00* (2006.01)

(52) **U.S. Cl.** ..................................... **241/37.5**; 241/236

(58) **Field of Classification Search** .............. 241/37.5, 241/236

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,619,537 A | 11/1971 | Nara et al. | |
| 3,764,819 A | 10/1973 | Muller | |
| 3,829,850 A | 8/1974 | Guetersloh | |
| 3,947,734 A * | 3/1976 | Fyler ............................ | 361/181 |
| 4,352,980 A | 10/1982 | Hibari | |
| 4,683,381 A | 7/1987 | Dufoug | |
| 5,081,406 A | 1/1992 | Hughes et al. | |
| 5,166,679 A | 11/1992 | Vranish et al. | |
| 5,186,398 A | 2/1993 | Vigneaux, Jr. | |
| 5,345,138 A | 9/1994 | Mukaidono et al. | |
| 5,397,890 A | 3/1995 | Schueler et al. | |
| 5,494,229 A | 2/1996 | Rokos | |
| 5,850,342 A | 12/1998 | Nakamura et al. | |

| | | | |
|---|---|---|---|
| D412,716 S | 8/1999 | Kroger | |
| 5,942,975 A | 8/1999 | Sorensen | |
| 6,065,696 A | 5/2000 | Tsai | |
| 6,079,645 A * | 6/2000 | Henreckson et al. ........ | 241/37.5 |
| 6,265,682 B1 | 7/2001 | Lee | |
| 6,376,939 B1 | 4/2002 | Suzuki et al. | |
| 6,418,004 B1 | 7/2002 | Mather et al. | |
| 6,655,943 B1 * | 12/2003 | Peterson et al. ............ | 425/114 |
| 6,676,460 B1 | 1/2004 | Motsenbocker | |
| 6,724,324 B1 * | 4/2004 | Lambert ...................... | 341/33 |
| 6,813,983 B2 | 11/2004 | Gass et al. | |
| 6,826,988 B2 | 12/2004 | Gass et al. | |
| 6,857,345 B2 | 2/2005 | Gass et al. | |
| 6,877,410 B2 | 4/2005 | Gass et al. | |
| 6,880,440 B2 | 4/2005 | Gass et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 33 13 232 | 10/1984 |

(Continued)

OTHER PUBLICATIONS

SEM Advertisement for LK-3 Automatic Oiling System.

(Continued)

*Primary Examiner*—Bena Miller
(74) *Attorney, Agent, or Firm*—Pillsbury Winthrop Shaw Pittman LLP

(57) **ABSTRACT**

The present invention relates to a shredder that includes a proximity sensing system to sense the presence of a person, animal, or object near cutting elements of the shredder.

**114 Claims, 9 Drawing Sheets**



## US 7,311,276 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,920,814 B2 | 7/2005 | Gass et al. | |
| 6,979,813 B2 * | 12/2005 | Avril | 250/221 |
| 7,040,559 B2 | 5/2006 | Matlin et al. | |
| 2002/0017175 A1 | 2/2002 | Gass et al. | |
| 2002/0017176 A1 | 2/2002 | Gass et al. | |
| 2002/0017178 A1 | 2/2002 | Gass et al. | |
| 2002/0017179 A1 | 2/2002 | Gass et al. | |
| 2002/0017180 A1 | 2/2002 | Gass et al. | |
| 2002/0017181 A1 | 2/2002 | Gass et al. | |
| 2002/0017182 A1 | 2/2002 | Gass et al. | |
| 2002/0017184 A1 | 2/2002 | Gass et al. | |
| 2002/0017336 A1 | 2/2002 | Gass et al. | |
| 2002/0020261 A1 | 2/2002 | Gass et al. | |
| 2002/0020262 A1 | 2/2002 | Gass et al. | |
| 2002/0020263 A1 | 2/2002 | Gass et al. | |
| 2002/0020265 A1 | 2/2002 | Gass et al. | |
| 2002/0020271 A1 | 2/2002 | Gass et al. | |
| 2002/0056348 A1 | 5/2002 | Gass et al. | |
| 2002/0056349 A1 | 5/2002 | Gass et al. | |
| 2002/0056350 A1 | 5/2002 | Gass et al. | |
| 2002/0059853 A1 | 5/2002 | Gass et al. | |
| 2002/0059854 A1 | 5/2002 | Gass et al. | |
| 2002/0059855 A1 | 5/2002 | Gass et al. | |
| 2002/0066346 A1 | 6/2002 | Gass et al. | |
| 2002/0069734 A1 | 6/2002 | Gass et al. | |
| 2002/0170399 A1 | 11/2002 | Gass et al. | |
| 2002/0170400 A1 | 11/2002 | Gass | |
| 2002/0190581 A1 | 12/2002 | Gass et al. | |
| 2003/0002942 A1 | 1/2003 | Gass et al. | |
| 2003/0005588 A1 | 1/2003 | Gass et al. | |
| 2003/0015253 A1 | 1/2003 | Gass et al. | |
| 2003/0019341 A1 | 1/2003 | Gass et al. | |
| 2003/0020336 A1 | 1/2003 | Gass et al. | |
| 2003/0037651 A1 | 2/2003 | Gass et al. | |
| 2003/0056853 A1 | 3/2003 | Gass et al. | |
| 2003/0058121 A1 | 3/2003 | Gass et al. | |
| 2003/0090224 A1 | 5/2003 | Gass et al. | |
| 2003/0131703 A1 | 7/2003 | Gass et al. | |
| 2003/0140749 A1 | 7/2003 | Gass et al. | |
| 2003/0196824 A1 | 10/2003 | Gass et al. | |
| 2004/0008122 A1 * | 1/2004 | Michael | 340/686.1 |
| 2004/0040426 A1 | 3/2004 | Gass et al. | |
| 2004/0163514 A1 | 8/2004 | Gass et al. | |
| 2004/0173430 A1 | 9/2004 | Gass | |

