MATLIN ET AL. — 10/937,304
Attorney Docket: 082135-0310373

### AURORA AS1019CS WITH TOUCHGUARD



Aurora's Touchguard technology (pointed at)



Electrical component of Touchguard technology



Internal configuration of Aurora shredder



White wire controls the Touchguard technology



Free standing Aurora shredder with Touchguard



Retail box of Aurora shredder

- 6 -

MATLIN ET AL. -- 10/937,304
Attorney Docket: 082135-0310373

EXHIBIT B

400576247v1

MATLIN ET AL. – 10/937,304
Attorney Docket: 082135-0310373

 

400576247v1

# Exhibit 4

**Exhibit 4**



Attorney Docket: 082135-0310373
Client Reference: Dkt. 23-REG

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re PATENT APPLICATION of:      Confirmation Number: 2014

MATLIN ET AL.

Application No.: 10/937,304      Group Art Unit: 3725

Filed: September 10, 2004      Examiner: B. MILLER

Title: SHREDDER WITH PROXIMITY SENSING SYSTEM

August 2, 2007

<u>REQUEST FOR RECONSIDERATION</u>

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

      In response to the Office Action dated May 9, 2007, please consider this Request for Reconsideration and enter the attached Second Declaration of Tai-Hoon Matlin Under 37 C.F.R. § 1.132, and Declaration of Kathleen Noe Under 37 C.F.R. § 1.132. A Request for Continued Examination is also being filed herewith.

MATLIN ET AL. – 10/937,304
Client/Matter: 082135-0310373

<u>REMARKS</u>

Claims 1, 2, 4-6, 7, 12-14, 17, 19, 22-24, 27, 28, 31-34, 37, 38, 41-44, 47, 48, 51-54, 57, 58, 61-64, 67-70, 73-76, 79-81, 84, 85, 88-90, 93, 94, 96-99, 102-103, 106-108, and 111-112 are currently pending in the application. The remaining claims not set forth above have been withdrawn due to an election requirement, but have not been cancelled in anticipation that they will be allowed upon allowance of the generic independent claim 1.

No amendments have been made to the claims. Reconsideration and allowance of the present application based on the following remarks and the attached declaration evidence are respectfully requested.

## A.   The Prior Art Rejection of Claim 1

The Examiner has rejected independent claim 1 as being obvious over a combination of references. In the Examiner's rejection, the base reference is Suzuki (JP 57-76734). The Examiner relies on Suzuki as teaching all the elements of the claim, except for the waste bin limitations and the fact that the proximity sensor detects via an inherent electrical characteristic. The Examiner relies on Henreckson (U.S. Patent No. 6,079,645) for the waste bin limitations. And the Examiner further relies on Ghosh to replace the IR sensor of Suzuki with a capacitive sensor.

As an initial matter the Applicants wish to correct a misstatement made by the Examiner concerning the breadth of the claim scope. The Examiner stated that "Suzuki discloses an infrared sensor as the proximity sensor, but the claim also calls for a capacitive sensor to be used as the proximity sensor." Office Action of May 9, 2007 at 4. And therefore, the Examiner relied on the capacitive sensor in Ghosh. While some of the dependent claims recite that the proximity sensor is of the capacitive type, claim 1 is not so limited. Instead, claim 1 recites "a discriminating proximity sensor comprising an electroconductive sensor element at least in part adjacent the opening, the proximity sensor being configured to indicate a presence of a person or animal, but not a presence of the one or more data bearing documents, in proximity to the opening based on the detection via the sensor element of an inherent electrical characteristic of the person or animal[.]"

Nothing in claim 1 requires the sensor to be a capacitive sensor, and other sensing technologies sensing an inherent electrical characteristic of a person or animal could be used (e.g., a resistive sensor). This still distinguishes from the IR sensor of Suzuki, which detects heat from a person or animal, and not an inherent electrical characteristic as required by claim 1. While a capacitive sensor is used in the commercial embodiment (and is specifically

- 17 -

MATLIN ET AL. — 10/937,304
Client/Matter: 082135-0310373

structure. The structural elements of the invention are recited in the claims, and the declaration evidence points out the advantages achieved over the prior art. Under the Examiner's position that claim 1 must recite that the device works well in hot temperatures, then claim 1 would also have to recite all kinds of other advantages: it works even when children don't read the warning label, it works even if the distance between the throat opening the shredder mechanism is small, it works even if there is a flap and a small child learns to circumvent it, etc. Such a requirement would lead to absurdly drafted claims listing all the advantages flowing from the inventive construction. The simple fact is that the Applicants' evidence proves that the claimed invention is not obvious because of the established long-felt need for an effective solution to the problem at issue and the repeated attempts by others to solve that problem. This evidence cannot be summarily ignored, as the Examiner has done.

Accordingly, the Applicants request the Examiner to give the previously submitted long-felt need evidence and arguments their due weight in establishing that the claimed inventions are not obvious.

2. Copying and Adoption of Invention By Others

As additional evidence of non-obviousness, the Applicants previously submitted evidence of copying by others in the industry. See MPEP § 716.06. Specifically, the Applicants filed a Declaration from Taihoon Matlin that described in detail three competitive shredders that appeared on the marketplace soon after Fellowes first released its SafeSense® shredders embodying the claimed invention. See Original Matlin Declaration at ¶¶ 28-33 (detailing how each and every element of these claims is found in the identified shredders). And he further testified that these appeared on the marketplace only after the release of Fellowes' claimed products. See id. at ¶ 27.[5]

Recently, the Applicants have become aware of yet another competitive shredder from Aurora, a well known shredder manufacturer and distributor. This Aurora Shredder is discussed in detail in the attached Second Declaration of Taihoon K. Matlin Under 37 C.F.R. §1.132, which shows that it embodies the claimed invention, and specifically at least

---

[5] It is noted that Examiner Pahng did not comment at all on the Original Matlin Declaration in the last Official Action, nor did he acknowledge its receipt. In discussions with Examiner Miller, she indicated that the case may be that Examiner Pahng did not notice that the Original Matlin Declaration was not scanned into PAIR, and instead was maintained in an artifact file, because it contained color images. As such, the Applicants maintain the arguments made in their Amendment of March 14, 2007 (pgs. 36-38), and ask the Examiner to fully consider them after retrieving a copy of the Original Matlin Declaration.

claims 1, 5, and 6. This is further evidence that the invention is being adopted by others in the industry, a long accepted objective indicia of non-obviousness. Moreover, the packaging for the Aurora Shredder prominently advertises its discriminating proximity sensor feature (referred to as TouchGuard). This adulation of the feature is also indicative of non-obviousness. *See Gambrio Lundia AB v. Baxter Healthcare Corp.*, 42 USPQ2d 1378, 1384 (Fed. Cir. 1997).

