# EXHIBIT 1

1 of 2 DOCUMENTS

**BUZTRONICS, INC., Plaintiff, v. THEORY3, INC., Defendant.**

### CASE NO. 1:04-cv-1485-DFH-VSS

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

*2005 U.S. Dist. LEXIS 8661*

### May 9, 2005, Decided

**COUNSEL:** [*1] For BUZTRONICS, INC., Plaintiff: David W. Gray, Todd A. Richardson, LEWIS & KAPPES, Indianapolis, IN.

For THEORY3, INC., Defendant: Ava K. Doppelt, Jeffrey S. Boyles, ALLEN DYER DOPPELT MILBRATH & GILCHRIST, Orlando, FL; Kristiana Marie Brugger, Nancy G. Tinsley, BAKER & DANIELS, Indianapolis, IN.

**JUDGES:** DAVID F. HAMILTON, JUDGE.

**OPINION BY:** DAVID F. HAMILTON

**OPINION**

ENTRY ON DEFENDANT'S MOTION TO TRANSFER

Defendant Theory3, Inc., has moved to transfer this action to the Middle District of Florida pursuant to *28 U.S.C. § 1404(a),* which authorizes transfer of a civil action to another district for the convenience of the parties and witnesses or in the interest of justice. In the alternative, Theory3 seeks a stay of this action to allow a mirror-image case to go forward in Florida. For the reasons explained below, the defendant's motion to transfer or stay is denied.

*Background*

Defendant Theory3 is a Florida corporation that develops novelty lighting devices and automotive lighting accessories. In the late 1990s, Theory3 developed a novelty LED lighting device that it called the "Tirefly." When attached to the valve stem of an automobile, motorcycle, or bicycle [*2] tire, the Tirefly produces a circular beam of colored light as the tire rotates. Theory3 secured *U.S. Patent No. 6,469,939,* ("*'939 patent*"), which issued in 2001 and of which the Tirefly is an embodiment.

Plaintiff Buztronics, Inc. is an Indiana corporation that distributes and markets novelty lighting devices such as those developed by Theory3. In 2000, the two companies agreed that Buztronics would market and distribute specialty lighting devices developed by Theory3, including the Tirefly, and would serve as liaison to the overseas manufacturer of the products. Between 2000 and 2003, Theory3 developed other lighting devices which Buztronics marketed and distributed, and for which Buztronics served as liaison to the overseas manufacturer of the products.

By January 2004, the business relationship between the companies had begun to deteriorate. In August 2004 the companies signed a dissolution agreement terminating their relationship. The dissolution agreement provided in part: "the parties acknowledge that they have products for sale and shall have products for sale in the same markets and provided that the products do not infringe intellectual property rights of either party, [*3] they are free to compete with one another in all markets." Lewis Aff., Ex. B. P 2.

Shortly after the dissolution, Buztronics brought a line of novelty lighting products to market in competition with the Tirefly and other Theory3 designs. On September 10, 2004, Buztronics filed this action against Theory3 alleging that the *939 patent* held by Theory3 was invalid and that Theory3 had falsely told several of

Buztronics' business associates, customers, and other market participants that the Buztronics products infringed Theory3 s patent. Cplt. PP 9-15.

Count I of Buztronics' four-count complaint alleged that Theory3 attempted to suppress competition from Buztronics by contacting Buztronics' product manufacturer and falsely asserting the validity of the *939 patent*, thereby casting doubt on Buztronics' legal rights to market its products and the manufacturer's legal rights to produce the products. Count I also alleged that Theory3 s contacts with Buztronics' customers falsely asserting the validity of the *939 patent* would cause confusion and deception in the marketplace. *Id.* at PP 17-19.

Count II alleged that Theory3 tortiously interfered in Buztronics' business relationship with [*4] its overseas manufacturer by contacting the manufacturer and falsely asserting the validity of the *939 patent. Id.*, PP 23-27.