| | | |
|---|---|---|
| 2004/0194594 A1 | 10/2004 | Dils et al. |
| 2004/0226800 A1 | 11/2004 | Pierga et al. |
| 2005/0039586 A1 | 2/2005 | Gass et al. |
| 2005/0039822 A1 | 2/2005 | Gass et al. |
| 2005/0041359 A1 | 2/2005 | Gass |
| 2005/0066784 A1 | 3/2005 | Gass |
| 2005/0103510 A1 | 5/2005 | Gass et al. |
| 2005/0139051 A1 | 6/2005 | Gass et al. |
| 2005/0139056 A1 | 6/2005 | Gass et al. |
| 2005/0139057 A1 | 6/2005 | Gass et al. |
| 2005/0139058 A1 | 6/2005 | Gass et al. |
| 2005/0139459 A1 | 6/2005 | Gass et al. |
| 2005/0155473 A1 | 7/2005 | Gass |
| 2005/0166736 A1 | 8/2005 | Gass et al. |
| 2006/0091247 A1 | 5/2006 | Matlin |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 86 19 856.4 | 10/1988 |
| DE | 41 21 330 | 1/1993 |
| EP | 855 221 A | 7/1998 |
| JP | 52-11691 | 1/1977 |
| JP | 57-76734 | 5/1982 |
| JP | 04-157093 | 5/1992 |
| JP | 040180852 | 6/1992 |
| JP | 6-277548 | 10/1994 |
| JP | 7-299377 | 11/1995 |
| JP | 9-262491 | 10/1997 |
| JP | 11-216383 | 8/1999 |
| JP | 20000346288 | 12/2000 |
| JP | 2004321993 | 11/2004 |
| WO | WO2005070553 | 8/2005 |

### OTHER PUBLICATIONS

Advertisement for Auto-Lube.
1st Paper Shredder—Advertisement for DAHLE Automatic Oiler/Paper Shredder Oiling Accessory.
Instructions for Installing a Shredder Oiling System from www.compax.com.
Full-Size Picture of Shredder with LK-3 Oiling System.
International Search Report and Written Opinion for PCT/US2005/028290 dated Nov. 21, 2005.
Ti's Digital Signal Controllers Put Brake On SawStop Table Saw, Feb. 9, 2005, pp. 1-3 (printed from www.embeddedstar.com/press/content/2005/2/embedded17827.html).

* cited by examiner



*FIG. 1*



FIG. 2



FIG. 3



FIG. 4

Case 2:07-cv-08306-JFK-AJW Document 1 Filed 03/22/2007 Page 19 of 42



FIG. 5



**FIG. 6**



FIG. 7



FIG. 8



FIG. 9

US 7,311,276 B2

1
2

## SHREDDER WITH PROXIMITY SENSING SYSTEM

### FIELD OF THE INVENTION

The present invention relates to shredders for destroying articles, such as documents, CDs, etc.

### BACKGROUND OF THE INVENTION

Shredders are well known devices for destroying articles, such as documents, CDs, floppy disks, etc. Typically, users purchase shredders to destroy sensitive articles, such as credit card statements with account information, documents containing company trade secrets, etc.

A common type of shredder has a shredder mechanism contained within a housing that is removably mounted atop a container. The shredder mechanism typically has a series of cutter elements that shred articles fed therein and discharge the shredded articles downwardly into the container. It is generally desirable to prevent a person's or animal's body part from contacting these cutter elements during the shredding operation.

The present invention endeavors to provide various improvements over known shredders.

### SUMMARY OF THE INVENTION

One aspect of the present invention provides a shredder comprising a housing, a shredder mechanism including a motor and cutter elements, a proximity sensor, and a controller. The shredder mechanism enables articles to be shredded to be fed into the cutter elements, and the motor is operable to drive the cutter elements so that the cutter elements shred the articles fed therein.

The housing has an opening enabling articles to be fed therethrough into the cutter elements of the shredder mechanism for shredding. The proximity sensor is located adjacent the opening and configured to indicate the presence of a person or animal in proximity to the opening. The controller is operable to perform a predetermined operation (e.g., to disable the shredder mechanism) responsive to the indicated presence of the person or animal.

Another aspect of the invention provides a shredder with a proximity sensor that includes an electroconductive element and circuitry to sense a state of the electroconductive element. The proximity sensor is configured to indicate a change in the state of the electroconductive element corresponding to a change in capacitance caused by a person or animal approaching in proximity to the electroconductive element. A controller of the shredder is operable to perform a predetermined operation responsive to the indicated change in the state of the electroconductive element.

Other objects, features, and advantages of the present invention will become apparent from the following detailed description, the accompanying drawings, and the appended claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a shredder constructed in accordance with an embodiment of the present invention;

FIG. 2 is an exploded perspective view of the shredder of FIG. 1;

FIG. 3 is a perspective view of a shredder constructed in accordance with an embodiment of the present invention;

FIGS. 4-7 are cross-sectional views each showing a shredder housing, opening, cutting elements, and conductor configuration for a sensor in accordance with various embodiments of the present invention; and

FIGS. 8 and 9 illustrate example capacitive sensor circuits according to respective embodiments of the present invention.