Clearly, the fact that Fellowes Safesense® shredders with the claimed invention were released first, and then all these competitive shredders incorporating the claimed invention appeared soon thereafter is indicative that these competitors were adopting Fellowes' claimed technology to benefit in the marketplace. It is critical to understand the timing of the sales of these competitive shredders in the context of the long-felt need evidence discussed above. Specifically, the long-felt need evidence submitted in this application shows that for at least three decades shredder manufacturers have been attempting to improve safety in document shredders, yet none of them had ever developed the Applicants' claimed invention. Now, after Fellowes developed its claimed invention and released the same to the marketplace, these competitive shredders have appeared right on Fellowes' coat-tails. The long-felt need evidence by itself begs the very question of obviousness: If the claimed invention were so obvious, why did wasn't it invented sooner? And the rapid adoption of the claimed invention by others begs yet another important question: If the invention is not a meritorious advancement in the shredder art, why would multiple third party competitors adopt the claimed invention immediately after its release by Fellowes? The only logical answers to these questions is that the invention is not obvious, and that it is recognized as such an improvement over the existing art that the competition rapidly sought to use the same technology invented by Fellowes. Imitation is indeed the most sincere form of flattery. *See Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co.*, 220 U.S. 428, 440-441 (1911).

That is, coupling together the evidence of long-felt need, and the copying evidence provided by the two Matlin Declarations, the strong evidence of non-obviousness in this application becomes overwhelming. First, the evidence shows that for nearly 30 years document shredder manufacturers have been attempting to improve shredder safety, yet never developed the claimed invention until the Applicants did so. This alone compels a finding of non-obviousness. Then, once the Applicants made their invention, and Fellowes' Safesense™ products embodying the claimed invention were sold to the public, the

EVAN FINKEL #100673
evan.finkel@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 226-4058

WILLIAM P. ATKINS
william.atkins@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Telephone: 703.770.7900
Facsimile: 703.770.7901

Attorneys for Defendant
FELLOWES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA CORP. OF AMERICA, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FELLOWES, INC., an Illinois corporation,<br><br>Defendant. | ) Case No. CV 07-8306-GHK (AJWx)<br>)<br>) DEFENDANT'S MEMORANDUM<br>) IN SUPPORT OF ITS MOTION TO<br>) DISMISS, TRANSFER, OR STAY<br>) THIS LAWSUIT OR,<br>) ALTERNATIVELY, FOR A MORE<br>) DEFINITE STATEMENT<br>)<br>) Before The Honorable George H. King<br>) Hearing: February 25, 2008<br>) Time: 9:30 a.m.<br>) CrtRm: 650 |

## **TABLE OF CONTENTS**

**Page**

I.  STATEMENT OF FACTS ............................................................3

II. THIS COURT SHOULD DECLINE JURISDICTION ............................5

    A.    To Forum Shop, Aurora Raced to File a Flimsy Complaint
On A Patent That Just Issued; It Should be Dismissed...................7

    B.    This Court Should Dismiss This Action to Avoid Duplicative
Litigation ........................................................................9

    C.    The Other Ninth Circuit Factors .....................................10

    D.    Convenience of Parties and Other Conveniences ...........................11

        1.    Fellowes ........................................................ 11

        2.    Underwriters Laboratory.....................................11

        3.    United Stationers................................................12

        4.    Aurora .........................................................13

        5.    Illinois Is Where This Case Should Be ................................13

    E.    Fellowes Respectfully Asks This Court To Exercise Its
Discretion And Dismiss Aurora America's Complaint .................14

III. THIS CASE SHOULD BE TRANSFERRED TO ILLINOIS
UNDER § 1404(A)................................................................14

    A.    The Law on Venue ...........................................................14

        1.    Location Where The Relevant Agreements Were
Negotiated  And Executed ..................................15

        2.    The State That Is Most Familiar With The Governing
Law    ......................................................16

        3.    The Plaintiff's Choice Of Forum .........................................16

        4.    The Respective Parties' Contacts With The Forum .............16

        5.    The Contacts Relating To The Plaintiff's Cause Of
Action  In The Chosen Forum ..............................17

        6.    The Differences In The Costs Of Litigation In The Two
Forums .........................................................17

        7&8.    The Availability Of Compulsory Process To Compel
Attendance Of Unwilling Non-Party Witnesses; And
The Ease Of Access To Sources Of Proof ................................ 18

1

IV.   MOTION TO DISMISS, OR FOR A  MORE DEFINITE
      STATEMENT IN THE ALTERNATIVE.................................................18

V.    CONCLUSION...........................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fellowes Motion 1.DOC

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Aetna Life Ins. Co. of Hartford v. Haworth,*
300 U.S. 227,(1937) ...................................................................................5

*Am. States Ins. Co. v. Kearns,*
15 F.3d 142 (9th Cir. 1994) ......................................................................6

*Ashe v. PepsiCo, Inc.,*
443 F. Supp. 84 (S.D.N.Y. 1977) ...........................................................10

*Bell Atlantic v. Twombly,*
550 U.S. ___, 127 S. Ct. 1955 (2007) ...............................................9, 23

*Brillhart v. Excess Ins. Co. of Am.,*
316 U.S. 491 (1942) ..................................................................................6

*Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions,*
482 F.3d 1349 (Fed. Cir. 2007) .........................................................9, 23

*Ferguson Beauregard/Logic Controls, Division Of Dover Resources, Inc., v. Mega Systems, LLC,*
350 F.3d 1327 (Fed. Cir. 2003) .........................................................9, 23

*Georgia Pacific Corp. v. United States Plywood Corp.,*
318 F. Supp. 1116 (S.D.N.Y. 1970) .......................................................12

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,*
820 F. Supp. 503 (C.D.Cal.1992) ...........................................................17

*Gov't Employees Ins. Co. v. Dizol,*
133 F.3d 1220 (9th Cir. 1998) (en banc) ........................................... passim

*Havens Realty Corp. v. Colman,*
455 U.S. 363 (1982) ................................................................................24

*In Re Stac Elecs. Sec. Litig.,*
89 F.3d 1399 (9th Cir. 1996) ..................................................................24

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000) ..................................................................17

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*
342 U.S. 180 (1952) ..................................................................................5

*Leroy v. Great W. United Corp.,*
443 U.S. 173 (1979) ................................................................................21

*Pacesetter Systems, Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982)......................................................................7

*Public Serv. Comm'n of Utah v. Wycoff Co.,*
    344 U.S. 237 (1952) ..............................................................................5

*Serco Services Co. v. Kelley Co., Inc.,*
    51 F.3d 1037 (1995) .........................................................................6, 10

*Skelly Oil Co. v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950) ..............................................................................5

*Stewart Org. v. Ricoh Corp.,*
    487 U.S. 22 (1988) ...............................................................................16