Count III alleged that Theory3 tortiously interfered with Buztronics' employment contracts and confidentiality agreements with some if its employees by contacting Buztronics employees and attempting to persuade them to work for Theory3. *Id.*, PP 30-33.

Count IV reiterates the alleged invalidity of the *939 patent*, asserts that Buztronics has not infringed on the patent, and seeks a declaratory judgment to that effect. *Id., PP* 34-42. Count IV also alleges:

> Buztronics has been subjected to threats and demands under claim of legal right by [Theory3], raising disputes as to the scope and validity of the Patent, alleged infringement of [Theory3 s] claimed intellectual property rights by Buztronics and the right of Buztronics to engage in business relating to products in competition with [Theory3]. In light of [Theory3 s] threats and accusations, Buztronics has a reasonable apprehension of facing a lawsuit alleging violation of [Theory3 s] intellectual property rights.

*Id.*, P 35.

On November 12, 2004, Theory3 filed a motion [*5] in this court to dismiss Buztronics' complaint, for lack of subject matter jurisdiction as to Count IV and for failure to state a claim on the other counts. That motion remains pending.

On January 10, 2005, while the parties were still submitting papers on Theory3 s motion to dismiss, Theory3 filed suit in the Middle District of Florida against Buztronics and its CEO, Edward Lewis. Theory3 s complaint alleges patent, copyright and trade dress infringement, as well as state law claims of misappropriation of trade secrets, unfair competition, breach of fiduciary duty, and breach of a confidentiality agreement. See Docket No. 31, Ex. 1 to Supplemental Declaration.

On February 24, 2005, Theory3 filed its motion in this court to transfer this action to the Middle District of Florida pursuant to *28 U.S.C. § 1404(a)* or to stay this action. This court has jurisdiction pursuant to *28 U.S.C. §§ 1331, 1332 & 1338*.

*Discussion*

The law "abhors a multiplicity of suits." *Martin v. Graybar Electric Co., 266 F.2d 202, 205 (7th Cir. 1959)* (reversing denial of injunction against duplicate federal civil suits). That is the prospect [*6] here. Two lawsuits between the same parties are pending and arise out of the same facts. Nearly all the claims of both parties call for resolution of one common issue: the validity of the *939 patent*. That issue need not be adjudicated twice. The question is whether it should be adjudicated in Indiana or Florida. The answer under governing law is Indiana.

I. *The Federal Circuit's Presumption in Favor of First-Filed Action*

Count IV of Buztronics' complaint, seeking declaratory relief that the *939 patent* is invalid, is the foundation of the complaint in this case. All three of Buztronics' claims for coercive relief allege that the *939 patent* is invalid, and that Theory3 knows it is invalid. Theory3's complaint in the Florida forum seeks coercive relief for infringement of the same patent, among other claims. Where a declaratory action and a coercive action involving the same parties and issues present, as here, the specter of redundant litigation requiring transfer or dismissal of one of them, the Seventh Circuit applies a general rule in favor of the coercive action even if, as here, the coercive action was filed later. *Tempco Elec. Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987)* [*7] (affirming dismissal of

first-filed declaratory judgment action in favor of later-filed coercive action for trademark infringement). [1]

> [1]  *Tempco* held that a district court's decision whether to allow a declaratory judgment action to proceed should be reviewed *de novo* by the appellate court. *819 F.2d at 749.* The Supreme Court later held that such decisions by a district court are subject to review only for abuse of discretion. *Wilton v. Seven Falls Co., 515 U.S. 277, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995).*

However, the Seventh Circuit is not the source of governing law to be applied by this court in ruling on this motion. Because Buztronics' claim for declaratory judgment of patent invalidity arises under patent law, this court's jurisdiction is premised in part on *28 U.S.C. § 1338.* Similarly, jurisdiction in the Theory3 action in Florida for patent infringement also is based on *§ 1338.* Under *28 U.S.C. § 1295,* therefore, the United States Court of Appeals [*8] for the Federal Circuit will have exclusive jurisdiction over an appeal of either district court's decision.