### DETAILED DESCRIPTION OF THE ILLUSTRATED EMBODIMENTS

FIGS. 1 and 2 illustrate a shredder constructed in accordance with an embodiment of the present invention. The shredder is generally indicated at 10. The shredder 10 sits atop a waste container, generally indicated at 12, which is formed of molded plastic or any other material. The shredder 10 illustrated is designed specifically for use with the container 12, as the shredder housing 14 sits on the upper periphery of the waste container 12 in a nested relation. However, the shredder 10 may also be designed so as to sit atop a wide variety of standard waste containers, and the shredder 10 would not be sold with the container. Likewise, the shredder 10 could be part of a large freestanding housing, and a waste container would be enclosed in the housing. An access door would provide for access to and removal of the container. Generally speaking, the shredder 10 may have any suitable construction or configuration and the illustrated embodiment is not intended to be limiting in any way.

The shredder 10 includes a shredder mechanism 16 including an electrically powered motor 18 and a plurality of cutter elements (not shown). "Shredder mechanism" is a generic structural term to denote a device that shreds articles using cutter elements. Such shredding may be done in any particular way. The cutter elements are mounted on a pair of parallel rotating shafts (not shown). The motor 18 operates using electrical power to rotatably drive the shafts and the cutter elements through a conventional transmission 23 so that the cutter elements shred articles fed therein. The shredder mechanism 16 may also include a sub-frame 21 for mounting the shafts, the motor 18, and the transmission 23. The operation and construction of such a shredder mechanism 16 are well known and need not be described herein in detail. Generally, any suitable shredder mechanism 16 known in the art or developed hereafter may be used.

The shredder 10 also includes the shredder housing 14, mentioned above. The shredder housing 14 includes top wall 24 that sits atop the container 12. The top wall 14 is molded from plastic and an opening 26 is located at a front portion thereof. The opening 26 is formed in part by a downwardly depending generally U-shaped member 28. The U-shaped member 28 has a pair of spaced apart connector portions 27 on opposing sides thereof and a hand grip portion 28 extending between the connector portions 27 in spaced apart relation from the housing 14. The opening 26 allows waste to be discarded into the container 12 without being passed through the shredder mechanism 16, and the member 28 may act as a handle for carrying the shredder 10 separate from the container 12. As an optional feature, this opening 26 may be provided with a lid, such as a pivoting lid, that opens and closes the opening 26. However, this opening in general is optional and may be omitted entirely. Moreover, the shredder housing 14 and its top wall 24 may have any suitable construction or configuration.

The shredder housing 14 also includes a bottom receptacle 30 having a bottom wall, four side walls and an open top. The shredder mechanism 16 is received therein, and the receptacle 30 is affixed to the underside of the top wall 24

US 7,311,276 B2

3

by fasteners. The receptacle 30 has an opening 32 in its bottom wall through which the shredder mechanism 16 discharges shredded articles into the container 12.

The top wall 24 has a generally laterally extending opening 36 extending generally parallel and above the cutter elements. The opening 36, often referred to as a throat, enables the articles being shredded to be fed into the cutter elements. As can be appreciated, the opening 36 is relatively narrow, which is desirable for preventing overly thick items, such as large stacks of documents, from being fed into cutter elements, which could lead to jamming. The opening 36 may have any configuration.

The top wall 24 also has a switch recess 38 with an opening therethrough. An on/off switch 42 includes a switch module (not shown) mounted to the top wall 24 underneath the recess 38 by fasteners, and a manually engageable portion 46 that moves laterally within the recess 38. The switch module has a movable element (not shown) that connects to the manually engageable portion 46 through the opening 40. This enables movement of the manually engageable portion 46 to move the switch module between its states.

In the illustrated embodiment, the switch module connects the motor 18 to the power supply (not shown). Typically, the power supply will be a standard power cord 44 with a plug 48 on its end that plugs into a standard AC outlet. The switch 42 is movable between an on position and an off position by moving the portion 46 laterally within the recess 38. In the on position, contacts in the switch module are closed by movement of the manually engageable portion 46 and the movable element to enable a delivery of electrical power to the motor 18. In the off position, contacts in the switch module are opened to disable the delivery of electric power to the motor 18.

As an option, the switch 42 may also have a reverse position wherein contacts are closed to enable delivery of electrical power to operate the motor 18 in a reverse manner. This would be done by using a reversible motor and applying a current that is of a reverse polarity relative to the on position. The capability to operate the motor 18 in a reversing manner is desirable to move the cutter elements in a reversing direction for clearing jams. In the illustrated embodiment, in the off position the manually engageable portion 46 and the movable element would be located generally in the center of the recess 38, and the on and reverse positions would be on opposing lateral sides of the off position.

Generally, the construction and operation of the switch 42 for controlling the motor 42 are well known and any construction for such a switch 42 may be used.

The top cover 24 also includes another recess 50 associated with a switch lock 52. The switch lock 52 includes a manually engageable portion 54 that is movable by a user's hand and a locking portion (not shown). The manually engageable portion 54 is seated in the recess 50 and the locking portion is located beneath the top wall 24. The locking portion is integrally formed as a plastic piece with the manually engageable portion 54 and extends beneath the top wall 24 via an opening formed in the recess 50.

The switch lock 52 causes the switch 42 to move from either its on position or reverse position to its off position by a camming action as the switch lock 52 is moved from a releasing position to a locking position. In the releasing position, the locking portion is disengaged from the movable element of the switch 42, thus enabling the switch 42 to be moved between its on, off, and reverse positions. In the locking position, the movable element of the switch 42 is

4

restrained in its off position against movement to either its on or reverse position by the locking portion of the switch lock 52.

Preferably, but not necessarily, the manually engageable portion 54 of the switch lock 52 has an upwardly extending projection 56 for facilitating movement of the switch lock 52 between the locking and releasing positions.