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) .............................................................................17

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ..............................................................................5


Rules and Regulations

28 U.S.C. § 1404(a) ...................................................................................3, 16

28 U.S.C. § 2201 .........................................................................................3, 4

28 U.S.C. § 2201(a) ........................................................................................5

35 U.S.C. § 10 ..................................................................................................8

28 U.S.C. § 1404(a) .......................................................................................16

37 CFR § 1.56……………………………………………………………….4

Patents issue in the United States on Tuesdays.  U.S. Patent No. 7,311,276 was no exception.  It issued on December 25, 2007.  The very next day, the patent owner Fellowes, Inc. ("Fellowes") filed a patent infringement lawsuit in the Northern District of Illinois against Aurora Corp. of America ("Aurora America") and Aurora Office Equipment Co., Ltd. ("Aurora China," who manufactures the infringing product for Aurora America).  In addition to its just-issued patent, Fellowes asserted a second U.S. patent, against both Aurora parties in Illinois because Fellowes' 1,000+ employee headquarters is located there, along with the inventors and their documents.  That same day, December 26th, Aurora America filed this lawsuit which Fellowes now seeks to dismiss, transfer, or stay.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place by telephone on January 4, 2008, through ensuing emails, and the motion for a more definite statement was discussed by telephone on January 18, 2008.

## I.  STATEMENT OF FACTS

Fellowes makes and sells document shredders, Bankers Box® records storage solutions, and other items.  *See* Affidavit of Steven Carson, Ex. A.  One of Fellowes' latest innovations is a safety feature for document shredders, referred to as SafeSense®.  *Id.*  SafeSense® is a mechanism that uses a conductive material, like metal, around the slot where the paper enters the shredder.  *Id.*  If a person's finger or similar item comes in close proximity to the input slot, it is sensed by the conductive material and the shredder will stop shredding.  *Id.*  As of December 25, 2007, SafeSense® is now patented in U.S. Patent No. 7,311,276 (" '276 patent" or "SafeSense® patent").  The '276 patent is attached to Ex. B, which is the Complaint that Fellowes filed in the Northern District of Illinois.

Fellowes had previously patented a safety switch for use on paper shredders.  The safety switch is patented in U.S. Patent No. 7.040,559 (" '559 patent" or "Safety Switch patent") and entitled "Shredder With Lock For On/Off Switch."  The '559 patent is also attached to Ex. B, the Illinois Complaint.

While the SafeSense® patent application was pending and while Fellowes litigated a infringement case against another competitor on the Safety Switch patent, Aurora China was making shredders with the SafeSense® feature and/or, Fellowes' patented safety switch in China and exporting them to the United States. *See* Carson Affidavit, Ex. A-1. The manufacturing relationship is confirmed by a document called a Piers report. *Id.* at Ex. A-1.

A Piers report for October and November of 2007 is attached. *Id*. at Ex A-1. This report indicates that Aurora China shipped paper shredders to Aurora America. *See* Ex. A at lines 472, 499, 500, 895, 1239, 1400 to 1403, and 1583 to 1584. For example, at line 499, one can see that Aurora China ("Aurora Office Equipment Co., Ltd." of the Jiadin District of Shanghai, China) shipped 6,150 shredders to Aurora America. This report also discloses that shredders are shipped from this same Shanghai address to Wal-Mart on behalf of Aurora America. Ex.A-1 at line 493, 618, 1190. For example, lines 618 and 1190 indicate that the Aurora China shredders were shipped from Shanghai to Chicago, Illinois for Wal-Mart. Ex. A-1 at lines 618, 1190.

Aurora China's identity as the manufacturer is also confirmed by the fact that accused products are marked in accordance with Underwriters Laboratories ("UL") Certificate 237840, which UL's website confirmed is registered to Aurora China. *See* Ex. C-1 (the specifically accused product is underlined). The infringing shredders, at least Model AS1019CS, have been sold in the United States by Wal-Mart Stores, Inc. Ex. A. According to the packaging of the Aurora AS1019CS, Aurora refers to their SafeSense® feature as Touchguard. *Id.*

In addition to Aurora China supplying and shipping their product , a company called Aurora Corporation China, but which is located in Taiwan, ("Aurora Taiwan") has a trademark application pending at the United States Patent and Trademark Office. *See* Ex. C Atkins Affidavit at C-3. The Aurora Taiwan application is an attempt to ensure exclusivity for the use of the word "Aurora" on paper shredders in the United States. *Id*.

On January 5, 2007, Fellowes sent a letter to Aurora America asserting infringement of the '559 Safety Switch patent. *See* Ex. D to the Illinois complaint (Ex. B). After discussions with Aurora's counsel, on May 30, 2007, Fellowes sent a letter to counsel for Aurora America following up on Aurora's infringement of the '559 Safety Switch patent, and advising Aurora of the then-pending SafeSense® patent application. *See* Ex. 2 to Aurora America's California Complaint (Docket Entry or D.E. 1). Aurora responded with a letter stating that it had "ceased production of the shredder with the switch you refer to in your letter." *See* Ex. C-2, attached to Atkins Affidavit (Ex. C). In response to Fellowes' counsel seeking clarification on this statement, Aurora's counsel sent an e-mail confirming that "Aurora has ceased selling ANY product with the safety switch in question. As such, production and/or sales of all models of shredder [sic], which would include the alleged offending switch, have been terminated." *Id.* At Ex. C-4. In spite of this written assurance, Aurora's product continued to contain the safety switch. *See* Carson Affidavit, Ex. A. Due to a filing by Fellowes' previous opponent, the '559 safety switch patent is currently being subjected to a reexamination at the U.S. Patent and Trademark Office ("PTO"). Ex. C.[1]

The SafeSense® patent issued on December 25, 2007. Fellowes asserted it and the '559 Safety Switch patent against Aurora America and Aurora China the following business day in Illinois. *See* Ex. B.

## II.    THIS COURT SHOULD DECLINE JURISDICTION

Aurora America's suit is based upon the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* ¶ 4 of California Complaint (D.E. 1). This statute provides that:

> In a case of actual controversy within its jurisdiction, [exceptions omitted] . . . any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether

---

[1] A patent in reexamination is enforceable. *See, e.g.* 37 CFR § 1.565; Manual of Patent Examining Procedure § 2286.

or not further relief is or could be sought.  28 U.S.C. § 2201(a) (emphasis added).

A lawsuit seeking federal declaratory relief must first present an actual case or controversy in accordance with Article III, section 2 of the United States Constitution. *Aetna Life Ins. Co. of Hartford v. Haworth,* 300 U.S. 227, 239-40 (1937).  The lawsuit must also fulfill statutory jurisdictional prerequisites.  *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672 (1950).  "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc).  "This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'"  *Id.* (citing *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)).  In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court held that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Id.* at 282.  On review, a denial of declaratory jurisdiction on discretionary grounds is reviewed for "abuse of discretion." *See Id.,* 515 U.S. at 289; *see also Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952).