To promote uniformity of patent law nationwide, the Federal Circuit applies its own circuit law when reviewing district court decisions on patent law issues. See *Midwest Industries, Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999).* The Federal Circuit treats the choice of forum in this situation of mirror-image declaratory and coercive patent claims as an issue of patent law. In fact, the Federal Circuit has specifically rejected the Seventh Circuit's approach set forth in *Tempco.* The Federal Circuit applies instead a general rule in patent cases "favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience." *Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 938 (Fed. Cir. 1993)* (vacating dismissal of first-filed declaratory action and declining to apply Seventh Circuit's *Tempco* presumption favoring forum of coercive action in patent cases), overruled on other grounds, *Wilton v. Seven Falls, Inc., 515 U.S. 277, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995);* see also *Electronics for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005)* [*9] (reversing dismissal of declaratory judgment action and adhering to *Genentech* first-to-file rule for patent cases); *Serco Services Co. v. Kelley Co., 51 F.3d 1037, 1038 (Fed. Cir. 1995)* (affirming dismissal of declaratory judgment action as exercise of discretion where convenience of parties

overcame *Genentech* presumption in favor of first-filed action).

The Federal Circuit in *Genentech* explained that applying the *Tempco* rule in patent cases would "automatically grant the patentee the choice of forum, whether the patentee had sought -- or sought to avoid -- judicial resolution of the controversy." *998 F.2d at 937.* This result would be "contrary to the purpose of the *Declaratory Judgment Act* to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Id.*

The Federal Circuit acknowledges, however, that there are exceptions to the general rule favoring the first-filed litigant in patent cases. Such exceptions "are not rare and are made when justice or expediency requires, as in any issue of choice of forum." *998 F.2d at 937.*

## II. [*10] *The Relevant Factors*

In this case the choice of forum issue involves a motion to transfer venue pursuant to *28 U.S.C. § 1404(a).* Under *section 1404(a),* a district court in which a suit is filed with proper venue, may "for the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a).* The focus for the "interest of justice" factor is on "the efficient functioning of the courts." *Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986).*

The factors a district court must consider in ruling on a motion to transfer under *section 1404(a)* closely track those the Federal Circuit identified in *Genentech* as possibly warranting exceptions to the general rule in favor of the first-filed action in patent cases. In *Genentech,* the Federal Circuit stated that an exception to the first-to-file rule would require "sound reason that would make it unjust or inefficient to continue the first-filed action." *998 F.2d at 938.* Such reasons could include "convenience and availability [*11] of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* The most important consideration is "conservation of judicial resources and the comprehensive disposition of litigation." *Id.,* citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 96 L. Ed. 200, 72 S. Ct. 219, 1952 Dec.*

*Comm'r Pat. 407 (1952).*

There is no question of jurisdiction over the relevant parties. Accordingly, under *Genentech* and *section 1404(a)*, the relevant factors here are convenience to the parties, availability of witnesses, and judicial economy. The Federal Circuit has also noted that a district court may consider whether a first-filed declaratory action is anticipatory and motivated by forum shopping. *Serco Services Co. v. Kelley Co., 51 F.3d 1037, 1040 (Fed. Cir. 1995).*

A. *Convenience*

It is well-established that "the effect of a transfer cannot be a mere shift of inconveniences" among the parties. *Moore v. AT & T Latin Am. Corp., 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001)*, citing *Promatek Med. Sys., Inc. v. Ergometrics, Inc., 1990 U.S. Dist. LEXIS 2068, 1990 WL 19491, [\*12] at \*4 (N.D. Ill. 1990)*; accord, *Educational Visions, Inc. v. Time Trend, Inc., 2003 U.S. Dist. LEXIS 6758, 2003 WL 1921811, at \*7 (S.D. Ind. April 17, 2003)* (denying motion to transfer that would have merely shifted inconvenience between parties).