One advantage of the switch lock 52 is that, by holding the switch 42 in the off position, to activate the shredder mechanism 16 the switch lock 52 must first be moved to its releasing position, and then the switch 42 is moved to its on or reverse position. This reduces the likelihood of the shredder mechanism 16 being activated unintentionally.

In the illustrated embodiment, the shredder housing 14 is designed specifically for use with the container 12 and it is intended to sell them together. The upper peripheral edge 60 of the container 12 defines an upwardly facing opening 62, and provides a seat 61 on which the shredder 10 is removably mounted. The seat 61 includes a pair of pivot guides 64 provided on opposing lateral sides thereof. The pivot guides 64 include upwardly facing recesses 66 that are defined by walls extending laterally outwardly from the upper edge 60 of the container 12. The walls defining the recesses 66 are molded integrally from plastic with the container 12, but may be provided as separate structures and formed from any other material. At the bottom of each recess 66 is provided a step down or ledge providing a generally vertical engagement surface 68. This step down or ledge is created by two sections of the recesses 66 being provided with different radii.

The shredder 10 has a proximity sensor to detect the presence of a person or thing (e.g., animal or inanimate object) in proximity to the opening 36. A person or thing is "in proximity" to the opening 36 when a part thereof is outside and adjacent to the opening 36 or at least partially within the opening 36. The proximity sensor may be implemented in various ways, such as is described in further detail below. For further examples of shredders on which a proximity sensor may be used, reference may be made to U.S. patent application Ser. No. 10/828,254 (filed Apr. 21, 2004), Ser. No. 10/815,761 (filed Apr. 2, 2004), and Ser. No. 10/347,700 (filed Jan. 22, 2003), each of which is hereby incorporated into the present application by reference. Generally, the proximity sensor may be used with any type of shredder, and the examples identified herein are not intended to be limiting.

FIG. 3 is a perspective view of a shredder 100 constructed in accordance with an embodiment of the present invention. The shredder 100 incorporates a capacitive sensor. The illustrated capacitive sensor is a switch that detects the presence of a person or thing without requiring physical contact. The capacitive sensor includes a conductor/contact plate 112 connected to a circuit, such as those shown in FIGS. 8 and 9. The conductor 112 serves as the first plate of a capacitor, while the person or thing to be detected serves as the second plate thereof. As the distance between the conductor 112 and the person or thing decreases, the mutual capacitance therebetween increases. This increase in capacitance results in increased signal levels in the sensor, which levels can be used to detect the proximity of the person or thing.

It is to be appreciated that capacitance depends in part on the dielectric constant of the second plate of a capacitor. A higher dielectric constant translates into a larger capacitance. Therefore, the capacitive sensor of the shredder 100 can detect the proximity of a nearby animate or inanimate entity provided that its respective dielectric constant is

5

sufficiently high. Because human beings and various animals have relatively high dielectric constants, they are detectable by the capacitive sensor. Inanimate objects with relatively high dielectric constants also are detectable. Conversely, objects with low or moderate dielectric constants, such as paper, are not detectable.

The shredder 100 includes a shredder housing 104, an opening 108, and a control switch 128 with on, off, and reverse positions. A shredder mechanism, such as the one described above, is located beneath the opening 108 so that documents can be fed into the shredder mechanism through the opening 108.

The conductor 112 can be, for example, a strip of metal, foil tape (e.g., copper tape), conductive paint, a silk-screened conductive ink pattern, or another suitable conductive material. As shown in FIG. 3, the conductor 112 is a 9-inch by 1-inch capacitive sensing strip that is affixed to the housing 104 near the opening 108. As such, when a person or thing nears the opening 108 and thus the cutter elements of the shredding mechanism of the shredder 100, the capacitance between the conductor 112 and the person or thing increases, resulting in an increase in the signal level used for detection, as will be described below. To ensure that the switch is sensitive enough to detect the person or thing through multiple sheets of paper, the conductor 112 extends into the opening 108 to increase the overall surface area of the conductor 112 and thus the amount of capacitance between the conductor 112 and the nearby person or thing. The conductor 112 optionally can be covered by non-conductive plastic, for example, thus concealing the switch from a user of the shredder 100. In addition, to increase sensitivity of the switch, such non-conductive plastic can be covered with a conductive material, such as metal foil.

Though not illustrated in FIG. 3, the shredder 100 can include a sensor light, an error light, and/or a light indicative of normal operation. The sensor light, which can be an LED, is illuminated when a person or thing is detected. The error light, which also can be an LED, is illuminated when a person or thing is detected, and optionally under other conditions (e.g., the shredder container is not properly engaged with the shredder 100, or the shredder mechanism has become jammed). These lights, however, are not necessary, and are only optional features.

FIGS. 4-7 are cross-sectional views each showing a shredder housing 104, opening 108, cutting elements 132, and a conductor configuration for a sensor in accordance with various embodiments of the present invention. The conductor configurations can include conductor(s) of different areas to tailor the amount of capacitance and thus the signal level produced when a person or thing nears the shredder. Where multiple conductors are employed, the distance therebetween may be designed also to tailor the amount of capacitive coupling and thus the capacitance produced.

In FIG. 4, the conductor 136 comprises a conductive material embedded within the upper wall of the housing 104 beneath the upper surface partially into the opening 108. The conductor 136 also is optionally embedded in the wall defining the opening 108 and extends along it for a portion.

In FIG. 5, the conductive material of the conductor 140 covers an upper surface portion of the housing 104, extends substantially into the opening 108, and curves around a flange of the housing 104 so as to cover an inside surface portion of the housing 104. For a conductor 140 that has a noticeable amount of thickness, the top portion of the upper surface where the conductor 140 is mounted may be recessed.