A court's discretion to hear declaratory actions over which it has jurisdiction is guided by the Supreme Court's announcements in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).  The *Brillhart* factors are non-exclusive and were restated in *Dizol*: "[t]he district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation."  *Dizol,* 133 F.3d at 1225 (*citing Continental Cas. Co. v. Robsac,* 947 F.2d 1367, 1371-73 (9th Cir. 1991)); *Brillhart*, 316 U.S. at 494.  "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'"  *Am. States Ins. Co. v. Kearns*,

15 F.3d 142, 144 (9th Cir. 1994) (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).  In their *en banc* decision of *Dizol*, the Ninth Circuit has noted additional and potentially relevant considerations such as:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225, n.5 (quoting *Kearns*, 15 F.3d at 145 (J. Garth, concurring))).

The Federal Circuit case of *Serco Services Co. v. Kelley Co., Inc.*, 51 F.3d 1037 (1995) is instructive.  In that case, a declaratory judgment action was filed three days before the patentholder filed an infringement suit.  The court below exercised its discretion and dismissed the declaratory judgment action.  The Federal Circuit affirmed the court's decision.  *See also*, *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) (involving the dismissal of a declaratory judgment complaint in the Central District of California).

## A. To Forum Shop, Aurora Raced to File a Flimsy Complaint On A Patent That Just Issued; It Should be Dismissed

The objective of the Declaratory Judgment Act is to remove the threat of litigation.  For this reason, the Supreme Court says that litigants should be discouraged from using declaratory actions as a means for forum shopping.  *Dizol*, 133 F.3d at 1225.  Here, Aurora raced to the courthouse the day after Fellowes' SafeSense® patent issued, solely with the hope of obtaining the forum of their choosing, with the party and singular patent of their choosing.

In stark contrast to Aurora, Fellowes purposely chose Illinois to avoid a dispute about jurisdiction.  In spite of having its Safety Switch patent favorably construed to

the point that a previous opponent conceded infringement just before trial and then

having that same patent found valid by a jury in the Eastern District of Virginia,

Fellowes chose to file its suit against Aurora in Fellowes' home jurisdiction to avoid

an accusation of forum shopping or a situation where jurisdiction might be made an

issue. Ex. C., Atkins Affidavit ¶ 1.

   Due to Aurora's continued infringing activity, Aurora gave Fellowes no choice

but to file suit. Aurora's safety switch is almost identical to the one that was conceded

as infringing in the Virginia case. *See* Ex. B., Illinois Complaint at Ex. C at pg. 2 Fig.

2 and the text ("the switch will not slide unless the button is pressed.") Indeed, in June

of 2007, Aurora America gave Fellowes the written assurance that they had "ceased

production" of their infringing shredders with Fellowes patented safety switch. Ex. C-

1. Yet sales continued, and Fellowes had to file suit.

   Hoping to forum shop by racing to this Court's clerk's office, Aurora filed a

feeble and flimsy declaratory judgment action naming only themselves and only one

Fellowes patent. In its complaint, Aurora does not refute infringement, but instead

carefully states that it seeks a declaratory judgment of no infringement. In patent law,

one cannot infringe an invalid patent claim or an unenforceable patent. *See* 35 U.S.C.

§ 101 *et seq*. The sum and substance of Aurora's <u>entire</u> invalidity and unenforceability

claims are:

   16.   Fellowes claim [sic] that the '276 [SafeSense®] Patent is valid
         and enforceable, while Aurora believes the '276 Patent is
         invalid and unenforceable. *See* D.E. 1 at ¶ 16.

   Aurora's complaint is inadequate because it does not provide "a short and plain

statement of the claim showing that the pleader is entitled to relief," as fundamentally

required by Fed. R. Civ. P. 8(a)(2); *see also Bell Atlantic v. Twombly*, 550 U.S. ___,

127 S. Ct. 1955, 1975 (2007) "[A] plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do.") The complaint does not

-8-

Fellowes Motion 1.DOC

even cite to any statute, such as the sections of 35 U.S.C. governing anticipation, obviousness, best mode, enablement, or any of the many others, to indicate which claims of invalidity or unenforceability are being pled. Furthermore, unenforceability is a claim of fraud that statutorily requires pleading "the circumstances" "with particularity" under Fed. R. Civ. P. 9(b). *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions*, 482 F.3d 1349, 1356 (Fed. Cir. 2007) (dismissal due to inadequate pleading of unenforceability under Rule 12(b)(6)); *see also Ferguson Beauregard/Logic Controls, Division Of Dover Resources, Inc., v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (finding inadequate pleading of unenforceability under Rule 12(b)(6)). Aurora provides no statutes and avers no facts to support its complaint. This is in stark contrast to Fellowes' Illinois complaint. *See* Ex. B.

Allowing this California action to go forward condones forum shopping by rewarding a race to the courthouse with a flimsy complaint immediately after a patent has issued. Doing so also works to the detriment of the patentholder, who, in spite of previous favorable adjudication, dutifully filed in Illinois. This Court should invoke its discretion and dismiss Aurora's thinly pled action.

**B.    This Court Should Dismiss This Action to Avoid Duplicative Litigation**

In addition to discouraging forum shopping, another factor that a court considers in deciding whether to abstain from agreeing to accept jurisdiction is the avoidance of duplicative litigation. Here, there is clearly duplicative litigation in which both suits were filed on the same day.

One might be tempted to try to invoke the "first-to-file" case law to this situation. A court faced with a similar same-day filing scenario stated that it could not "resort to usual rule of thumb according priority to the suit which was first in time . . . for both of the actions under consideration here were instituted on the same day." *Ashe v. PepsiCo, Inc.*, 443 F. Supp. 84, 85 (S.D.N.Y. 1977); *see also Serco Services Co.,*

1    *L.P. v. Kelley Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995).[2]  That court instead used a

2    balance of convenience analysis.  Such an analysis will be shown below in the motion

3    to alternatively transfer.   In any case, there are clearly duplicative litigations here but

4    the Illinois case includes both patents and both Aurora parties.

5        **C.    The Other Ninth Circuit Factors**

6        The Ninth Circuit identified four additional factors for declining jurisdiction

7    over declaratory judgment actions.  *Dizol*, 133 F.3d at 1225, n.5.  The first additional

8    factor is whether Aurora's declaratory action would settle all aspects of the

9    controversy.  *Id*.  The second additional factor is whether the declaratory action serves

10   a useful purpose in clarifying the legal relations at issue.  *Id*.  Even if it were properly

11   pled, complete with asserted statutes and averred facts, the declaratory action would

12   not settle all aspects of the controversy for at least two reasons: (1) the Safety Switch

13   patent is not part of the present case and (2) Aurora China is not included as a party.