The Southern District of Indiana is undoubtedly less convenient for the Florida-based Theory3 and its principals. Def. Br. 7-10. The Middle District of Florida is likewise undoubtedly less convenient for the Indiana-based Buztronics and its principals. Pl. Br. 8-10. As the party supporting transfer, Theory3 has the burden to show that the Middle District of Florida is "clearly more convenient" than the Southern District of Indiana. *Coffey, 796 F.2d at 220.* It has not done so. Convenience to the parties in this case is a neutral factor and does not provide a sound reason to make an exception to the Federal Circuit's general rule favoring the first-filed action in patent cases.

B. *Availability of Witnesses*

A major concern under *section 1404(a)* is the availability of non-party witnesses. Courts generally assume that the parties will be sufficiently motivated to have their own employees or other allies appear in person for trial [\*13] wherever it might take place. See, *e.g., FUL Inc. v. Unified Sch. Dist. No. 204, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993)*, cited in *Greene Mfg. Co. v. Marquette Tool & Die Co., 1998 U.S. Dist. LEXIS 10656, 1998 WL 395155, at \*3 (N.D. Ill. July 9, 1998).* Parties may use *Rule 45 of the Federal Rules of Civil Procedure*

to conduct discovery all over the United States, so the principal concern along these lines is to make non-party witnesses available for trial. The aim is to minimize the risk of "trial by deposition." See, *e.g., Volkswagen Aktiengesellschaft v. Dee Engineering, Inc., 2003 U.S. Dist. LEXIS 3550, 2003 WL 1089515, at \*4 (S.D. Ind. March 4, 2003); Kendall U.S.A., Inc. v. Central Printing Co., 666 F. Supp. 1264, 1268 (N.D. Ind. 1987); Preston v. Missouri-Nebraska Exp., Inc., 1991 U.S. Dist. LEXIS 15175, 1991 WL 626751, at \*2 (W.D. Mo. Oct. 16, 1991).*

In this case, all or nearly all of the non-party witnesses the parties have identified are either employed by or closely affiliated with the side that may call them to testify. See, *e.g.,* Def. Br. at 10-11. The court therefore can assume that each party would probably be able to secure [\*14] the presence of its allies or affiliates for trial even in what ends up being the more distant venue for one of the parties. The availability of non-party witnesses is a neutral factor and also does not provide a sound reason to make an exception to the first-to-file rule.

C. *Judicial Economy*

The focus for this factor under *section 1404(a)* is on "the efficient functioning of the courts." *Coffey, 796 F.2d at 221.* This consideration includes "trying related litigation together." *Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989)*, citing *Coffey, 796 F.2d at 221.* In *Genentech*, the Federal Circuit noted the importance of avoiding a "redundancy of litigation" and of "preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *998 F.2d at 938* (citation omitted).

Buztronics' claims pending in this court and Theory3's claims pending in the Middle District of Florida plainly ought to be adjudicated in a single action. Determining the validity of the *939 patent* will be essential to the resolution of each action and may [\*15] be dispositive. Adjudicating that issue more than once would be a waste of judicial resources. The remaining issues arise from one common series of transactions and events. These involve the parties' business agreements and collaboration bringing the Tirefly and related novelty lighting devices to market between 2000 and 2003, the packaging and promotion of Buztronics' own allegedly infringing line of lighting devices, and the conduct of each party in the aftermath of their dissolution. If both cases were to go forward, redundant judicial effort would be certain.

Of course, granting Theory3 s motion to transfer the case to Florida would eliminate these risks of wasted judicial resources. But denying the motion and requiring Theory3 to pursue its claims as counterclaims to Buztronics' action in this court would likewise avoid the risks of judicial waste. Accordingly, as with considerations of convenience to the parties and availability of witnesses, the interest of justice -- *i.e.*, judicial economy -- is a neutral factor and does not amount to "sound reason" to make an exception to the Federal Circuit's general rule in patent cases. Under *Genentech*, therefore, the first-filed [*16] action should go forward in this district.