6

The conductor 144 of FIG. 6 includes two conductive portions respectively affixed to outside and inside surface portions of the housing 104. Such use of multiple portions increases the surface area of the capacitor, as well as the capacitive coupling, capacitance, and signal level produced when a person or thing nears the conductive portions.

The conductor 148 of FIG. 7 comprises a conductive material on an inside surface portion of the housing 104. This is desirable for concealing the conductor 148 without adding the manufacturing step of embedding the conductor in a housing wall, such as is shown in FIG. 4. It is to be appreciated that the conductors of FIGS. 4-7 may be of any suitable configuration, and the examples illustrated are in no way intended to be limiting.

A conductor or conductive material such as described above in connection with FIGS. 3-7 is typically connected to circuitry on a circuit board. FIGS. 8 and 9 illustrate example capacitive sensor circuits according to respective embodiments of the present invention. The example circuits may be incorporated into the overall circuit design of a shredder, and are in no way intended to be limiting.

In FIG. 8, the capacitive sensor circuit 260 includes a conductor 300 that can have a configuration such as shown above or another suitable configuration. The conductor 300 is connected to a pad P8, which is in turn connected to circuit loops including capacitors C8 and C9, resistors R31, R32, and R36, and a high-speed double diode D8. The loops are connected to a voltage supply Vcc, circuit ground, and a resistor R33. The voltage supply Vcc is connected to the AC line voltage of the shredder, and a negative regulator can generate −5 volts for the circuit ground. The capacitive sensor output 320 may be in turn coupled as an input to a controller 330, such as a microprocessor or discrete circuit components (e.g., comparators, transistors), which takes appropriate action in response to signal levels at the output 320. Such a controller 330 may also be a relay switch that opens to disable the delivery of power to an element (e.g., the motor of the shredder mechanism) and closes to enable the delivery of power. It is to be appreciated that "controller" is a generic structural term that denotes structure(s) that control one or more modules, devices, and/or circuit components.

The principles of operation of the circuit 260 will be readily understood by those conversant with the art. When a person or thing moves close to the conductor 300, the increased capacitance therebetween causes the amplitude of the sinusoidal waveform at the output 320 to increase by a voltage sufficient to indicate the presence of the person or thing. Based on the increased signal level, the controller 330 can, for example, disable the cutting elements of the shredder, illuminate a sensor or error light, and/or activate an audible alert.

FIG. 9 illustrates a capacitive sensor circuit 360, as well as control and illumination circuitry 365. The capacitive sensor circuit 360 includes a conductor 400 that can have a configuration such as shown above or another suitable configuration. The conductor 400 is connected to a pad P1, which is in turn connected to series resistors R19 and R20. The resistor R19 is connected to circuit loops including a capacitor C4, a resistor R16, and a high-speed double diode D1. The loops are connected to a voltage supply Vcc, circuit ground, and a resistor R17. The voltage supply Vcc is connected to the AC line voltage of the shredder, and a negative regulator can generate −5 volts for the circuit ground. The capacitive sensor output 420 is coupled as an input to a controller 430, which can be, for example, a

US 7,311,276 B2

7

simple analog circuit or an ATtiny11 8-bit microcontroller offered by Atmel Corporation (San Jose, Calif.).

The principles of operation of the circuitry of FIG. 9 will be readily understood by those conversant with the art. When a person or thing moves close to the conductor 400, the increased capacitance therebetween causes the amplitude of the sinusoidal waveform at the output 420 to increase by a voltage sufficient to indicate the presence of the person or thing. Based on the increased signal level, the controller 430 sends appropriate control signals. For example, the controller 430 sends a control signal 490 to cut off power (such as supplied by a triac) to the motor that drives the cutting elements of the shredder, and a control signal 435 to illuminate a sensor LED 450 or error LED 440 coupled to comparators 460.

Embodiments of the present invention may be incorporated, for instance, in a shredder such as the PS80C-2 shredder of Fellowes, Inc. (Itasca, Ill.). If desired, existing shredder designs may be adapted, without major modification of existing modules, to incorporate proximity sensing circuitry.

In another embodiment of the invention, a shredder can provide two or more sensitivity settings for proximity sensing. The settings can be selectably enabled by a user and tailored to detect, e.g., infants or pets. In an example embodiment employing a capacitive sensor, objects are distinguished based on load times. A smaller capacitive load results in a shorter load time than a large capacitance. Thus, by measuring (e.g., with a microprocessor) differences in load times resulting from capacitive loads near a sensor, various objects can be distinguished.

Although various illustrated embodiments herein employ capacitive sensors, it is to be noted that other approaches may be employed to detect the presence of a person or thing near a shredder, such as, for example, approaches utilizing eddy current, inductive, photoelectric, ultrasonic, Hall effect, or infrared proximity sensor technologies.

The foregoing illustrated embodiments have been provided to illustrate the structural and functional principles of the present invention and are not intended to be limiting. To the contrary, the present invention is intended to encompass all modifications, alterations and substitutions within the spirit and scope of the appended claims.

What is claimed is:

1. A document shredder for shredding one or more data bearing documents selected from the group consisting of paper, optical discs, and floppy disks, comprising:

a housing;

a document shredder mechanism received in the housing and including an electrically powered motor and cutter elements, the document shredder mechanism enabling one or more data bearing documents selected from the group consisting of paper, optical discs, and floppy disks to be fed into the cutter elements and the motor being operable to drive the cutter elements so that the cutter elements shred the one or more documents fed therein;

the housing having an opening enabling the one or more data bearing documents to be fed therethrough into the cutter elements of the document shredder mechanism for shredding;

a waste bin disposed beneath the document shredder mechanism, the waste bin being configured to receive shredded documents from the document shredder mechanism, the waste bin being manually removable from beneath the document shredder mechanism for emptying of the shredded documents therein;

8

a discriminating proximity sensor comprising an electroconductive sensor element at least in part adjacent the opening, the proximity sensor being configured to indicate a presence of a person or animal, but not a presence of the one or more data bearing documents, in proximity to the opening based on the detection via the sensor element of an inherent electrical characteristic of the person or animal; and

a controller operable to disable the cutter elements responsive to the indicated presence of the person or animal.

2. A shredder according to claim 1, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

3. A shredder according to claim 1, wherein the controller is also operable to illuminate an indicator responsive to the indicated presence of the person or animal.

4. A shredder according to claim 1, wherein the controller comprises a microcontroller.

5. A shredder according to claim 1, wherein the proximity sensor is a capacitive sensor for detecting a capacitance between the sensor element and the person or animal.

6. A shredder according to claim 5, wherein:

the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

7. A shredder according to claim 6, wherein the electroconductive element is a thin metal member extending along a portion of the housing adjacent the opening.

8. A shredder according to claim 7, wherein the metal member is provided on an interior surface of the housing.

9. A shredder according to claim 8, wherein the metal member is provided only on an interior surface of the housing, and not on an exterior surface.

10. A shredder according to claim 8, wherein the metal member is also provided on an exterior surface of the housing.

11. A shredder according to claim 10, wherein the portion of the housing on which the metal member is provided has an edge that defines part of the opening, and wherein the metal member extends from the interior surface of the housing to the exterior surface over the edge.

12. A shredder according to claim 7, wherein the shredder mechanism is embedded within the housing.

13. A shredder according to claim 7, wherein the metal member is at least in part adhered to the portion of the housing adjacent the opening.

14. A shredder according to claim 13, wherein the metal member comprises metal tape.

15. A shredder according to claim 7, wherein the metal member is at least in part covered by a non-conductive member.

16. A shredder according to claim 15, wherein the non-conductive member is at least in part covered by a conductive member.

17. A shredder according to claim 6, wherein the electroconductive element at least in part comprises metal paint applied to a portion of the housing or to a member associated with the housing.

18. A shredder according to claim 6, wherein the electroconductive element includes at least two metal members each extending along a portion of the housing adjacent the opening.

19. A shredder according to claim 1, wherein the controller at least in part comprises a microprocessor.

20. A shredder according to claim 1, wherein the controller at least in part comprises discrete circuit components.

US 7,311,276 B2

9

**21.** A shredder according to claim 1, wherein the controller at least in part comprises an analog circuit.

**22.** A shredder according to claim 5, wherein the opening is an elongated, narrow opening.

**23.** A shredder according to claim 22, wherein the elongated, narrow opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

**24.** A shredder according to claim 23, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

**25.** A shredder according to claim 23, wherein the sensor element extends along both of the walls.

**26.** A shredder according to claim 25, wherein the sensor element extends along the walls for essentially an entire length of the opening.

**27.** A shredder according to claim 23, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

**28.** A shredder according to claim 24, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

**29.** A shredder according to claim 25, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

**30.** A shredder according to claim 26, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

**31.** A shredder according to claim 1, wherein:
wherein the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**32.** A shredder according to claim 22, wherein:
wherein the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**33.** A shredder according to claim 23, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**34.** A shredder according to claim 24, wherein:
wherein the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**35.** A shredder according to claim 25, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**36.** A shredder according to claim 26, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**37.** A shredder according to claim 27, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**38.** A shredder according to claim 28, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**39.** A shredder according to claim 29, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**40.** A shredder according to claim 30, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**41.** A shedder according to claim 1, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**42.** A shredder according to claim 22, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

10

**43.** A shredder according to claim 23, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**44.** A shredder according to claim 24, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**45.** A shredder according to claim 25, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**46.** A shredder according to claim 26, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**47.** A shredder according to claim 27, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**48.** A shredder according to claim 28, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**49.** A shredder according to claim 29, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**50.** A shredder according to claim 30, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

**51.** A shredder according to claim 41, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**52.** A shredder according to claim 42, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**53.** A shredder according to claim 43, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**54.** A shredder according to claim 44, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**55.** A shredder according to claim 45, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**56.** A shredder according to claim 46, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**57.** A shredder according to claim 47, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**58.** A shredder according to claim 48, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**59.** A shredder according to claim 49, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**60.** A shredder according to claim 50, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

**61.** A shredder according to claim 6, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

US 7,311,276 B2

11

62. A shredder according to claim 22, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

63. A shredder according to claim 23, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

64. A shredder according to claim 24, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

65. A shredder according to claim 25, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

66. A shredder according to claim 26, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

67. A shredder according to claim 31, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

68. A shredder according to claim 32, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

69. A shredder according to claim 33, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

70. A shredder according to claim 34, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

71. A shredder according to claim 35, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

72. A shredder according to claim 36, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

73. A shredder according to claim 41, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

74. A shredder according to claim 42, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

75. A shredder according to claim 43, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

76. A shredder according to claim 44, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

77. A shredder according to claim 45, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

78. A shredder according to claim 46, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

79. A shredder according to claim 5, wherein the opening is an elongated opening.

80. A shredder according to claim 79, wherein the elongated opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

81. A shredder according to claim 80, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

82. A shredder according to claim 80, wherein the sensor element extends along both of the walls.

83. A shredder according to claim 82, wherein the sensor element extends along the walls for essentially an entire length of the opening.

12

84. A shredder according to claim 80, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

85. A shredder according to claim 81, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

86. A shredder according to claim 82, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

87. A shredder according to claim 83, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

88. A shredder according to claim 79, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

89. A shredder according to claim 80, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

90. A shredder according to claim 81, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

91. A shredder according to claim 82, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

92. A shredder according to claim 83, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

93. A shredder according to claim 84, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

94. A shredder according to claim 85, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

95. A shredder according to claim 86, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

96. A shredder according to claim 87, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

97. A shredder according to claim 1, wherein the opening is an elongated, narrow opening.

98. A shredder according to claim 97, wherein the elongated, narrow opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

99. A shredder according to claim 98, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

100. A shredder according to claim 98, wherein the sensor element extends along both of the walls.

101. A shredder according to claim 100, wherein the sensor element extends along the walls for essentially an entire length of the opening.

102. A shredder according to claim 98, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

103. A shredder according to claim 99, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

104. A shredder according to claim 100, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

US 7,311,276 B2

13

14

**105.** A shredder according to claim **101**, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

**106.** A shredder according to claim **1**, wherein the opening is an elongated opening.

**107.** A shredder according to claim **106**, wherein the elongated opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

**108.** A shredder according to claim **107**, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

**109.** A shredder according to claim **107**, wherein the sensor element extends along both of the walls.

**110.** A shredder according to claim **109**, wherein the sensor element extends along the walls for essentially an entire length of the opening.

**111.** A shredder according to claim **107**, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

**112.** A shredder according to claim **108**, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

**113.** A shredder according to claim **109**, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

**114.** A shredder according to claim **110**, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

* * * * *

# Exhibit 2

**Exhibit 2**

Received: 5/30/07 2:14PM; 703 770 7901 -> AMERICAN PATENT & TRADEMARK; Page 2

05-30-07 04:49pm From-PILLSBURY WINTHROP 703-770-7901 T-406 P.002/003 F-242

Pillsbury
Winthrop
Shaw
Pittman...

1650 Tysons Boulevard Tel 703.770.7900
McLean, VA 22102-4859 Fax 703.770.7901
 www.pillsburylaw.com

May 30, 2007

Bryan P. Collins
Phone: 703.770.7538
bryan.collins@pillsburylaw.com

*VIA FACSIMILE*

Donn Harms, Esq.
American Patent and Trademark Law Center
12702 Via Cortina, Suite 100
Del Mar, California 92014

  Re: Aurora Infringements
   Our Ref.: 082135-0000042

Dear Mr. Harms:

I have still not received a substantive response to my e-mail of March 14, 2007, setting forth a royalty proposal from Fellowes, and my follow-up e-mail of March 27, 2007. On March 28th you indicated by e-mail that a response was forthcoming, but we have not heard from you since then. It has been over two months since Fellowes made its proposal, and we need an immediate response.

You should be aware that, since that time, Fellowes tried the '559 patent to a jury verdict against shredders sold by Michilin Prosperity Co. Ltd. of Taiwan and Intek America of Torrance, CA. The '559 patent was found to be infringed and valid in all respects. The switch constructions on the accused shredders in that case are the same as those Aurora shredders in all material respects, and any reasonable jury would come to the same conclusion if we were forced to litigate against Aurora. The trial also started after the Supreme Court's *KSR* decision was issued. Thus, the '559 patent was held valid under the U.S. Supreme Court's obviousness standard as set forth in that case.

We also take this opportunity to advise that Fellowes has filed the '559 patent in a number of major markets, including Europe, Canada, Japan and the People's Republic of China.

We expect a substantive and meaningful answer to this letter and Fellowes' prior royalty proposal by June 7, 2007. With respect to the $50,000 lump sum Fellowes proposed for past damages, that was premised on a rapid resolution of this issue, and therefore Fellowes expects to calculate any royalty from April 1st forward or increase the lump sum component as applicable.

If we do not receive a response in advance of that date, Fellowes will assume that Aurora has no interest in seeking an amicable resolution and will proceed accordingly.

Received: 5/30/07 2:14PM;
05-30-07   04:49pm   From-PILLSBURY WINTHROP
703 770 7901  -> AMERICAN PATENT & TRADEMARK;   Page 3
703-770-7901        T-406   P.003/003   F-242

Donn Harms, Esq.
May 30, 2007
Page 2

We also take this opportunity to advise you and your client of Fellowes' U.S. Patent Publication Nos. 2006-0054724 A1 and 2006-0054725 A1. These applications also have corresponding applications filed in other major markets, such as Europe, Canada and the People's Republic of China. And there is a Japanese counterpart application that is currently pending and under examination, JP 2006075831.

It has come to Fellowes' attention that Aurora is currently marketing shredders under the name Touchguard that incorporate Fellowes' proprietary Safe Sense® technology, which is the subject matter of those patent applications. Consider this letter as formal notice of Fellowes' Safe Sense® patent applications.

Fellowes' intellectual property is important to its business and it takes protection of that intellectual property seriously. Its Safe Sense® technology represents a significant innovation in shredder safety and a key investment in Fellowes technical and business strategy. Aurora's marketing of that technology cannot be tolerated.

If Aurora has not ceased sales of infringing shredders by the time Fellowes' patents issue, Fellowes will be in contact to discuss its right to collect retroactive pre-grant royalties and to demand cessation of such sales.

Finally, we have yet a third issue to raise with Aurora concerning a trademark infringement issue on Aurora's Touchguard shredders. The Aurora Touchguard shredders utilize a shield logo that is confusingly similar to the shield logo used on Fellowes' Safe Sense® shredders. The similarity of these logos on the same products will lead to consumer confusion as to the source of goods and cannot be tolerated by Fellowes. As such, Fellowes demands that Aurora immediately cease and desist using the shield logo on any and all Aurora shredders.

We expect a response to these other issues as well in advance of the June 7th date.

Very truly yours,

Bryan P. Collins

BPC/smm

# Exhibit 3

**Exhibit 3**



Attorney Docket: 082135-0310373
Client Reference: Dkt. 23-REG

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re PATENT APPLICATION of: | Confirmation Number: 2014 |
| MATLIN ET AL. | |
| Application No.: 10/937,304 | Group Art Unit: 3725 |
| Filed: September 10, 2004 | Examiner: Pahng, Jason Y. |
| Title: SHREDDER WITH PROXIMITY SENSING SYSTEM | |

### SECOND DECLARATION OF TAI-HOON MATLIN UNDER 37 C.F.R. §1.132

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

I hereby declare that:

1.     I previously executed a Declaration in the above application, which was entitled "Declaration of Tai-Hoon Matlin Under 37 C.F.R. §1.132." My qualifications and experience in shredder design were explained in that previous Declaration, and that information is incorporated herein without being repeated.

2.     In my previous Declaration, I identified 3 competitive shredders that have adopted my invention. I recently became aware of yet another competitive shredder that has adopted my invention. This new shredder is made by Aurora, a well known shredder manufacturer and distributor, and bears Model No. AS1019CS ("the Aurora Shredder"). Pictures of the Aurora Shredder are included at Exhibit A.

MATLIN ET AL. – 10/937,304
Attorney Docket: 082135-0310373

3.    The Aurora Shredder was purchased by Fellowes personnel from Walmart in May 2007. To the best of my knowledge, this Aurora Shredder first became available on the marketplace in calendar year 2007.

4.    The Aurora Shredder is covered by each every limitation of at least claims 1, 5, and 6 of the present application, as presented in the Amendment filed on March 14, 2007.

5.    Specifically, I have examined the Aurora Shredder, and concluded that it is a document shredder for shredding one or more data bearing documents selected from the group consisting of paper, optical discs, and floppy disks. The Aurora Shredder comprises the following elements as recited in claim 1:

a housing;

a document shredder mechanism received in the housing and including an electrically powered motor and cutter elements, the document shredder mechanism enabling one or more data bearing documents selected from the group consisting of paper, optical discs, and floppy disks to be fed into the cutter elements and the motor being operable to drive the cutter elements so that the cutter elements shred the one or more documents fed therein;

the housing having an opening enabling the one or more data bearing documents to be fed therethrough into the cutter elements of the document shredder mechanism for shredding;

a waste bin disposed beneath the document shredder mechanism, the waste bin being configured to receive shredded documents from the document shredder mechanism, the waste bin being manually removable from beneath the document shredder mechanism for emptying of the shredded documents therein;

a discriminating proximity sensor comprising an electroconductive sensor element at least in part adjacent the opening, the proximity sensor being configured to indicate a presence of a person or animal, but not a presence of the one or more data bearing

- 2 -

MATLIN ET AL. -- 10/937,304
Attorney Docket: 082135-0310373

documents, in proximity to the opening based on the detection via the sensor element of an
inherent electrical characteristic of the person or animal; and

a controller operable to disable the cutter elements responsive to the indicated
presence of the person or animal.

6.    In this competitive Aurora shredder the electroconductive sensor element of
the discriminating proximity sensor of claim 1 is a metal member attached on a wall of the
throat opening. This is shown in the photograph in Exhibit A marked "Aurora's Touchguard
technology (pointed at)". TouchGuard is the marketing name referring to Aurora's
implementation of my invention. This metal member has a lead portion that extends down
into the throat opening and is connected to a circuit inside the shredder. I tested this
competitive shredder, and found that it is configured to indicate a presence of a person or
animal, but not a presence of the one or more data bearing documents, in proximity to the
opening based on the detection via the sensor element of an inherent electrical characteristic
of the person or animal. This was confirmed by the fact that it responded to the detection of a
person's finger by de-activating the shredder mechanism's motor, but did not respond to the
presence of paper or discs. This examination also revealed that a controller disabled the
cutter elements responsive to the indicated presence of the person or animal.

7.    This discriminating functionality of the Aurora Shredder is confirmed by the
prominent advertising used on the Aurora Shredder packaging. That packaging states "New.
Shredding stops when touched." And their TouchGuard shield logo is placed prominently on
the shredder itself.

8.    Additionally, as recited in claim 5, in the Aurora Shredder the proximity
sensor is a capacitive sensor for detecting a capacitance between the sensor element and the
person or animal. My inspection revealed that the metal member was acting as a plate of a

400578247v1

capacitor, and that the detection of a capacitance between the coating and a body part tripped the sensor.

9.     As recited in claim 6, in the Aurora Shredder the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element. This is evident from the fact that it deactivates the motor of the shredder mechanism upon detecting the presence of a body part, but not paper, discs or credits cards appropriate for shredding.

10.     I have confirmed the facts set forth above by physically inspecting and testing a sample of the identified Aurora Shredder.

11.     It is also apparent that the TouchGuard shield logo used by Aurora is strikingly similar to Fellowes' SafeSense shield logo, which is a Fellowes trademark used on shredders incorporating my invention. I have attached side by side comparisons at Exhibit B. This leads me to believe that Aurora's adoption of my claimed invention was not coincidental, and is an effort to trade on the commercial success and recognition achieved by Fellowes with my invention sold under the SafeSense brand name.

12.     I hereby declare that all statements made herein of my knowledge are true and all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statement and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title 18 of the United States Code and that such willful false statement may jeopardize the validity of the application or any patents issued from them.

Signed this _5TH_ day of June, 2007, at Itasca, Illinois.

_____

Tai-Hoon Matlin

- 4 -

MATLIN ET AL. — 10/937,304
Attorney Docket: 082135-0310373

**EXHIBIT A**

400576247v1