14   Though the legal relations at issue might be clarified, the legal relations would not be

15   clarified in their entirety.

16       The third additional factor is whether the declaratory action is being sought

17   merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage.

18   *Id*.  While case law indicates that this is more aptly "procedural fencing" created by

19   one wanting to be in a federal court rather than state court, here the procedural fencing

20   is Aurora America studiously ignoring the Aurora China party that provides Aurora

21   America with the ability to sell its shredders in the United States and not including the

22   safety switch patent.

23       The fourth additional factor is whether the use of a declaratory action will result

24   in entanglement between the federal and state court systems.  *Id.*  This factor is not

25   implicated.

26   _____

27   [2]  Because both cases were filed on the same day, the first-to-file case law is
     inapplicable.  If that case law were deemed applicable, Fellowes believes that this case

28   should and would be dismissed because the underlying analysis is similar to that
     presented in these motions.

Fellowes Motion 1.DOC

## D.     Convenience of Parties and Other Conveniences

A Ninth Circuit *en banc* case stated that "the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." *Dizol*, 133 F.3d at 1225, n.5 (quoting *Kearns*, 15 F.3d at 145 (J. Garth, concurring)).

### 1.     Fellowes

Fellowes was founded in Chicago in 1917.  *See* Ex. A, Carson Affidavit ¶ 1.  It moved its headquarters to Itasca, Illinois in 1978 and remains located in the Northern District of Illinois.  *Id.*  Fellowes currently has over 1,000 employees in its Itasca headquarters including its business machine New Product Development ("NPD") team.  *Id.*  The inventors of the SafeSense® patent are Taihoon Matlin and Eric Gach. Mr. Matlin is employed by Fellowes in the NPD team in Itasca.  *Id.* at ¶ 2.  Mr. Gach is not a Fellowes employee but is located in the Northern District of Illinois.  *Id.* at ¶ 3. Mr. Matlin is also one of the inventors of the Fellowes' Safety Switch patent, along with Fellowes employee David Hartnett who is also located at Fellowes' headquarters with NPD team the R&D department.  *Id.* at ¶ 4.  The sales and finances for Fellowes are handled by employees in Itasca.  *Id.* at ¶ 5.  These employees would be necessary to testify about profit margins, lost profits, and their relationship to the other fifteen factors used in determining royalty damages.  *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).  The documents the witnesses are using reside in Itasca as well.  *Id.* at ¶ 5.

### 2.     Underwriters Laboratory

One of the biggest challenges is obtaining technical specifications of the many and various shredders that have been offered by Aurora to United States consumers and to thereby ensure that the infringing and non-infringing devices are more easily identified.  One place that certainly has much of this information is the Underwriters Laboratory, or UL.  Ex. C-1.  UL is  headquartered in Northbrook, Illinois, and is located in the Northern District of Illinois.  Ex. C-5.  UL also holds the certificates that

allow Aurora America to sell its shredders in the United States.  Ex. A.  In order to obtain UL approval for its shredders, a company must file technical specifications for the shredder to be approved.  Ex. A, Carson Affidavit at ¶ 16.  For example, the document attached as Ex. C-1 shows the various Aurora model numbers that have been previously approved.

### 3.    United Stationers

One of the country's largest office supply companies is also located in the Northern District of Illinois.  United Stationers, Inc., is headquartered in Deerfield, Illinois and "is North America's largest broad line wholesale distributor of business products," with 2006 sales of $4.5B.  *See* Ex. C-6, C-7.  It is expected that sales and technical information will be sought from at least this retailer, as well as others, because it currently sells Aurora shredders.  *See* Ex. C-8 or visit www.biggestbook.com.

### 4.    Aurora

According to a recent report from Dun & Bradstreet, Aurora America has 30 employees and its main office is in Torrance, California.  *See* Ex. C-9 (D&B).  The Dun & Bradstreet report states that Aurora America is a subsidiary of a foreign parent corporation called Aurora Corporation in Taiwan.  *See* Ex. C-9 (D&B).  This foreign parent (Aurora Taiwan) has applied for the United States trademark "Aurora" for use with paper shredders.   *See* Ex. C-3 (U.S TM).  Many shredders sold in the United States are sold as private brands, meaning retailers place their own name or house trademark on the items to be sold.  *See* Ex. A, Carson Affidavit at ¶ 17.

### 5.    Illinois Is Where This Case Should Be

The Ninth Circuit noted *en banc* that the convenience of the parties should be considered when declining to accept declaratory judgment jurisdiction.  In a patent case, there are typically two areas of concern: liability (infringement, invalidity, and unenforceability) and damages.  This means that Fellowes can expect to probably call a company official to give background on the company, a company official to give an overview of the shredder business, and then one or both of the inventors on each of the two patents.  For damages, one typically needs to authenticate and explain internal financial records with at least one company employee.  An accused infringer, however, needs to provide someone to explain their product and their finances, in addition to a company official to provide background on the accused company.  Fellowes reasonably expects to have more witnesses than Aurora America and therefore the convenience of the witnesses and the parties favors Fellowes.  Furthermore, the non-Fellowes employee-inventor, and at least one Aurora customer are also within the jurisdiction of the Illinois court.  For sheer convenience of <u>party</u> witnesses, Illinois is clearly the more convenient location.  Not having that jurisdiction would also negatively impact Fellowes' presentation of evidence.

A sales company like Aurora America typically does not have the complete technical drawings used in proving infringement because those are usually kept in a

1  manufacturing facility (i.e. Aurora China).  The complete financial documents are also
2  not typically located in a sales company like Aurora America as well because the sales
3  revenue typically flows through to another entity like Aurora America's Taiwan parent
4  corporation or even Aurora World Investment Ltd., a British Virginia Islands
5  corporation that is also 100% controlled by Aurora Taiwan.  *See* pg. 2 of Ex.  C-10.
6  Furthermore, the manufacturing company and any intermediaries must get paid as
7  well.  Thus, Fellowes expects that a significant portion of Aurora documentary
8  evidence will primarily come from foreign Aurora entities and not directly from
9  Aurora America.  Fellowes, however, has almost all of its expected documentary
10  evidence at its headquarters in Illinois.  The convenience of the parties, certainly with
11  regard to documentary evidence weighs, heavily in favor of Illinois.

12          **E.      Fellowes Respectfully Asks This Court To Exercise Its Discretion
13                    And Dismiss Aurora America's Complaint**

14          With its race to the courthouse and inadequate complaint, Aurora America has
15  engaged in forum shopping during the first day that the Fellowes patent right existed.
16  Fellowes took the conservative approach.  Aurora should not be rewarded with
17  jurisdiction for its filing.  The convenience of the parties, including the witnesses, third
18  parties, and documentary evidence, also weigh heavily in favor of a dismissal and that
19  is exactly what this Court should do.  We respectfully ask that Aurora America's case
20  be dismissed.

22  **III.    THIS CASE SHOULD BE TRANSFERRED TO ILLINOIS UNDER
23          § 1404(A)**

24          If this Court does not dismiss this case under the declaratory judgment
25  discretion, Fellowes respectfully requests that the Court transfer this case to the United
26  States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a)
27  because it is the more appropriate forum in which to litigate this case.

28          **A.      The Law on Venue**

Fellowes Motion 1.DOC

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Under 28 U.S.C. § 1404(a), a district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

The purpose of § 1404(a) is to "'prevent the waste of 'time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart*, 487 U.S. at 29).  To support a motion for transfer, the moving party must establish: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice."  *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D.Cal.1992).

In determining the convenience of the parties and witnesses and the interests of justice, the Ninth Circuit considers "multiple factors" including:

> (1) location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498-99.

**1.     Location Where The Relevant Agreements Were Negotiated And Executed**

The only applicable legal documents involved thus far are the asserted patents. Because a patent is a legal document whose scope is negotiated with the U.S. Patent and Trademark Office, they are at least analogous to "agreements" for the purpose of this factor. They were obtained by inventors in Illinois, including a non-employee who is located there. The inventors' documents, including invention research, prototypes, and technical drawings are also located in Illinois as are the related financial documents. Thus, the "relevant agreements" are based in Illinois.

### 2.    The State That Is Most Familiar With The Governing Law

This is not a case where a federal court in one state is being asked to apply the governing law of another state. This case involves only federal patent law, and thus both jurisdictions are equally conversant in the governing law.

### 3.    The Plaintiff's Choice Of Forum

This depends upon who the plaintiff is. Obviously Aurora America has purposely not included Aurora China and has chosen this Court's jurisdiction, and Fellowes as the plaintiff in the Illinois case has chosen the Northern District of Illinois.

### 4.    The Respective Parties' Contacts With The Forum

Aurora America has a few employees in this forum and its true manufacturing and shipping is handled by Aurora China. Furthermore, it is believed that Aurora's substantive technical and financial documents are probably located overseas. Fellowes shredders are sold in the Central District of California through retailers. Other than that, Fellowes has little contact with the forum. It does however, have a manufacturer's representative who is a California representative responsible for representing Fellowes product lines in western states. Ex. A at ¶ 18.

In addition to having Wal-Mart sell shredders nationwide, Aurora America also offers and sells shredders to United Stationers in the Northern District of Illinois. Ex. C-9, C-10. In addition to being headquartered in Illinois, inventors, their records, the rest of Fellowes NPD team, the financial records, and most of Fellowes financial sales staff are located there. *See* Carson Affidavit, Ex. A. One of the inventors of U.S.

Patent No. 7,311,276 (" '276 patent") is not a Fellowes employee but lives in the Northern District of Illinois.  Ex. A at ¶ 3.

To sell paper shredders to the public in the United States, one has to submit technical drawings to get approval from the UL.  Ex. A.  While it has numerous locations worldwide, including in China, UL is headquartered in Northbrook, Illinois. *See* http://www.ul.com/about/locations/nbk/.  Aurora China has submitted the designs for dozens of its paper shredders to UL.  *See* C-2.  Aurora China must have contacts with and approval by UL in order for Aurora America to be able to sell its shredders in the United States.

### 5.    The Contacts Relating To The Plaintiff's Cause Of Action In The Chosen Forum

Aurora America's cause of action appears to be an unspecified claim of invalidity and unenforceability of a patent.  Since there is no specificity or particularity, it is hard to determine definitive contacts at this point because there are no grounds identified for invalidity or unenforceability.  Since this is the apparent basis for Aurora America's no infringement contention, there are no apparent contacts. Fellowes' patent(s), witnesses, and related technical and financial documents are located in Illinois.

### 6.    The Differences In The Costs Of Litigation In The Two Forums

For Fellowes, the cost of litigating in Los Angeles versus Chicago will be substantial.  In addition to providing accommodations for numerous Illinois/Fellowes witnesses (company officer, department head, inventors, and financial people), there will be additional accommodations for third parties whom Fellowes could convince to testify live.[3]  Those will also likely include witnesses such as UL, United Stationers, and the non-employee inventor.  For Aurora America, with its very few potential

---

[3] If need be, expected witnesses can supply sworn affidavits detailing the level of inconvenience.

employee witnesses, the difference between a trial in California and in Illinois will be much smaller. To the extent that they rely on witnesses from another Aurora entity, the travel distance to Illinois versus California is *de minimus*. It comes down to a question of having the case where the sales department is located or where an entire company is headquartered. The cost difference between California and Illinois will be substantial for Fellowes.

### 7&8. The Availability Of Compulsory Process To Compel Attendance Of Unwilling Non-Party Witnesses; And The Ease Of Access To Sources Of Proof

These are both discussed above. Non-parties would be hard pressed to voluntarily attend a trial that involves two companies who provide them with product. Furthermore, any UL or other non-party Illinois testimony will most likely have to be provided to a California jury by videotaped deposition. The Court can appreciate the difference in impact on the jury, especially with cross-designations instead of cross-examination.

The venue rule was created to protect a defendant against a plaintiff's choice of an unfair or inconvenient forum, not the other way around. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-184 (1979). Here, the primary reason Aurora America filed in this Court is to obtain the inconvenient advantage. This case should be transferred to Illinois.

## IV. MOTION TO DISMISS, OR FOR A MORE DEFINITE STATEMENT IN THE ALTERNATIVE

It is recognized that this Court disfavors Rule 12(b)(6) motions but a dismissal would ensure that the "first-to-file" rule would then be invoked, assuming Aurora America refiled a properly detailed complaint in this Court again. *See* D.E. 4 at ¶ 5(b). This would leave Fellowes' December 26th filing in Illinois as the only viable complaint filed that day and therefore, as the first-filed complaint.

1   Aurora America did not plead unenforceability or invalidity with a "short and

2   plain statement of the claim showing that the pleader is entitled to relief" as required

3   by Fed. R. Civ. P. 8(a)(2). Indeed there is nothing because Aurora's <u>entire</u> invalidity

4   and unenforceability claims are:

5       16.   Fellowes claim [sic] that the '276 [SafeSense®] Patent is valid and

6             enforceable, while Aurora believes the '276 Patent is invalid and

7             unenforceable. *See* D.E. 1.

8   In reviewing a 12(b)(6) motion, the court construes all allegations in favor of the

9   non-moving party and accepts all well-pleaded facts and allegations as true. Aurora

10  America has included no facts and made merely conclusory and cursory allegations.

11      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

12      not need detailed factual allegations, a plaintiff's obligation to provide the

13      grounds of his entitlement to relief requires more than labels and

14      conclusions, and a formulaic recitation of the elements of a cause of

15      action will not do. Factual allegations must be enough to raise a right to

16      relief above the speculative level, on the assumption that all the

17      allegations in the complaint are true (even if doubtful in fact)." )

18  (citations, internal quotation marks and footnote omitted). Aurora America does not

19  provide even a formulaic recitation of the elements. It also does not provide any

20  factual allegations. It merely provides a conclusion and the Supreme Court ruled that

21  this is not enough. Aurora America's complaint should be dismissed under Fed. R.

22  Civ. P. 12(b)(6).

23      In addition to lacking the fundamental pleading requirements, Aurora America's

24  that the '276 patent is "unenforceable," is a claim of inequitable conduct which is a

25  claim involving fraud. See *Central Admixture Pharmacy Services, Inc. v. Advanced*

26  *Cardiac Solutions*, 482 F.3d 1349, 1356 (Fed. Cir. 2007) (dismissal due to inadequate

27  pleading of unenforceability); *see also Ferguson Beauregard/Logic Controls, Division*

28  *Of Dover Resources, Inc., v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir.

Fellowes Motion 1.DOC

2003) (finding inadequate please of unenforceability).  Since the claim alleges fraud, the complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  In the *Central Admixture* case, the Federal Circuit affirmed a dismissal with even more facts than are pled in the present case.  *Central Admixture*, 482 F.3d at 1356.  For this additional reason, Aurora America's inequitable conduct claim should also be dismissed under Fed. R. Civ. P. 12(b)(6).

If the Court does not dismiss or transfer the complaint of Aurora America, Fellowes respectfully seeks a more definite statement on the allegations of invalidity and unenforceability under Fed. R. Civ. P. 12(e).  The complaint is so vague that Fellowes cannot file a responsive pleading and this is in violation of Fed. R. Civ. P. 12(e).  *Havens Realty Corp. v. Colman*, 455 U.S. 363, 383-84 (1982) (Powell, J., concurring).  Contrary to Fed. R. Civ. P. 9(b), Aurora America's complaint does not give <u>any</u> notice of its claim of unenforceability.  *See generally In Re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

Aurora America also alleges that Fellowes patent is invalid but cites to no statute indicating what this allegation is based upon; it could be anything from an alleged anticipation to a possible lack of best mode.  Perhaps this is why the complaint cites to no invalidating prior art.  Aurora America's complaint does not give fair notice or, in fact, any notice of Aurora America's claim of invalidity.

Fellowes is therefore not able to frame a response.  This is a violation of Fed. R. Civ. P. 8(a) and Aurora America should alternatively be ordered to provide a more definite statement on invalidity and unenforceability under Fed. R. Civ. P. 12(e).  Aurora America should also explain "with particularity" the exact circumstances constituting the alleged fraud.

## V.    CONCLUSION

Fellowes moves this Court for an Order dismissing the case by declining to accept Aurora America's request for declaratory judgment or, alternatively, transferring it to the United States District Court for the Northern District of Illinois

due to venue issues.  In the alternative, Fellowes also moves for a stay of this case while the Illinois case proceeds.

Should these motions be denied, Fellowes, seeks a dismissal under Rule 12(b)(6) due to the shortcomings of the complaint.  If these requests are denied, Fellowes at least seeks a more definite statement regarding the cursory allegations of unenforceability and invalidity set forth by Aurora America.

Dated:  January 22, 2008      PILLSBURY WINTHROP SHAW PITTMAN LLP
                              EVAN FINKEL
                              WILLIAM P. ATKINS


                              By:  /s/_____
                                   Evan Finkel
                                   William P. Atkins
                                   Attorneys for Defendant
                                   FELLOWES, INC.

Fellowes Motion 1.DOC

# EXHIBIT B

Ex. B
p. 42

DAJ

**FILED**

**DECEMBER 26, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

# 07 C 7237

| | |
|---|---|
| FELLOWES, INC., | Civil Action No.: |
| Plaintiff, | District Judge: |
| vs. | Magistrate Judge: |
| AURORA CORPORATION OF AMERICA, | JURY TRIAL REQUESTED |
| and, | JUDGE KOCORAS |
| AURORA OFFICE EQUIPMENT, LTD. | MAGISTRATE JUDGE KEYS |
| Defendants. | |

### COMPLAINT

Plaintiff, FELLOWES, INC. ("FELLOWES") alleges as follows:

### PARTIES

1.     Plaintiff FELLOWES is a corporation organized and existing under the laws of

the state of Illinois, with a principal place of business located at 1789 Norwood Avenue, Itasca,

Illinois, 60143.

2.     On information and belief, Defendant AURORA OFFICE EQUIPMENT CO,

LTD. ("AURORA OFFICE EQUIPMENT") is a corporation existing under the laws of China

with a principal place of business at 388 Jianxin Road, Jiading District, 200000 Shanghai, China.

3.     On information and belief, AURORA CORPORATION OF AMERICA

("AURORA AMERICA") is a corporation existing under the laws of Delaware, with a principal

place of business at 3500 Challenger Street, Torrance, CA 90503.

400692436v1

*Ex. B*
*p. 43*

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the United States patent laws, 35 U.S.C. §§ 1 *et seq.*

5.     This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

6.     This Court has personal jurisdiction over Defendants because each has committed acts giving rise to this action within Illinois and this judicial district and has established minimum contacts within the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.  This Court has personal jurisdiction over Defendants pursuant to Illinois Long Arm Statute 735 ILCS 5/2-209 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

7.     Venue properly lies in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), 1391(c), and 1400(b), because each Defendant has committed acts within this judicial district giving rise to this action, and each Defendant "resides" in this District as it is subject to personal jurisdiction in this District.  Venue is also appropriate because Defendants do business in this judicial district, including one or more of the infringing acts of offering for sale, selling, using infringing products, or providing service and support to Defendants' customers in this District and they do so through established distribution channels.

8.     AURORA OFFICE EQUIPMENT has established contacts with the forum and purposefully availed itself of this jurisdiction by committing and continuing to commit acts of patent infringement, or inducing or contributing to others doing the same, in the Northern District of Illinois.

2

400692436v1

Ex. B
p. 44

9.      AURORA AMERICA has established contacts with the forum and purposefully availed itself of this jurisdiction by committing and continuing to commit acts of patent infringement, or inducing or contributing to others doing the same, in the Northern District of Illinois.

### PATENTS-IN-SUIT

10.     On December 25, 2007, United States Patent No. 7,311,276 (the " '276 Patent") entitled "Shredder with Proximity Sensing System" was issued by the United States Patent and Trademark Office.

11.     A copy of the '276 Patent is attached as **Exhibit A**.

12.     The '276 Patent is assigned to FELLOWES, and has been at all relevant times. FELLOWES is the owner of the '276 Patent.

13.     On May 9, 2006, United States Patent No. 7,040,559 (the " '559 Patent") entitled "Shredder With Lock For On/Off Switch" was issued by the United States Patent and Trademark Office.

14.     A copy of the '559 Patent is attached as **Exhibit B**.

15.     The '559 Patent is assigned to FELLOWES, and has been at all relevant times. FELLOWES is the owner of the '559 Patent.

### FACTS

16.     On information and belief, AURORA OFFICE EQUIPMENT manufactures and/or has manufactured shredders covered by the '276 patent.

17.     On information and belief, AURORA OFFICE EQUIPMENT manufactures or has manufactured shredders covered by the '559 patent.

18.     On information and belief, AURORA OFFICE EQUIPMENT sells or offers for

3

400692436v1

*Ex. B*
*p. 45*

sale in the United States, or imports into the United States, shredders infringing the '276 patent.

19.    On information and belief, AURORA OFFICE EQUIPMENT sells or offers for sale, or imports, and/or has sold, offered for sale, or imported, in or into the United States, shredders infringing the '559 patent.

20.    On information and belief, AURORA OFFICE EQUIPMENT is knowingly inducing and/or contributing to the direct infringement of the '276 patent.

21.    On information and belief, AURORA OFFICE EQUIPMENT has knowingly induced and/or contributed, and/or is knowingly inducing and/or contributing, to the direct infringement of the '559 patent.

22.    On information and belief, AURORA AMERICA sells or offers for sale in the United States, or imports into the United States, shredders infringing the '276 patent.

23.    On information and belief, AURORA AMERICA sells or offers for sale, or imports, and/or has sold, offered for sale, or imported, in or into the United States, shredders infringing the '559 patent.

24.    On information and belief, AURORA AMERICA is knowingly inducing and/or contributing to the direct infringement of the '276 patent.

25.    On information and belief, AURORA AMERICA has knowingly induced and/or contributed, and/or is knowingly inducing and/or contributing, to the direct infringement of the '559 patent.

26.    On information and belief, AURORA AMERICA is at least one of the sales agents for AURORA OFFICE EQUIPMENT in the United States

27.    On information and belief, AURORA AMERICA is responsible for the promotion and/or sales of shredders in the United States that are manufactured by AURORA

4

400692436v1

Ex. B
p. 46

OFFICE EQUIPMENT.

28.     On information and belief, AURORA AMERICA is at least one of the sales

agents for AURORA OFFICE EQUIPMENT in the United States and is responsible for the

promotion and/or sales in the United States of shredders manufactured by AURORA OFFICE

EQUIPMENT that infringe the '276 patent and/or the '559 patent.

### *The AS1019CS Shredder*

29.     On information and belief, AURORA AMERICA manufactures or causes the

manufacture of the Aurora AS1019CS shredder ("the AS1019CS Shredder").

30.     Attached at **Exhibit C** is a true and accurate copy of an instruction manual for the

AS1019CS Shredder.

31.     The Aurora AS1019CS shredder has a feature called Touch Guard Safety

Protection Technology ("TouchGuard").

32.     Page 2 of the Instruction Manual at **Exhibit C** states the following: "Touch

Guard™ Safety Protection Technology is featured on this paper shredder. (Figure 3)  When

powered on, the paper shredder automatically stops shredding when the metallic strip located in

the feed slot is touched.  This only occurs when in contact with the human touch or pets and is

not affected by regular inanimate objects."

33.     The TouchGuard sensor in the AS1019CS Shredder is a proximity sensor.

34.     The TouchGuard sensor in the AS1019CS Shredder can discriminate between

paper and humans or animals.

35.     The TouchGuard sensor in the AS1019CS Shredder includes an electroconductive

sensor element adjacent an opening on its housing.

36.     The TouchGuard sensor in the AS1019CS Shredder is configured to indicate a

*Ex. B*
*p. 47*

presence of a person or animal, but not a presence of paper or an optical disc, in proximity to an opening on its housing.

37.     The TouchGuard sensor in the AS1019CS Shredder detects an inherent electrical characteristic of the person or animal with an electroconductive sensor element.

38.     The TouchGuard sensor in the AS1019CS Shredder includes a controller operable to disable the shredder's cutter elements responsive to the presence of the person or animal indicated by the TouchGuard sensor.  The cutter elements are disabled by disabling power to the motor.

39.     The TouchGuard sensor in the AS1019CS Shredder detects a capacitance between an electroconductive sensor element and a person or animal.

40.     The TouchGuard sensor in the AS1019CS Shredder includes an electroconductive element in the form of a thin metal member adhered to a portion of the housing adjacent an opening.

41.     The AS1019CS Shredder has an on/off switch.

42.     The on/off switch on the AS1019CS Shredder is on the exterior of the housing.

43.     The on/off switch on the AS1019CS Shredder is electrically coupled to a motor of a shredder mechanism.

44.     The AS1019CS Shredder includes a switch lock.

45.     The AS1019CS Shredder includes a switch lock movable between (a) a locking position wherein a switch is locked in the off position and (b) a releasing position wherein the switch is released for movement from an off position.

46.     The AS1019CS Shredder includes a switch lock that includes a manually engageable portion.

6



Ex.B
p.48

47.    The AS1019CS Shredder includes a switch lock that includes a manually engageable portion provided on the exterior of a housing.

48.    The AS1019CS Shredder includes a switch lock that includes a manually engageable portion that is manually movable by a user's hand to move the switch lock between locking and releasing positions.

49.    The AS1019CS Shredder includes an on/off switch that includes a manually engageable portion manually movable by a user's hand between at least (a) an on position wherein the switch enables delivery of electric power to the motor and (b) an off position disabling the delivery of electric power to the motor.

### *The AS1219CD Shredder*

50.    The Aurora AS1219CD shredder ("the AS1219CD Shredder") is a shredder.

51.    The AS1219CD Shredder includes an on/off switch.

52.    The AS1219CD Shredder includes an on/off switch provided on an exterior of a housing.

53.    The AS1219CD Shredder includes an on/off switch that is electrically coupled to a motor of a shredder mechanism.

54.    The AS1219CD Shredder includes an on/off switch that includes a manually engageable portion manually movable by a user's hand between at least (a) an on position wherein the switch enables delivery of electric power to the motor and (b) an off position disabling the delivery of electric power to the motor.

55.    The AS1219CD Shredder includes a switch lock.

56.    The AS1219CD Shredder includes a switch lock movable between (a) a locking position wherein a switch is locked in the off position and (b) a releasing position wherein the

400692436v1

*Ex. B*
*p. 49*