D. *Anticipatory Suit*

Finally, Theory3 contends that Buztronics filed an anticipatory suit motivated by forum-shopping. Therefore, according to Theory3, an exception to the *Genentech* rule is warranted. The court disagrees.

When ruling on the dismissal or transfer of a declaratory action, a district court may consider whether a party intended to preempt another's infringement suit. *Electronics for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed. Cir. 2005),* citing *Serco Services Co., 51 F.3d at 1040.* However, the Federal Circuit has said that such intent is "merely one factor in the analysis." *Id. at 1347-48.* Other factors include those identified in *Genentech. Id. at 1348,* citing *Genentech, 998 F.2d at 938.* By itself, the anticipatory nature of a first-filed suit does not warrant an exception to the general rule. As the Federal Circuit explained in *Serco Services:* "The creation of this court has in large part tempered the impact of traditional forum shopping in patent cases, so the stakes of a race to the courthouse are less severe." *51 F.3d at 1040.*

The [*17] Federal Circuit in *Electronics for Imaging* reversed dismissal of a first-filed declaratory action as an abuse of discretion where the district court had based the dismissal solely on the anticipatory nature of the action. The Federal Circuit explained:

In *Genentech*, we reversed the district court's dismissal of a declaratory action, as it was premised solely on the fact that the suit was designed to anticipate a later-filed complaint in another forum. On the other hand, in *Serco Services*, the district court dismissed Serco's declaratory action as

anticipatory, but did so in view of other factors, including the location of witnesses and documents. *Serco Servs., 51 F.3d at 1039-40.* We affirmed the dismissal in *Serco Services* because the district court did not rely solely on the anticipatory nature of Serco's declaratory action. *Id. at 1040.*

*394 F.3d at 1348.* In this case, as explained above, no other relevant factors weigh in favor of the Florida action, so under *Electronics for Imaging*, this court would abuse its discretion by transferring this action based solely on its supposed anticipatory nature.

[*18] In any event, though, the court is not persuaded that this suit was anticipatory in the pejorative sense. Buztronics filed this action a few days after Theory3 sent a facsimile message to dealers and distributors of its products. The message cast a shadow over Buztronics' efforts to compete with it. The Theory3 letter, issued September 7, 2004, said that Buztronics' products "appear to be substantially similar to our patented TIREFLYS(R) and COLORMORPHICS(R) product lines." Deutsch Aff. Ex. G. The letter added: "we believe that these new products might infringe our intellectual property rights, and we are currently investigating this matter with our attorneys to determine whether any legal action should be taken. We want to state plainly that we are committed to protecting and enforcing our patents and other intellectual property, and that we will vigorously defend these valuable rights against anyone we believe is making or selling infringing goods." *Id.* Also on September 7, 2004, Theory3 sent a separate message to the manufacturer who made Tirefly products for Theory3 and Buztronics. With the "re:" line "Tireflys infringement," Theory3 wrote in part: "Please be aware that we [*19] are resolute in protecting our intellectual property rights from infringement by ANYONE. We have proven in the past that we will take aggressive legal action against anyone who infringes our patents and other intellectual properties, and will do so in the future as necessary." Deutsch Aff. Ex. H. This message was sufficient to prompt the manufacturer to ask Buztronics for indemnification for any claim that Theory3 might assert.

These messages to the market fit within the Federal Circuit's colorful description of a scenario that can support a declaratory judgment complaint: "In the patent

version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734-35 (Fed. Cir. 1988).* Buztronics was entitled to go to court promptly to seek declaratory relief without waiting indefinitely until Theory3 decided whether to file suit, which it **[*20]** did not do for another four months.

*Conclusion*

For the reasons stated above, Theory3 s motion to transfer this action to the Middle District of Florida or to stay this action is denied. The court will address Theory3 s motion to dismiss in the near future.

So ordered.

Date: May 9, 2005

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana