**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| FELLOWES, INC., <br><br>             Plaintiff, <br><br> vs. <br><br> AURORA CORP. OF AMERICA, <br><br>           and, <br><br> AURORA OFFICE EQUIPMENT, LTD. <br><br>           Defendants. | **Civil Action No.: 07 C 7237** <br> **District Judge: Charles P. Kocoras** <br> **Magistrate Judge: Arlander Keys** |

## AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

Defendants AURORA CORPORATION OF AMERICA and AURORA OFFICE EQUIPMENT, LTD. ("Aurora") submit the following Preliminary Invalidity Contentions for U.S. Patents Numbers 7,311,276 (the '276 patent), 7,040,559 (the '559 patent), and 7,344,096 (the '096 patent) (collectively referred to as the patents-in-suit):

Aurora submits these contentions in the form that such disclosures would be submitted under the Patent Local Rules of the United States District Court for the Northern District of California, in particular, Patent Local Rules 3-3 and 3-4. Aurora notes, however, that, because of this court's direction that Fellowes' Preliminary Infringement Contentions (which would be submitted under Rules 3-1 and 3-2) and Aurora's Preliminary Invalidity Contentions be submitted simultaneously, Aurora has been forced to prepare these contentions without the disclosures and the time period provided for under the Northern District of California's Patent Local Rules. Specifically, if those rules were being followed, Fellowes would have been required to provide full infringement disclosures (including a claim chart), the file history for each asserted patent as documents establishing the date of conception and the date of reduction

to practice, as well as documents showing the first offer for sale. Fellowes would also have been required to provide full file histories for each patent including all cited prior art.

Other than interrogatory responses received a week ago which only summarily noted which claims Fellowes was claiming were infringed, Fellowes has provided none of this.

Aurora would then have had <u>45 days</u> to prepare its invalidity responses.

Here, Aurora has had to piece together what it believes Fellowes is asserting as to the claims for each patent in this case from discovery responses. Each such response refers to the claims as "examples" of asserted claims or "at least claims" being asserted. Moreover, Aurora has had to obtain its own copy of the file histories of the asserted patents, as well as the cited prior art. Most importantly, Aurora has only had a week's notice of which claims Fellowes is even asserting. Because Aurora is operating at a substantial disadvantage in comparison to its position under the California Northern District Patent Local Rules, Aurora submits this document as preliminary infringement contentions and reserves the right to amend, supplement, modify, and/or change these contentions at a later date. For convenience, however, Aurora provides these disclosures in the form they would be submitted under the California Northern District's Patent Local Rules and citations to "L.R. 3-3" and "L.R. 3-4," for example, should be understood in that context and not as a representation that the California Northern District Patent Local Rules are applicable to this action or that Aurora is bound by their requirements.

Aurora makes these invalidity contentions based upon its current knowledge, its understanding of the proper construction of the asserted claims of the patents-in-suit, its current understanding of Fellowes' assertions of claim construction, and Fellowes' assertions of infringement. Aurora reserves the right to amend, supplement, modify and/or change these contentions in response to: (1) Fellowes' proffered claim constructions; (2) the Court's construction of the asserted claims; (3) any further revision, clarification, or expansion of Fellowes' infringement theories; (4) any change in the law during the course of this action; and (5) identification/awareness of additional facts relating to the prior art and/or new prior art. Discovery has only recently commenced in this action. Aurora anticipates the discovery of facts

and documents relevant to its invalidity contentions pursuant to third-party discovery which has yet to take place.

Aurora also reserves the right to amend, supplement, modify and/or change these contentions in response to expert analysis and/or testimony as well as in response to any new information, facts or theories relating to the validity of the claims of the patents-in-suit.

Aurora is not filing with the Court the actual prior art references cited herein, but is providing them (in electronic format, on a CD) to Fellowes' counsel.  Aurora's counsel will bring a CD containing such references to the September 4, 2008 status conference if the court wishes to have a copy.

## I.  THE '276 PATENT

**A.  Patent L.R. 3-3(a) The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher.**

Pursuant to Patent L.R. 3-3(a), Aurora identifies the following prior art references that anticipate and/or render obvious the asserted claims of the '276 patent.

1. 3,111,800, US, November 26, 1963
2. 3,619,537, US, November 9, 1971
3. 3,743,865, US, July 3, 1973
4. 3,764,819, US, October 9, 1973
5. 3,772,685, US, November 13, 1973
6. 3,785,230, US, January 15, 1974
7. 3,829,850, US, August 13, 1974
8. 3,947,734, US, March 30, 1976
9. 4,117,752, US, October 23, 1978
10. 4,162,042, US, July 24, 1979

11.    4,260,114, US, April 7, 1981

12.    4,323,829, US, April 6, 1982

13.    4,352,980, US, October 5, 1982

14.    4,499,804, US, February 19, 1985

15.    4,518,958, US, May 21, 1985

16.    4,564,146, US, January 14, 1986

17.    4,683,381, US, July 28, 1987

18.    4,753,323, US, June 28, 1988

19.    5,081,406, US, January 14, 1992

20.    5,166,679, US, November 24, 1992

21.    5,186,398, US, February 16, 1993

22.    5,318,229, US, June 7, 1994

23.    5,345,138, US, September 6, 1994

24.    5,397,890, US, March 14, 1995

25.    5,436,613, US, July 25, 1995

26.    5,494,229, US, February 27, 1996

27.    5,621,290, US, April 15, 1997

28.    5,667,152, US, September 16, 1997

29.    5,775,605, US, July 7, 1998

30.    5,850,342, US, December 15, 1998

31.    5,897,065, US, April 27, 1999

32.    5,921,367, US, July 13, 1999

33.    5,942,975, US, August 24, 1999

34.    5,988,542, US, November 23, 1999

35.    6,044,632, US, April 4, 2000

36.    6,065,696, US, May 23, 2000

37.    6,079,645, US, June 27, 2000

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

38.   6,113,017, US, September 5, 2000

39.   6,116,528, US, September 12, 2000

40.   6,265,682, US, July 24, 2001

41.   6,376,939, US, April 23, 2002

42.   6,418,004, US, July 9, 2002

43.   6,501,198, US, December 31, 2002

44.   6,536,536, US, March, 25, 2003

45.   6,655,943, US, December 2, 2003

46.   6,676,460, US, January 13, 2004

47.   6,724,324, US, April 20, 2004

48.   6,813,983, US, November 9, 2004

49.   6,822,698, US, November 23, 1994

50.   6,826,988, US, December 7, 2004

51.   6,834,730, US, December 28, 2004

52.   6,857,345, US, February 22, 2005

53.   6,877,410, US, April 12, 2005

54.   6,880,440, US, April 19, 2005

55.   6,920,814, US, July 26, 2005

56.   6,922,153, US, July 26, 2005

57.   6,945,148, US, September 20, 2005

58.   6,945,149, US, September 20, 2005

59.   6,957,601, US, October 25, 2005

60.   6,979,813, US, December 27, 2005

61.   6,994,004, US, February 7, 2006

62.   6,997,090, US, February 14, 2006

63.   7,000,514, US, February 21, 2006

64.   7,024,975, US, April 11, 2006

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

65.    7,040,559, US, May 9, 2006

66.    7,055,417, US, June 6, 2006

67.    7,077,039, US, July 18, 2006

68.    7,083,129, US, August 1, 2006

69.    7,093,668, US, August 22, 2006

70.    7,098,800, US, August 29, 2006

71.    7,100,483, US, September 5, 2006

72.    7,121,358, US, October 17, 2006

73.    7,137,326, US, November 21, 2006

74.    7,171,879, US, February 6, 2007

75.    7,171,897, US, February 6, 2007

76.    7,197,969, US, April 3, 2007

77.    7,210,383, US, May 1, 2007

78.    7,225,712, US, June 5, 2007

79.    7,228,772, US, June 12, 2007

80.    7,231,856, US, June 19, 2007

81.    7,284,467, US, October 23, 2007

82.    7,290,472, US, November 6, 2007

83.    7,308,843, US, December 18, 2007

84.    7,328,752, US, February 12, 2008

85.    2002/0017175, US, February 14, 2002

86.    2002/0017176, US, February 14, 2002

87.    2002/0017178, US, February 14, 2002

88.    2002/0017179, US, February 14, 2002

89.    2002/0017180, US, February 14, 2002

90.    2002/0017181, US, February 14, 2002

91.    2002/0017182, US, February 14, 2002

92.    2002/0017183, US, February 14, 2002

93.    2002/0017184, US, February 14, 2002

94.    2002/0017336, US, February 14, 2002

95.    2002/0020261, US, February 21, 2002

96.    2002/0020262, US, February 21, 2002

97.    2002/0020263, US, February 21, 2002

98.    2002/0020265, US, February 21, 2002

99.    2002/0020271, US, February 21, 2002

100.    2002/0056348, US, May 16, 2002

101.    2002/0056349, US, May 16, 2002

102.    2002/0056350, US, May 16, 2002

103.    2002/0059853, US, May 23, 2002

104.    2002/0059854, US, May 23, 2002

105.    2002/0059855, US, May 23, 2002

106.    2002/0066346, US, June 6, 2002

107.    2002/0069734, US, June 13, 2002

108.    2002/0170399, US, November 21, 2002

109.    2002/0170400, US, November 21, 2002

110.    2002/0190581, US, December 19, 2002

111.    2003/0002942, US, January 2, 2003

112.    2003/0005588, US, January 9, 2003

113.    2003/0015253, US, January 23. 2003

114.    2003/0019341, US, January 30, 2003

115.    2003/0020336, US, January 30, 2003

116.    2003/0037651, US, February 27, 2003

117.    2003/0056853, US, March 27, 2003

118.    2003/0058121, US, March 27, 2003

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

119.    2003/0090224, US, May 15, 2003

120.    2003/0131703, US, July 17, 2003

121.    2003/0140749, US, September 11, 2003

122.    2003/0196824, US, October 23, 2003

123.    2003/0202851, US, October 30, 2003

124.    2004/0008122, US, January 15, 2004

125.    2004/0017294, US, January 29, 2004

126.    2004/0040426, US, March 4, 2004

127.    2004/0163514, US, August 26, 2004

128.    2004/0173430, US, September 9, 2004

129.    2004/0194594, US, October 7, 2004

130.    2004/0226800, US, November 18, 2004

131.    2005/0039586, US, February 24, 2005

132.    2005/0039822, US, February 24, 2005

133.    2005/0066784, US, March, 2005

134.    2005/0103510, US, May, 2005

135.    2005/0139051, US, June, 2005

136.    2005/0139056, US, June, 2005

137.    2005/0139057, US, June, 2005

138.    2005/0139058, US, June, 2005

139.    2005/0139459, US, June, 2005

140.    2005/0155473, US, July, 2005

141.    2005/0166736, US, August, 2005

142.    2006/0091247, US, May, 2006

143.    Physics Central: People in Physics: Steve Gass, 2008, American Physical Society

144.    2004/0043696 A1, US, March 4, 2004

145.    2002/0111702A1, US, August 15, 2002

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

146.    2004/0181951 A1, US, September 23, 2004

147.    A Capacitance Based Proximity Sensor for Whole Arm Obstacle Avoidance, J.L. Novak and J.T. Feddema, Sandia National Laboratories

148.    A Magneto Sensitive Skin for Robots in Space, July 14, 1991, D.S. Chauhan and P.H. DeHoff, P.I., UNC Charlotte

149.    Applying Electric Field Sensing to Human Computer Interfaces, Thomas G. Zimmerman, Joshua R. Smith, Joseph A. Paradiso, David Allport1, Neil Gershenfeld, MIT Media Laboratory - Physics and Media Group

150.    Proximity Sensors, 2003, Frank Ebel, Siegfried Nestel, Festo Didactic GmbH & Co. KG

151.    Capacitive Detection of Humans for Safety in Industry – a Numerical and Experimental Investigation, 1998, Lennart Bavall and Nils Karlsson, IOP Publishing Ltd.

152.    Collision Avoidance during Teleoperation using Whole Arm Proximity Sensor Coupled to a Virtual Environment, J.L. Novak, J.T. Feddema, N.E. Miner and S.A. Stansfield

153.    Concepts and Techniques of Machine Safeguarding, 1992, U.S. Department of Labor, Occupational Safety and Health Administration, U.S. Government Printing Office

154.    D412716,  US, August 10, 1999

155.    DE 3313232 A1, Germany, October 18, 1984

156.    DE412133O, Germany, January 14, 1993

157.    DE 8619856.4, Germany, October 20, 1988

158.    DE19703575, Germany, August 13, 1998

159.    DE3819285, Germany, December 14, 1989

160.    Designing a Safe, Highly Productive System, May 30, 2002, Steve Freedman, thefabrcator.com

161.    Electric Field Sensing for Graphical Interfaces, May/June 1998, Joshua Smith, Tom White, Christopher Dodge, Joseph Paradiso, and Neil Gershenfeld, IEEE Computer Graphics and Applications

162.    EP 0855221 A1, Europe, July 29, 1998

163.    EP 0191137 A2, Europe, August 20, 1986

164.    EP 0191137 A3, Europe, August 20, 1986

165.    EP 0522071 A4, Europe, May 19, 1993

166.    EP 0562076 A1, April 29, 1993

167.    EP 0562076 B1, Europe, June 28, 1995

168.    EP1195202, Europe, April 10, 2002

169.    EP1442834A1, Europe, August 4, 2004

170.    GB1132708A, England, November 6, 1968

171.    GB2199962A, England, July 20, 1988

172.    G-Force in Action:  Machining, Gorbel, Inc.

173.    Guard Interlocking for Self-Propelled Harvesting Machinery, 2002, Andrew J. Scarlett BSc, PhD, MIAgrE, James S. Price, HND, AMIAgrE, and Ian R. Meeks

174.    Industrial Guarding Program Energy Sources, Machinery, Equipment and Materials, September 2002, OFSWA

175.    International Search Report and Written Opinion for PCT/US2005/028290, Nov. 21, 2005.

176.    JP 040180852 A, Japan, June 29, 1992

177.    JP 04157093 A, Japan, May 5, 1992

178.    JP 07-039778A, Japan, October 2, 1995

179.    JP 11216383 A, Japan, August 10, 1999

180.    JP 2000346288 A, Japan, December 15, 2000

181.    JP 2004321993 A, Japan, November 18, 2004

182.    JP 05211691 A, Japan, August 20, 1993

183.    JP 57-76734, Japan, 1982

184.    JP 06277548A2, Japan, October 4, 1994

185.    JP 07299377 A, Japan, November 14, 1995

186.    JP 09262491A2, Japan, October 10, 2007

187.    JP 03143552 A, Japan, June 19, 1991

188.    JP 05014164 A, Japan, January 22, 1993

189.    JP 05092144 A, Japan, April 16, 1993

190.    JP 05280243 A, Japan, October 26, 1993

191.    JP 07157012 A, Japan, June 20, 1995

192.    JP 09070551 A, Japan, March 18, 1997

193.    JP 09-075763, Japan, March 25, 1997

194.    JP 09139161 A, Japan, May 27, 1997

195.    JP 10-048344 A, Japan, February 20, 1998

196.    JP 10-089592 A, Japan, April 10, 1998

197.    JP 2000076014 A, Japan, March 14, 2000

198.    JP 2001150383 A, Japan, June 5, 2001

199.    JP 2001-349139, Japan, December 21, 2001

200.    JP 2004321993A, Japan, November 18, 2004

201.    JP 62146877A, Japan, June 30, 1987

202.    Navigating the Maze of Proximity Sensor Selection, 1999, Rockwell International

Corp.

203.    He Took On the Whole Power-Tool Industry, 2007, Melba Newsom, Mansueto

Ventures LLC

204.    OSHA Hazard Information Bulletins- The Limitations of Radiofrequency

Presence Sensing Devices, Edward Baier,  September 21, 1987, U.S. Department of

Labor

205.    Photoelectric Sensors Open the Door on New Uses, September 1, 2004, Panasonic Electric Works UK

206.    QProx-Charge Transfer Touch Sensor, 2001, Quantum Research Group Ltd

207.    Presence Sensing Safety Devices Safety Mats Overview, June 3, 2003, Allen-Bradley, Guardmaster

208.    SawStop Finger-Saver Update, July/August 2004, Tom Bengnal, Fine Woodworking Magazine, Issue 171 pg. 34

209.    Sensor Enables Nonstop Safety, 2000, Pro-Talk Ltd, UK

210.    Sensor Evaluation for Human Presence Detection, 1997, Regents of the University of Minnesota, John Shutske et al.

211.    Tablesaw blade safety device, July 29, 2003, WOODWEB, Inc

212.    Theory and Application of a Capacitive Sensor for Safeguarding in Industry, 1994, Nils Karlsson, IEEE

213.    Ti's Digital Signal Controllers Put Brake On SawStop Table Saw, February 9, 2005, pp.1-3

214.    2005/070553, WO, August 4, 2005

215.    91/16569 A1, WO October 31, 1991

216.    93/08356 A1, WO, April 29, 1993

217.    96/37350 A1, WO, November 28, 1996

218.    Safeguarding Woodworking Machines and Worker Safety, April 11-12, 1984, Ryszard Szymani, WOODWEB, Inc.

**B.   L. R.3-3(b); Whether each item of prior art anticipates each asserted claim or renders it obvious as to the '276 patent.  If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified.**

Pursuant to L. R.3-3(b), Aurora identifies each item of anticipatory prior art as to each asserted claim.  Aurora takes a broad reading of the scope of the claim limitations only for

purposes of this submittal and does not waive, disclaim, or exclude a narrower construction of the terms in the future.  Also, Aurora identifies each item of obviousness prior art and any combination of prior art references that would render a claim obvious as to each such claim and the motivation to combine such references.

Aurora's application of L. R. 3-3(b) is in light of the recent Supreme Court decision in the landmark obviousness case of KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742 (U.S. 2007) ("KSR") and subsequent Federal Circuit rulings.

KSR reaffirmed the obviousness investigation for not only the combination of prior art patents and printed publications, but also the general precepts of the obviousness inquiry.  No longer is a rigid approach of the teaching, suggestion, or motivation to combine test the exclusive standard for sustaining obviousness as it relates to the combination of multiple prior art references.

Obviousness is determined from the perspective of a person of ordinary skill in the art at the time of the invention.  Such a person is deemed to have a working knowledge of the field.  This would extend to prior art patents as identified in these infringement contentions.

Such a person would understand the simplicity and desirability of including a proximity sensor with a paper shredder.

A person of ordinary skill in the art is a person of ordinary creativity, not an automaton, and would see the benefits of increasing the safety of a product.  This person would also recognize the design incentives and market driven forces associated with improving the safety of a paper shredder

A person of such skill would also be familiar with proximity sensors such as capacitive sensors.

### 1.    Anticipatory prior art as to the '276 patent.

The following table identifies patents each of which anticipates every limitation, either expressly or inherently, of claims 1, 2, 5-7, 12-14, 22-24, 27-28, 31-34, 37-38, 41-44, 47-

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

48, 51-54, 57-58, 61-64, 67-70, 73-76, 79-81, 84-85, 88-90, 93-94, 97-99, 102-103, 106-108, and 111-112of the '276 patent:

| JP 10-048344 | JP 57-76734 | | | |
|---|---|---|---|---|

Aurora reserves the right to supplement and amend these contentions based on further investigation, construction of the claims by the Court, and modification of Fellowes' contentions.

## 2. References that render the claims of the '276 patent obvious.

The following table identifies patents the combination of which renders claims 1, 2, 5-7, 12-14, 22-24, 27-28, 31-34, 37-38, 41-44, 47-48, 51-54, 57-58, 61-64, 67-70, 73-76, 79-81, 84-85, 88-90, 93-94, 97-99, 102-103, 106-108, and 111-112 of the '276 patent obvious:

| US 3,111,800 | US 3,619,537 | US 3,743,865 | US 3,764,819 |
|---|---|---|---|
| US 3,764,819 | US 3,772,685 | US 3,785,230 | US 3,829,850 |
| US 3,947,734 | US 4,117,752 | US 4,162,042 | US 4,260,114 |
| US 4,352,980 | US 4,499,804 | US 4,518,958 | US 4,564,146 |
| US 4,683,381 | US 4,753,323 | US 5,081,406 | US 5,166,679 |
| US 5,186,398 | US 5,318,229 | US 5,345,138 | US 5,397,890 |
| US 5,436,613 | US 5,494,229 | US 5,621,290 | US 5,667,152 |
| US 5,775,605 | US 5,850,342 | US 5,921,367 | US 5,942,975 |
| US 6,044,632 | US 6,065,696 | US 6,079,645 | US 6,113,017 |
| US 6,116,528 | US 6,265,682 | US 6,376,939 | US 6,418,004 |
| US 6,501,198 | US 6,536,536 | US 6,655,943 | US 6,676,460 |
| US 6,724,324 | US 6,813,983 | US 6,822,698 | US 6,826,988 |
| US 6,834,730 | US 6,857,345 | US 6,877,410 | US 6,880,440 |
| US 6,920,814 | US 6,922,153 | US 6,945,148 | US 6,945,149 |
| US 6,957,601 | US 6,979,813 | US 6,994,004 | US 6,997,090 |
| US 7,000,514 | US 7,024,975 | US 7,040,559 | US 7,055,417 |
| US 7,077,039 | US 7,083,129 | US 7,093,668 | US 7,098,800 |
| US 7,100,483 | US 7,121,358 | US 7,137,326 | US 7,171,879 |
| US 7,171,897 | US 7,197,969 | US 7,210,383 | US 7,225,712 |
| US 7,228,772 | US 7,231,856 | US 7,284,467 | US 7,290,472 |
| US 7,308,843 | US 7,328,752 | US 2002/0017175 | US 2002/0017176 |
| US 2002/0017178 | US 2002/0017179 | US 2002/0017180 | US 2002/0017181 |
| US 2002/0017182 | US 2002/0017183 | US 2002/0017184 | US 2002/0017336 |
| US 2002/0020261 | WO9637350 A1 | US 2002/0020262 | US 2002/0020263 |
| US 2002/0020265 | US 2002/0020271 | US 2002/0056348 | US 2002/0056349 |

| US 2002/0056350 | US 2002/0059853 | US 2002/0059854 | US 2002/0059855 |
|---|---|---|---|
| US 2002/0066346 | US 2002/0069734 | US 2002/0139877 | US 2002/0170399 |
| US 2002/0170400 | US 2002/0190581 | US 2003/0002942 | US 2003/0005588 |
| US 2003/0015253 | US 2003/0019341 | US 2003/0020336 | US 2003/0037651 |
| US 2003/0056853 | US 2003/0058121 | US 2003/0090224 | US 2003/0131703 |
| US 2003/0140749 | US 2003/0196824 | US 2003/0202851 | US 2004/0008122 |
| US 2004/0017294 | US 2004/0040426 | US 2004/0163514 | US 2004/0173430 |
| US 2004/0194594 | US 2004/0226800 | US 2005/0039586 | US 2005/0039822 |
| US 2005/0041359 | US 2005/0066784 | US 2005/0103510 | US 2005/0139051 |
| US 2005/0139056 | US 2005/0139057 | US 2005/0139058 | US 2005/0139459 |
| US 2005/0155473 | US 2005/0166736 | US 2006/0091247 | US 4,323,829 |
| US 5,988,542 | US 5,897,065 | JP 07-039778A | JP62146877 A2 |
| Physics Central: People in Physics: Steve Gass, 2008, American Physical Society | US 2004/0043696 A1 | Sensor Evaluation for Human Presence Detection, 1997, Regents of the University of Minnesota, John Shutske et al. | Sensor Enables Nonstop Safety, 2000, Pro-Talk Ltd, UK |
| US 2002/111702A1 | US 2,418,1951A1 | A Capacitance Based Proximity Sensor for Whole Arm Obstacle Avoidance, J.L. Novak and J.T. Feddema, Sandia National Laboratories | A Magneto Sensitive Skin for Robots in Space, July 14, 1991, D.S. Chauhan and P.H. DeHoff, P.I., UNC Charlotte |
| | Applying Electric Field Sensing to Human Computer Interfaces, Thomas G. Zimmerman, Joshua R. Smith, Joseph A. Paradiso, David Allport1, Neil Gershenfeld, MIT Media Laboratory - Physics and Media Group | Proximity Sensors, 2003, Frank Ebel, Siegfried Nestel, Festo Didactic GmbH & Co. KG | Capacitive Detection of Humans for Safety in Industry – a Numerical and Experimental Investigation, 1998, Lennart Bavall and Nils Karlsson, IOP Publishing Ltd. |
| Collision Avoidance during Teleoperation using Whole Arm Proximity Sensor Coupled to a Virtual Environment, J.L. Novak, J.T. Feddema, N.E. | Concepts and Techniques of Machine Safeguarding, 1992, U.S. Department of Labor, Occupational Safety and Health Administration, U.S. Government Printing Office | US D412716 | DE 33 13 232 |

15

| | | | |
|---|---|---|---|
| Miner and S.A. Stansfield | | | |
| DE 41 21 330 | DE 86 19 856.4 | DE19703575 | DE3819285 |
| WO9308356 A1 | Designing a Safe, Highly Productive System, May 30, 2002, Steve Freedman, thefabrcator.com | Electric Field Sensing for Graphical Interfaces, May/June 1998, Joshua Smith, Tom White, Christopher Dodge, Joseph Paradiso, and Neil Gershenfeld, IEEE Computer Graphics and Applications | EP 855 221 |
| EP0191137 A2 | EP0191137 A3 | EP0522071 A4 | EP0562076 A1 |
| EP0562076 B1 | EP1195202 | EP1442834A1 | WO9116569A1 |
| GB1132708A | GB2199962A | G-Force in Action: Machining, Gorbel, Inc. | Guard Interlocking for Self-Propelled Harvesting Machinery, 2002, Andrew J. Scarlett BSc, PhD, MIAgrE, James S. Price, HND, AMIAgrE, and Ian R. Meeks |
| Industrial Guarding Program Energy Sources, Machinery, Equipment and Materials, September 2002, OFSWA | Tablesaw blade safety device, July 29, 2003, WOODWEB, Inc | International Search Report and Written Opinion for PCT/US2005/028290 dated Nov. 21, 2005. | JP 040180852 |
| JP 04-157093 | JP 11-216383 | JP 20000346288 | JP 2004321993 |
| JP 52-11691 | JP 57-76734 | JP 6-277548 | JP 7-299377 |
| JP 9-262491 | JP2004321993A2 | JP03143552 A2 | JP05014164 A2 |
| JP05092144 A2 | JP05280243A2 | JP07157012A2 | JP09070551 A2 |
| JP09-075763 | JP09139161 A2 | JP10-048344 | JP10-089592 |
| JP2000076014 A2 | JP2001150383 A2 | JP2001-349139 | WO2005070553 |
| He Took On the Whole Power-Tool Industry, 2007, Melba Newsom, Mansueto Ventures LLC | Safeguarding Woodworking Machines and Worker Safety, April 11-12, 1984, Ryszard Szymani, WOODWEB, Inc. | Navigating the Maze of Proximity Sensor Selection, 1999, Rockwell International Corp. | Ti's Digital Signal Controllers Put Brake On SawStop Table Saw, February 9, 2005, pp.1-3 |
| OSHA Hazard | Photoelectric Sensors Open | QProx-Charge | Presence Sensing |

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

| Information Bulletins- The Limitations of Radiofrequency Presence Sensing Devices, Edward Baier, September 21, 1987, U.S. Department of Labor | the Door on New Uses, September 1, 2004, Panasonic Electric Works UK | Transfer Touch Sensor, 2001, Quantum Research Group Ltd | Safety Devices Safety Mats Overview, June 3, 2003, Allen-Bradley, Guardmaster |
| SawStop Finger-Saver Update, July/August 2004, Tom Bengnal, Fine Woodworking Magazine, Issue 171 pg. 34 | Theory and Application of a Capacitive Sensor for Safeguarding in Industry, 1994, Nils Karlsson, IEEE | | |

Any of the patents identified supra that anticipate claim 1 of the '276 patent provide a roadmap as to the elements a person of skill in the art would have known to use in developing the invention of a paper shredder having a proximity sensor. Such anticipating patents also provide the motivation to combine the elements identified infra as to any patents containing such elements. Motivation is also identified as explained in the KSR decision.

Each of the dependent claims of the '276 patent incorporate nothing more than elements known in the prior art performing their established function to achieve a predictable result. Under KSR such a combination of elements is obvious.

Claim 1 is obvious for, at least, the combination of United States Patent No. 5,988,542 (issued November 23, 1999) to Henreckson ("Henreckson '542 patent"), United States Patent No. 5,897,065 (issued April 27, 1999), and Japanese Patent Publication 2000-346288 (published December 15, 2000) to Shigeo.

The Henreckson '542 patent is a basic patent covering document shredding devices. The Schwelling '065 patent describes a removable collecting container for paper shredders, and The Shigeo '288 publication describes a capacitive two electrode proximity safety sensor for use with machinery.

The prior art was replete with instances of proximity sensors used to make potentially dangerous equipment safer. The implementation of a proximity sensor known in the prior art to a paper shredder is merely applying an element according to its known function to potentially dangerous device – a paper shredder. This is obvious in light of KSR.

Claims 2, 61, 62, 63, 64, 67, 68, 69, 70, 73, 74, 75, and 76 all deal with the limitation of disabling a motor due to presence of a person or animal. Disabling a motor in such a fashion was well known in the prior art as evidence by , at least, US3785230, US6044632, US6922153, US2004/0181951, WO09637350, JP05280243,Collision Avoidance, Sensor Enables Nonstop, DE3819285, US6113017, Safety Mats, Tablesaw Blade, US2003/0202851, SawStop Finger, EP1442834, JP10-089592, US3111800, US4162042, US4683381, US2003/0090224, Sensor Evaluation, WO9116569, Designing a Safe, GB1132708, Guard Interlocking, JP09-075763, US4518958, US4753323, US5621290, US2004/0017294, WO9637350, Industrial Guarding, JP10-048344, OSHA Hazard, US4117752, US5081406, US5921367, Qprox, Theory and Application, Woodweb, US2002/0017183, US5436613, US6724324, JP57-76734, US6116528, US6376936, US3785230, US6044632, US6922153, US2004/0181951, WO09637350, JP05280243, Collision Avoidance, Photoelectric Sensors, Sensor Enables Nonstop, DE3819285, US6113017, Safety Mats, Tablesaw Blade, US2003/0202851, SawStop Finger, Applying Electric, EP1442834, JP10-089592, US3111800, US4162042, US4683381, US2003/0090224, Sensor Evaluation, WO9116569, Designing a Safe, GB1132708, Guard Interlocking, JP09-075763, US4518958, and US4753323.

The limitation of circuitry to sense state of the electro-conductive sensor element appears in claims 6, 31, 32, 33, 34, 37, 38, 51, 52, 53, 54, 57, 58, 88, 89, 90, 93, and 94. This was also well known in the art as evidence by, at least, US4323829, US3785230, US6922153, US2004/0181951, WO09637350, JP05280243, JP07157012, Collision Avoidance, DE3819285, Tablesaw Blade, US2003/0202851, SawStop Finger, Applying Electric, EP1442834, US3111800, US4162042, US5318229, US2003/0090224, WO9116569, A Capcitance Based, Capacitive Detection, Designing a Safe, GB1132708, Guard Interlocking, JP09-075763, JP2001-

349139, US4518958, US4753323, US5621290, WO9637350, GB2199962, JP10-048344, OSHA Hazard, US4117752, US5081406, US5921367, Qprox, Theory and Application, US2002/0017183, US5436613, US6724324, US2004/0008122, JP57-76734, US6376936, US4323829, US3785230, US6922153, US2004/0181951, WO09637350, JP05280243, JP07157012, Collision Avoidance, DE3819285, Tablesaw Blade, US2003/0202851, SawStop Finger, Applying Electric, EP1442834, US3111800, US4162042, US5318229, US2003/0090224, WO9116569, A Capcitance Based, Capacitive Detection, Designing a Safe, GB1132708, Guard Interlocking, JP09-075763, JP2001-349139, US4518958, and US4753323. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claims 41, 42, 43, 44, 47, and 48 all include the limitation of the sensor not requiring contact. This limitation was well known in the prior art as embodied by, at least, US3785230, US6044632, US6922153, US2004/0181951, WO09637350, JP05280243, JP07157012, Collision Avoidance, Photoelectric Sensors, DE3819285, Tablesaw Blade, US2003/0202851, SawStop Finger, Applying Electric, EP1442834, JP10-089592, US3111800, US4162042, US4683381, US5318229, US2003/0090224, Sensor Evaluation, WO9116569, A Capcitance Based, Capacitive Detection, Designing a Safe, GB1132708, Guard Interlocking, JP2001-349139, US4518958, US4753323, US5621290, WO9637350, GB2199962, Industrial Guarding, JP10-048344, OSHA Hazard, US5081406, US5921367, Qprox, Theory and Application, Woodweb, US2002/0017183, US5436613, US6724324, US2004/0008122, JP57-76734, US6376936, and US3785230. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claims 27, 28, 84, 85, 102, 103, 111, and 112 all address the case where the sensor element defines the opening in part. This limitation was well known in the art as evidenced by at least US6922153, SawStop Finger, DE4121330, EP1442834, US4162042, US5318229, US2003/0090224, GB1132708, JP09-075763, US4518958, US4753323, US5621290, US2004/0017294, JP10-048344, US4117752, US5081406, US5921367, Qprox, US2002/0017183, US6724324, US2004/0008122, US6376936, US6922153, SawStop Finger, DE4121330, EP1442834, US4162042, US5318229, US2003/0090224, GB1132708, JP09-075763, US4518958, and US4753323. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claims 24, 81, 99, and 108 include the limitation that the sensor extends the length of the opening. This was well known in the prior art as evidenced, at least, by US6922153, Tablesaw Blade, SawStop Finger, DE4121330, EP1442834, US4162042, US4683381, US5318229, US2003/0090224, GB1132708, JP09-075763, US4518958, US4753323, US5621290, US2004/0017294, JP10-048344, US4117752, US5081406, US5921367, Qprox, US2002/0017183, US6724324, US2004/0008122, JP57-76734, US6376936, US6922153, Tablesaw Blade, SawStop Finger, DE4121330, EP1442834, US4162042, US4683381, US5318229, US2003/0090224, GB1132708, JP09-075763, US4518958, and US4753323. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claims 22 and 97 include the limitation of a long narrow opening. This limitation was well known in the prior art as shown in US6922153, EP1195202, US6113017, Tablesaw Blade, DE19703575, SawStop Finger, DE4121330, EP1442834, US5318229, US2003/0090224, GB1132708, JP09-075763, US4518958, US5621290, US2004/0017294, JP10-048344,

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

US4117752, US5081406, US5921367, Qprox, US2002/0017183, US6079645, US6724324, US2004/0008122, JP57-76734, US5897065, US5988542, US6116528, US6376936, US6922153, EP1195202, US6113017, Tablesaw Blade, DE19703575, SawStop Finger, DE4121330, EP1442834, US5318229, US2003/0090224, GB1132708, JP09-075763, and US4518958. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claims 23, 80, 98, and 107 include the limitation of a sensor element attached to at least one wall of the opening. This limitation was also known in the prior art as evidenced by at least US3785230, US6922153, US2004/0181951, JP05280243, DE4121330, EP1442834, US4162042, US4683381, US5318229, GB1132708, JP09-075763, US4518958, US4753323, US5621290, US2004/0017294, JP10-048344, US5081406, US5921367, Qprox, US6724324, US2004/0008122, JP57-76734, US6376936, US3785230, US6922153, US2004/0181951, JP05280243, DE4121330, EP1442834, US4162042, US4683381, US5318229, GB1132708, JP09-075763, US4518958, and US4753323. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claim 5 includes the limitation of the proximity sensor being a capacitive sensor. The prior art was replete with capacitive safety sensors as shown in US4323829, US3785230, US6922153, US2004/0181951, JP05280243, JP07157012, Collision Avoidance, Tablesaw Blade, US2003/0202851, SawStop Finger, Applying Electric, EP1442834, US3111800, US4162042, US4683381, US2003/0090224, A Capcitance Based, Capacitive Detection, GB1132708, Guard Interlocking, US4518958, US4753323, US5621290, US2004/0017294, WO9637350, GB2199962, JP10-048344, OSHA Hazard, US4117752, US5081406, US5921367, Qprox, Theory and Application, US2002/0017183, US5436613, US6724324, US2004/0008122,

US6376936, US4323829, US3785230, US6922153, US2004/0181951, JP05280243, JP07157012, Collision Avoidance, Tablesaw Blade, US2003/0202851, SawStop Finger, Applying Electric, EP1442834, US3111800, US4162042, US4683381, US2003/0090224, A Capcitance Based, Capacitive Detection, GB1132708, Guard Interlocking, US4518958, and US4753323. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claim 7 includes the limitation of an electroconductive sensor element being a thin metal member on the housing along the opening. This was known in the prior art in at least US6922153, Tablesaw Blade, EP1442834, US4162042, US4683381, US5318229, A Capcitance Based, GB1132708, JP09-075763, US4518958, US4753323, US5621290, US2004/0017294, JP10-048344, US5081406, US5921367, Qprox, US6724324, US2004/0008122, US6376936, US6922153, Tablesaw Blade, EP1442834, US4162042, US4683381, US5318229, A Capcitance Based, GB1132708, JP09-075763, US4518958, and US4753323. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claim 12 includes the limitation that the shredder is embedded in the housing. This was known in the prior art in at least US6113017. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claim 13 includes the limitation that the metal member is adhered to the housing near the opening. This was known in the prior art in at least US3111800. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation

is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

Claim 14 includes the limitation that the metal member is metal tape. This was known in the prior art as in US6922153. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. These claims are obvious.

**C. L. R.3-3(c); For the '276 patent, a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function.**

Pursuant to L.R. 3-3(c), Exhibit A is provided as an attachment for anticipatory prior art. Exhibit B is provided as an attachment for prior art rendering the claims obvious.


///
///

**D. L. R.3-3(d); For the '276 patent, any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.**

Aurora presents Exhibit C, attached hereto, which specifically identifies where claim elements of the asserted claims of the '276 patent are indefinite, lack enablement, and/or lack written description under 35 U.S.C. § 112.

Aurora reserves the right to modify these charts by adding additional assertions of indefiniteness, lack of enablement, and/or lack of written description to the extent such modification is appropriate in light of any additional information gained through ongoing investigations or through discovery or in light of arguments made or positions taken by Fellowes.

Aurora notes that these are initial invalidity contentions and, as such, Aurora is not limited to only the arguments made in said Exhibit.

## II.  THE '559 PATENT

**A.  Patent L.R. 3-3(a)  The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher.**

Pursuant to Patent L.R. 3-3(a), Aurora identifies the following prior art references that anticipate and/or render obvious the asserted claims of the '559 patent.

1. 1,525,590, US, February, 1925

2. 1,825,223, US, September 1931

3. 3,312,794, US, April, 1967

4. 3,619,537, US, November, 1971

5. 3,724,766, US, April, 1973

6. 3,764,819, US, October 1973

7. 3,829,850, US, August 1974

8. 3,860,180, US, January 1975

9. 3,869,238, US, March, 1975

10. 3,947,734, US, March, 1976

11. 3,991,944, US, November 1976

12. 4,018,392, US, April, 1977

13. 4,044,532, US, August, 1977

14. 4,068,805, US, January, 1978

15. 4,082,232, US, April 1978

16. 4,125,228, US, November, 1978

17. 4,172,400, US, October, 1979

18. 4,187,420, US, February, 1980

19. 4,194,698, US, March, 1980

20. 4,352,980, US, October, 1982

21. 4,420,863, US, December, 1983

22. 4,471,915, US, September, 1984

23. 4,562,971, US, January, 1986

24. 4,673,136, US, June, 1987

25. 4,683,381, US, July, 1987

26. 4,693,428, US, September, 1987

27. 4,713,509, US, December, 1987

28. 4,767,895, US, August, 1988

29. 4,784,601, US, November, 1988

30. 4,784,602, US, November, 1988

31. 4,821,967, US, April, 1989

32. 4,839,533, US, June, 1989

33. 4,859,172, US, August, 1989

34. 4,882,458, US, November, 1989

35. 4,910,365, March, 1990

36. 4,944,462, US, July, 1990

37. 5,045,648, US, September, 1991

38. 5,065,947, US, November, 1991

39. 5,081,406, US, January, 1992

40. 5,100,067, US, March, 1992

41. 222515, DE, May, 1910

42. 5,135,178, US, August 1992

43. 5,166,679, US, November 1992

44. 5,171,143, US, December 1992

45. 5,186,398, US, February 1993

46. 5,207,392, US, May 1993

47. 5,268,553, US, December 1993

48. 5,275,342, US, January 1994

49. 5,279,467, US January 1994

50. 5,295,633, US, March 1994

51. 5,345,138, US, September 1994

52. 5,356,286, US, October 1994

53. 5,397,890, US, March 1995

54. 5,407,346, US, April 1995

55. 5,421,720, US, June 1995

56. 5,432,308, US, July 1995

57. 5,460,516, US, October 1995

58. 5,494,229, US, February 1996

59. 5,568,895, US, October 1996

60. 5,636,801, US, June 1997

61. 5,655,725, US, August 1997

62. 5,676,321, US, October 1997

63. 5,680,999, US, October 1997

64. 5,704,776, US, January 1998

65. 5,724,737, US, March 1998

66. D393,607, US, April 1998

67. 5,775,605, US, July 1998

68. 5,788,476, US, August 1998

69. 5, 829,697, US November 1998

70. 5,829,963, US, November 1998

71. 5,850,342, US, December 1998

72. 5,868,242, US, February 1999

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

73. 5,884,855, US, March 1999

74. RE36,250, US, July 1999

75. D412,716, US, August 1999

76. 5,942,975, US, August 1999

77. 5,988,542, US, November 1999

78. 6,065,696, US, May 2000

79. 6,079,645, US, June 2000

80. 6,082,644, US, July 2000

81. 6,089,482, US, July 2000

82. 6,247,828, US, June 2001

83. D444,809, US, July 2001

84. 6,260,780, US, July 2001

85. 6,265,682, US, July 2001

86. 6,274,828, US August 2001

87. 6,308,904, US, October 2001

88. 6,325,309, US, December 2001

89. 6,376,939, US, April 2002

90. 6,418,004, US, July 2002

91. 6,550,701, US, April 2003

92. 6,575,285, US, June 2003

93. D481, 416, US, October 2003

94. 6,655,943, US, December 2003

95. 6,676,050, US, January 2004

96. 6,676,460, US, January 2004

97. 6,724,324, US, April 2004

98. D494,607, US, August 2004

99. 6,775,018, US, August 2004

100.   6,779,747, US, August 2004

101.   D502,713, US, March 2005

102.   D502,714, US, March 2005

103.   6,962,301, US, November 2005

104.   6,966,513, US, November 2005

105.   6,967,648, US, December 2005

106.   6,979,813, US, December 2005

107.   6,981,667, US, January 2006

108.   7,040,559, US, May 2006

109.   7,044,410, US, May 2006

110.   7,048,218, US, May 2006

111.   7,150,422, US, December 2006

112.   2004/0008122, US, January 2004

113.   2004/0194594, US, October 2004

114.   2004/0226800, US, November 2004

115.   2005/0132859, US, June 2005

116.   2005/0157203, US, July 2005

117.   2005/0166736, US, August 2005

118.   2005/0218250, US, October 2005

119.   2005/0274834, US, December 2005

120.   2005/0274836, US, December 2005

121.   2006/0091247, US, May 2006

122.   2006/0157600, US, July 2006

123.   2006/0169619, US, August 2006

124.   2006/0249609, US, November 2006

125.   32 08 676, DE, October 1982

126.   32 47 299, DE, July 1984

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

127.  33 13 232, DE, October 1984

128.  35 40 896, DE, May 1987

129.  78 18 838, DE, June 1978

130.  37 33 413, DE, April 1988

131.  86 19 856.4, DE, October 1988

132.  40 14 669, DE, November 1991

133.  41 21 330, DE, January 1993

134.  195 19 858, DE, December 1996

135.  199 60 267, DE, July 2000

136.  0 511 535, EP, April 1992

137.  0 736 886, EP, March 1996

138.  0 855 221, EP, July 1998

139.  1 195 202, EP, September 2001

140.  1 069 954, EP, September 2002

141.  761607, GB, June 1954

142.  2096919, GB, October 1982

143.  2203063, GB, October 1988

144.  2234690, GB, February 1991

145.  52-11691, JP, April 1977

146.  57-76734, JP, May 1982

147.  04-157093, JP, May 1992

148.  04-180852, JP, June 1992

149.  4-110143, JP, September 1992

150.  5-68906, JP, March 1993

151.  5-123593, JP, May 1993

152.  6-277548, JP, October 1994

153.  7-136539, JP, May 1995

154.  7-155629, JP, June 1995

155.  7-299377, JP, November 1995

156.  7-328469, JP, December 1995

157.  8-1026, JP, January 1996

158.  9-262491, JP, October 1997

159.  10-34003, JP, February 1998

160.  11-216383, JP, August 1999

161.  2000-0346288, JP, December 2000

162.  2004-321993, JP, November 2004

163.  306323, TW, October 1985

164.  00139305, TW August 1990

165.  282696, TW, August 1996

166.  84317868A01, TW, May 1997

167.  98/48937, WO, November 1998

168.  99/52638, WO, October 1999

169.  02/060588, WO, August 2002

170.  200/070553, WO, August 2005

171.  99208833, CN, January 2000

172.  99213588.5, CN, June 2000

173.  6,877,410, US, April, 2005

174.  2002/0066346, US, June, 2002

175.  6,834,730, US, December, 2004

176.  6,536,536, US, March, 2003

177.  7,225,712, US, June, 2007

178.  7,171,879, US, February, 2007

179.  7,077,039, US, July, 2006

180.  7,290,472, US, November, 2007

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

181.    7,228,772, US, June, 2007

182.    7,210,383, US, May, 2007

183.    7,197,969, US, April, 2007

184.    7,137,326, US, November, 2006

185.    6,857,345, US, February, 2005

186.    6,826,988, US, December, 2004

187.    2005/0039822, US, February, 2005

188.    2004/0173430, US, September, 2004

189.    2003/0090224, US, May, 2003

190.    2003/0058121, US, March, 2003

191.    2003/0037651, US, February, 2003

192.    2002/0069734, US, June, 2002

193.    2002/0059855, US, May, 2002

194.    2002/0059854, US, May, 2002

195.    2002/0056350, US, May, 2002

196.    2002/0020263, US, February, 2002

197.    2002/0020262, US, February, 2002

198.    2002/0017183, US, February, 2002

199.    2002/0017178, US, February, 2002

200.    2002/0017176, US, February, 2002

201.    6,997,090, US, February, 2006

202.    2002/0017184, US, February, 2002

203.    2004/0163514, US, August, 2004

204.    7,284,467, US, October, 2007

205.    2002/0017336, US, February, 2002

206.    2002/0020261, US, February, 2002

207.    2002/0017181, US, February, 2002

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

208. 2003/0005588, US, January, 2003

209. 6,813,983, US, November, 2004

210. 2002/0059853, US, May, 2002

211. 7,231,856, US, June, 2007

212. 2002/0190581, US, December, 2002

213. 2003/0019341, US, January, 2003

214. 2002/0020265, US, February, 2002

215. 2002/0017179, US, February, 2002

216. 2003/0015253, US, January. 2003

217. 2004/0040426, US, March, 2004

218. 7,055,417, US, June, 2006

219. 2002/0056348, US, May, 2002

220. 2002/0056349, US, May, 2002

221. 2003/0056853, US, March, 2003

222. 6,880,440, US, April, 2005

223. 6,920,814, US, July, 2005

224. 6,922,153, US, July, 2005

225. 6,945,148, US, September, 2005

226. 6,945,149, US, September, 2005

227. 6,957,601, US, October, 2005

228. 6,994,004, US, February, 2006

229. 7,000,514, US, February, 2006

230. 7,024,975, US, April, 2006

231. 7,093,668, US, August, 2006

232. 7,098,800, US, August, 2006

233. 7,100,483, US, September, 2006

234. 7,121,358, US, October, 2006

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

235.    7,308,843, US, December, 2007

236.    7,328,752, US, February, 2008

237.    2002/0170399, US, November, 2002

238.    2002/0170400, US, November, 2002

239.    2003/0002942, US, January, 2003

240.    2005/0039586, US, February, 2005

241.    3,629,530, US, December 1971

242.    3,728,501, US, April 1973

243.    3,769,473, US, October 1973

244.    3,780,246, US, December 1973

245.    3,873,796, US, March 1975

246.    3,952,239, US, April 1976

247.    3,953,696, US, April 1976

248.    3,971,906, US, July 1976

249.    4,002,874, US, January 1977

250.    4,016,490, US, April 1977

251.    4,062,282, US, December 1977

252.    4,107,484, US, August 1978

253.    4,135,068, US January 1979

254.    4,180,716, US, December 1979

255.    4,187,420, US, May 1980

256.    4,276,459, US, June1981

257.    4,277,666, US, July 1981

258.    4,349,814, US, September 1982

259.    4,423,844, US, January 1984

260.    4,449,062, US, May 1984

261.    4,471,915, US, September 1984

262.  4,510,860, US, April 1985

263.  4,549,097, US, October 1985

264.  4,598,182, US, July 1986

265.  4,619,407, US, October 1986

266.  4,664,317, US, May 1987

267.  4,706,895, US, November 1987

268.  4,709,197, US, November 1987

269.  4,751,603, US, June 1988

270.  4,771,359, US, September 1988

271.  4,824,029, US, April 1989

272.  4,893,027, US, January 1990

273.  4,900,881, US, February 1990

274.  4,934,494, US, June 1990

275.  4,947,009, US, August 1990

276.  4,970,355, US, November 1990

277.  4,978,817, US, December 1990

278.  4,982,058, US, January 1991

279.  5,037,033, US, August 1991

280.  5,044,270, US, September 1991

281.  5,140,235, US, August 1992

282.  5,167,374, US, December 1992

283.  5,236,138, US, August 1993

284.  5,310,259, US, May 1994

285.  5,346,342, US, September 1994

286.  5,486,669, US, January 1996

287.  5,561,279, US, October 1996

288.  5,577,600, US, November 1996

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

289.   5,638,261, US, June 1997

290.   5,638,945, US, June 1997

291.   5,662,280, US, September 1997

292.   5,775,605, US, July 1998

293.   5,969,312, US, October 1999

294.   6,057,518, US, May 2000

295.   6,082,643, US, July 2000

296.   6,091,035, US, July 2000

297.   6,153,838, US, November 2000

298.   6,212,052, US, April 2001

299.   6,288,350, US, September 2001

300.   6,340,124, US, January 2002

301.   6,340,802, US, January 2002

302.   6,375,102, US, April 2002

303.   6,538,218, US, March 2003

304.   6,629,654, US, October 2003

305.   6,753,490, US, June 2004

306.   6,759,609, US, July 2004

307.   6,861,598, US, March 2005

308.   RE030270, US, May 1980

309.   RE036250, US, July 1999

310.   2001/0030114, US, October 2001

311.   84003650, WO, September 1984

312.   91001860, WO, February 1991

313.   93006570, WO, April 1993

314.   94013441, WO, June 1994

315.   96013362, WO, June 1996

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

316.    98052728, WO, November 1998

317.    00048283, WO, August 2000

318.    0130655, WO, May 2001

319.    01/26064, WO, April 2001


**B.   L. R.3-3(b); Whether each item of prior art anticipates each asserted claim or renders it obvious as to the '559 patent.  If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified.**

Pursuant to L. R.3-3(b), Aurora identifies each item of anticipatory prior art as to each asserted claim.  Aurora takes a broad reading of the scope of the claim limitations only for purposes of this submittal and does not waive, disclaim, or exclude a narrower construction of the terms in the future.  Also, Aurora identifies each item of obviousness prior art and any combination of prior art references that would render a claim obvious as to each such claim and the motivation to combine such references.

Aurora's application of L. R.3-3(b) is in light of the recent Supreme Court decision in the landmark obviousness case of KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742 (U.S. 2007) ("KSR") and subsequent Federal Circuit rulings.

KSR reaffirmed the obviousness investigation for not only the combination of prior art patents and printed publications, but also the general precepts of the obviousness inquiry.  No longer is a rigid approach of the teaching, suggestion, or motivation to combine test the exclusive standard for sustaining obviousness as it relates to the combination of multiple prior art references.

Obviousness is determined from the perspective of a person of ordinary skill in the art at the time of the invention.  Such a person is deemed to have a working knowledge of the field. This would extend to prior art patents as identified in these infringement contentions.

Such a person would understand the simplicity and desirability of including a proximity sensor with a paper shredder.

A person of ordinary skill in the art is a person of ordinary creativity, not an automaton, and would see the benefits of increasing the safety of a product. This person would also recognize the design incentives and market driven forces associated with improving the safety of a paper shredder

A person of such skill would also be familiar with proximity sensors such as capacitive sensors.

### 1.    Anticipatory prior art as to the '559 patent.

The following table identifies patents each of which anticipates every limitation, either expressly or inherently, of claims 1 and 13-16 of the original patent and claims 39-46, 50, and 51 of the re-examined '559 patent:

| US6,079,645 | US4,545,537 | | | |
|---|---|---|---|---|

Aurora reserves the right to supplement and amend these contentions based on further investigation, construction of the claims by the Court, and modification of Fellowes' contentions.

### 2.    References that render the claims of the '559 patent obvious.

The following table identifies patents the combination of which renders claims 1 and 13-16 of the original patent and claims 39-46, 50, and 51 of the re-examined '559 patent obvious:

| US1,525,590 | US1,825,223 | US3,312,794 | US3,619,537 |
|---|---|---|---|
| US3,724,766 | US3,764,819 | US3,829,850 | US3,860,180 |
| US3,869,238 | US3,947,734 | US3,991,944 | US4,018,392 |
| US4,044,532 | US4,068,805 | US4,082,232 | US4,125,228 |
| US4,172,400 | US4,187,420 | US4,194,698 | US4,352,980 |
| US4,420,863 | US4,471,915 | US4,562,971 | US4,673,136 |
| US4,683,381 | US4,693,428 | US4,713,509 | US4,767,895 |

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

| | | | |
|---|---|---|---|
| US4,784,601 | US4,784,602 | US4,821,967 | US4,839,533 |
| US4,859,172 | US4,882,458 | US4,910,365 | US4,944,462 |
| US5,045,658 | US5,065,947 | US5,081,406 | US5,100,067 |
| WO00048283 | US5,135,178 | US5,166,679 | US5,171,143 |
| US5,186,398 | US5,207,392 | US5,268,553 | US5,275,342 |
| US5,279,467 | US5,295,633 | US5,345,138 | US5,356,286 |
| US5,397,890 | US5,407,346 | US5,421,720 | US5,432,308 |
| US5,460,516 | US5,494,229 | US5,568,895 | US5,636,801 |
| US5,655,725 | US5,676,321 | US5,680,999 | US5,704,776 |
| US5,724,737 | USD393,607 | US5,775,605 | US5,788,476 |
| US5,829,697 | US5,829,963 | US5,850,342 | US5,868,242 |
| US5,884,855 | US RE 36,250 | US D412,716 | US5,942,975 |
| US5,988,542 | US6,065,696 | US6,079,645 | US6,082,644 |
| US6,089,482 | US6,247,828 | US D444,809 | US6,260,780 |
| US6,265,682 | US6,274,828 | US6,308,904 | US6,325,909 |
| US6,376,939 | US6,418,004 | US6,550,701 | US6,575,285 |
| US D 481,416 | US6,655,943 | US6,676,050 | US6,676,460 |
| US6,724,324 | US D494,607 | US6,775,018 | US6,779,747 |
| US D502,713 | US D502,714 | US 6,962,301 | US6,966,513 |
| US6,967,648 | US6,979,813 | US6,981,667 | US7,040,559 |
| US7,044,410 | US7,048,218 | US7,150,422 | US2004/0008122 |
| US2004/0194594 | US2004/0226800 | US2005/0132859 | US2005/0157203 |
| US2005/0166736 | US2005/0218250 | US2005/0274834 | 2005/0274836 |
| US2006/0091247 | US2006/0157600 | US2006/0169619 | US2006/0249609 |
| DE32 08 676 | DE33 13 232 | DE 32 47 299 | DE35 40 896 |
| DE78 18 838 | DE37 33 413 | DE86 19 856.4 | DE40 14 669 |

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

| | | | |
|---|---|---|---|
| DE41 21 330 | DE195 19 858 | DE199 60 267 | EP 0 511 535 |
| EP 0 736 886 | EP 0 855 221 | EP 1 195 202 | EP 1 069 954 |
| GB761607 | GB2096919 | GB2203063 | GB2234690 |
| JP52-11691 | JP57-76734 | JP04-157093 | JP04-180852 |
| JP4-110143 | JP5-68906 | JP5-123593 | JP6-277548 |
| JP7-136539 | JP7-155629 | JP7-299377 | JP7-328469 |
| JP8-1026 | JP9-262491 | JP10-34003 | JP11-216383 |
| JP2000-0346288 | JP2004-321993 | TW306323 | TW00139305 |
| TW282696 | TW84317868A01 | WO98/48937 | WO99/52638 |
| WO02/060588 | WO200/070553 | CN99208833 | CN99213588.5 |
| DE222515 | US6,877,410 | US2002/0066346 | US6,834,730 |
| US6,536,536 | US7,225,712 | US7,171,879 | US7,077,039 |
| WO0130655 | US7,228,772 | US7,290,472 | US7,210,383 |
| US7,197,969 | US7,137,326 | US6,857,345 | US6,826,988 |
| US2005/0039822 | US2004/0173430 | US2003/0090224 | US2003/0058121 |
| US2003/0037651 | US2002/0069734 | US2002/0059855 | US2002/0059854 |
| US2002/0056350 | US2002/0020263 | US2002/0020262 | US2002/0017183 |
| US2002/0017178 | US2002/0017176 | US6,997,090 | US2002/0017184 |
| US2004/0163514 | US7,284,467 | US2002/0017336 | US2002/0020261 |
| US2002/0017181 | US2003/0005588 | US6,813,983 | US2002/0059853 |
| US7,231,856 | US2002/0190581 | US2003/0019341 | US2002/0020265 |
| US2002/0017179 | US2003/0015253 | US2004/0040426 | US7,055,417 |
| US2002/0056348 | US2002/0056349 | US2003/0056853 | US6,880,440 |
| US6,920,814 | US6,922,153 | US6,945,148 | US6,945,149 |
| US6,957,601 | US6,994,004 | US7,000,514 | US7,024,975 |
| US7,093,668 | US7,098,800 | US7,100,483 | US7,121,358 |

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

| US7,308,843 | US7,328,752 | US2002/0170399 | US2002/0170400 |
| US2003/0002942 | US2005/0039586 | US3,629,530 | US3,728,501 |
| US3,769,473 | US3,780,246 | US3,873,796 | US3,952,239 |
| US3,953,696 | US3,971,906 | US4,002,874 | US4,016,490 |
| US4,062,282 | US4,107,484 | US4,135,068 | US4,180,716 |
| US4,187,420 | US4,276,459 | US4,277,666 | US4,349,814 |
| US4,423,844 | US4,449,062 | US4,471,915 | US4,510,860 |
| US4,549,097 | US4,598,182 | US4,619,407 | US4,664,317 |
| US4,706,895 | US4,709,197 | US4,751,603 | US4,771,359 |
| US4,824,029 | US4,893,027 | US4,900,881 | US4,934,494 |
| US4,947,009 | US4,970,355 | US4,978,817 | US4,982,058 |
| US5,037,033 | US5,044,270 | US5,140,235 | US5,167,374 |
| US5,236,138 | US5,310,259 | US5,346,342 | US5,486,669 |
| US5,561,279 | US5,577,600 | US5,638,261 | US5,638,945 |
| US5,662,280 | US5,775,605 | US5,969,312 | US6,057,518 |
| US6,082,643 | US6,091,035 | US6,153,838 | US6,212,052 |
| US6,288,350 | US6,340,124 | US6,340,802 | US6,375,102 |
| US6,538,218 | US6,629,654 | US6,753,490 | US6,759,609 |
| US6,861,598 | US RE030270 | US RE036250 | US2001/0030114 |
| WO01/26064 | WO84003650 | WO91001860 | WO93006570 |
| WO94013441 | WO96013362 | WO98052728 | |

Any of the patents identified supra that anticipate claim 1 of the '559 patent provide a roadmap as to the elements a person of skill in the art would have known to use in developing the invention of a paper shredder having a proximity sensor. Such anticipating patents also provide the motivation to combine the elements identified infra as to any patents containing such elements. Motivation is also identified as explained in the KSR decision.

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

Each of the dependent claims of the '559 patent incorporate nothing more than elements known in the prior art performing their established function to achieve a predictable result. Under KSR such a combination of elements is obvious.

Claim 1 is obvious for, at least, the combination of United States Patent No. US 4187420, US 4068805, US 3873796, and US 6,536,536, 3:12-13. A person of ordinary skill in the art would have recognized that using a switch that had a locking position in combination with a paper shredder would have been an obvious choice of prior art switches that performed nothing more than a known function in a predictable manner.

Claim 13 adds the limitation of a status indicator for visually indicating whether the switch lock is in the locking position. Applying this limitation is nothing more than exercising a design choice void of any novelty. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 14 adds the limitation of the housing has an upwardly facing top wall, and the throat opening is formed in the top wall. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 15 adds the limitation of manually engageable portion of the on/off switch is mounted for sliding movement. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Applying this limitation is nothing more than exercising a design choice void of any novelty. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 16 adds the limitation of the top wall has an open, upwardly facing recess and the manually engageable portion of the on/off switch is in the recess.  Applying this limitation is nothing more than exercising a design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that incorporate this limitation.  Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result.  The claim is obvious.

Claim 39 adds the limitation of the on/off switch includes a switch module mounted within the housing, the manually engageable portion and the switch module of the on/off switch being connected directly together through an opening in an outer wall of the housing.  Applying this limitation is nothing more than exercising a design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that incorporate this limitation.  Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result.  The claim is obvious.

Claim 40 adds the limitation of the manually engageable portion of the on/off switch is mounted on an outer wall of the housing for movement between the on and off positions of the on/off switch.  Applying this limitation is nothing more than exercising a design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that incorporate this limitation.  Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result.  The claim is obvious.

Claim 41 adds the limitation of the manually engageable portion of the on/off switch is mounted to slide between the on and off positions thereof in a 1st direction, and the switch lock is mounted for movement between the locking and releasing positions thereof in a 2nd direction perpendicular to the first direction.  Applying this limitation is nothing more than exercising a design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that incorporate this limitation.  Further, adding this limitation is nothing more than relying upon

prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 42 adds the limitation of Applying this limitation is nothing more than exercising a design choice void of any novelty. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 43 adds the limitation of the manually engageable portion of the switch lock is mounted for movement in a 1st direction between the locking and releasing positions. Applying this limitation is nothing more than exercising a design choice void of any novelty. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 44 adds the limitation of the manually engageable portion of the on/off switch is mounted for movement in a second direction between the on and off positions of the on/off switch. Applying this limitation is nothing more than exercising a design choice void of any novelty. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 45 adds the limitation that the 1st and 2nd directions for movements of the manually engageable portions are perpendicular to one another. Applying this limitation is nothing more than exercising a design choice void of any novelty. Exhibit E identifies specific instances in the prior art that incorporate this limitation. Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claim is obvious.

Claim 46 adds the limitation that the manually engageable portion of the on/off switch is mounted on a top wall of the housing. Applying this limitation is nothing more than exercising a

design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that incorporate this limitation.  Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result.  The claim is obvious.

Claim 50 adds the limitation that the switch lock includes no position in which it locks the switch in the on position.  Applying this limitation is nothing more than exercising a design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that  this limitation.  Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result.  The claim is obvious.

Claim 51 adds the limitation that when in the on position, the manually engageable portion of the on/off switch naturally stays in the on position.  Applying this limitation is nothing more than exercising a design choice void of any novelty.  Exhibit E identifies specific instances in the prior art that incorporate this limitation.  Further, adding this limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result.  The claim is obvious.

The prior art was replete with instances of manual switches having a stop function being used to make potentially dangerous equipment safer.  The implementation of  such a switch known in the prior art to a paper shredder is merely applying an element according to its known function to potentially dangerous device – a paper shredder.  This is obvious in light of KSR.

**C.    L. R.3-3(c); For the '559 patent, a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function.**

Pursuant to L.R. 3-3(c), Exhibit D is provided as an attachment identifying each element of the claims being anticipated by the prior art.

Pursuant to L.R. 3-3(c), Exhibit E is provided as an attachment identifying each element of the claims being rendered obvious by the prior art.

**D.  L. R.3-3(d); For the '559 patent, any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.**

Aurora presents Exhibit F, attached hereto, which specifically identifies where claim elements of the asserted claims of the '559 patent are indefinite, lack enablement, and/or lack written description under 35 U.S.C. § 112.

Aurora reserves the right to modify these charts by adding additional assertions of indefiniteness, lack of enablement, and/or lack of written description to the extent such modification is appropriate in light of any additional information gained through ongoing investigations or through discovery or in light of arguments made or positions taken by Fellowes. Aurora notes that these are initial invalidity contentions and, as such, Aurora is not limited to only the arguments made in said Exhibit.

///
///

**III.  THE '096 PATENT**

**A.  Patent L.R. 3-3(a)  The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher.**

Pursuant to Patent L.R. 3-3(a), Aurora identifies the following prior art references that anticipate and/or render obvious the asserted claims of the '096 patent.

1.  1,525,590, US, February, 1925

2.  1,825,223, US, September 1931

3.  3,312,794, US, April, 1967

4.  3,619,537, US, November, 1971

5.  3,724,766, US, April, 1973

6.  3,764,819, US, October 1973

7.  3,829,850, US, August 1974

8.  3,860,180, US, January 1975

9.  3,869,238, US, March, 1975

10. 3,947,734, US, March, 1976

11. 3,991,944, US, November 1976

12. 4,018,392, US, April, 1977

13. 4,044,532, US, August, 1977

14. 4,068,805, US, January, 1978

15. 4,082,232, US, April 1978

16. 4,125,228, US, November, 1978

17. 4,172,400, US, October, 1979

18. 4,187,420, US, February, 1980

19. 4,194,698, US, March, 1980

20. 4,352,980, US, October, 1982

21. 4,420,863, US, December, 1983

22. 4,471,915, US, September, 1984

23. 4,562,971, US, January, 1986

24. 4,673,136, US, June, 1987

25. 4,683,381, US, July, 1987

26. 4,693,428, US, September, 1987

27. 4,713,509, US, December, 1987

28. 4,767,895, US, August, 1988

29. 4,784,601, US, November, 1988

30. 4,784,602, US, November, 1988

31. 4,821,967, US, April, 1989

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

32. 4,839,533, US, June, 1989

33. 4,859,172, US, August, 1989

34. 4,882,458, US, November, 1989

35. 4,910,365, March, 1990

36. 4,944,462, US, July, 1990

37. 5,045,648, US, September, 1991

38. 5,065,947, US, November, 1991

39. 5,081,406, US, January, 1992

40. 5,100,067, US, March, 1992

41. 222515, DE, May, 1910

42. 5,135,178, US, August 1992

43. 5,166,679, US, November 1992

44. 5,171,143, US, December 1992

45. 5,186,398, US, February 1993

46. 5,207,392, US, May 1993

47. 5,268,553, US, December 1993

48. 5,275,342, US, January 1994

49. 5,279,467, US January 1994

50. 5,295,633, US, March 1994

51. 5,345,138, US, September 1994

52. 5,356,286, US, October 1994

53. 5,397,890, US, March 1995

54. 5,407,346, US, April 1995

55. 5,421,720, US, June 1995

56. 5,432,308, US, July 1995

57. 5,460,516, US, October 1995

58. 5,494,229, US, February 1996

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

59. 5,568,895, US, October 1996

60. 5,636,801, US, June 1997

61. 5,655,725, US, August 1997

62. 5,676,321, US, October 1997

63. 5,680,999, US, October 1997

64. 5,704,776, US, January 1998

65. 5,724,737, US, March 1998

66. D393,607, US, April 1998

67. 5,775,605, US, July 1998

68. 5,788,476, US, August 1998

69. 5, 829,697, US November 1998

70. 5,829,963, US, November 1998

71. 5,850,342, US, December 1998

72. 5,868,242, US, February 1999

73. 5,884,855, US, March 1999

74. RE36,250, US, July 1999

75. D412,716, US, August 1999

76. 5,942,975, US, August 1999

77. 5,988,542, US, November 1999

78. 6,065,696, US, May 2000

79. 6,079,645, US, June 2000

80. 6,082,644, US, July 2000

81. 6,089,482, US, July 2000

82. 6,247,828, US, June 2001

83. D444,809, US, July 2001

84. 6,260,780, US, July 2001

85. 6,265,682, US, July 2001

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

86. 6,274,828, US August 2001

87. 6,308,904, US, October 2001

88. 6,325,309, US, December 2001

89. 6,376,939, US, April 2002

90. 6,418,004, US, July 2002

91. 6,550,701, US, April 2003

92. 6,575,285, US, June 2003

93. D481, 416, US, October 2003

94. 6,655,943, US, December 2003

95. 6,676,050, US, January 2004

96. 6,676,460, US, January 2004

97. 6,724,324, US, April 2004

98. D494,607, US, August 2004

99. 6,775,018, US, August 2004

100.     6,779,747, US, August 2004

101.     D502,713, US, March 2005

102.     D502,714, US, March 2005

103.     6,962,301, US, November 2005

104.     6,966,513, US, November 2005

105.     6,967,648, US, December 2005

106.     6,979,813, US, December 2005

107.     6,981,667, US, January 2006

108.     7,040,559, US, May 2006

109.     7,044,410, US, May 2006

110.     7,048,218, US, May 2006

111.     7,150,422, US, December 2006

112.     2004/0008122, US, January 2004

113.   2004/0194594, US, October 2004

114.   2004/0226800, US, November 2004

115.   2005/0132859, US, June 2005

116.   2005/0157203, US, July 2005

117.   2005/0166736, US, August 2005

118.   2005/0218250, US, October 2005

119.   2005/0274834, US, December 2005

120.   2005/0274836, US, December 2005

121.   2006/0091247, US, May 2006

122.   2006/0157600, US, July 2006

123.   2006/0169619, US, August 2006

124.   2006/0249609, US, November 2006

125.   32 08 676, DE, October 1982

126.   32 47 299, DE, July 1984

127.   33 13 232, DE, October 1984

128.   35 40 896, DE, May 1987

129.   78 18 838, DE, June 1978

130.   37 33 413, DE, April 1988

131.   86 19 856.4, DE, October 1988

132.   40 14 669, DE, November 1991

133.   41 21 330, DE, January 1993

134.   195 19 858, DE, December 1996

135.   199 60 267, DE, July 2000

136.   0 511 535, EP, April 1992

137.   0 736 886, EP, March 1996

138.   0 855 221, EP, July 1998

139.   1 195 202, EP, September 2001

140.   1 069 954, EP, September 2002

141.   761607, GB, June 1954

142.   2096919, GB, October 1982

143.   2203063, GB, October 1988

144.   2234690, GB, February 1991

145.   52-11691, JP, April 1977

146.   57-76734, JP, May 1982

147.   04-157093, JP, May 1992

148.   04-180852, JP, June 1992

149.   4-110143, JP, September 1992

150.   5-68906, JP, March 1993

151.   5-123593, JP, May 1993

152.   6-277548, JP, October 1994

153.   7-136539, JP, May 1995

154.   7-155629, JP, June 1995

155.   7-299377, JP, November 1995

156.   7-328469, JP, December 1995

157.   8-1026, JP, January 1996

158.   9-262491, JP, October 1997

159.   10-34003, JP, February 1998

160.   11-216383, JP, August 1999

161.   2000-0346288, JP, December 2000

162.   2004-321993, JP, November 2004

163.   306323, TW, October 1985

164.   00139305, TW August 1990

165.   282696, TW, August 1996

166.   84317868A01, TW, May 1997

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

167.    98/48937, WO, November 1998

168.    99/52638, WO, October 1999

169.    02/060588, WO, August 2002

170.    200/070553, WO, August 2005

171.    99208833, CN, January 2000

172.    99213588.5, CN, June 2000

173.    6,877,410, US, April, 2005

174.    2002/0066346, US, June, 2002

175.    6,834,730, US, December, 2004

176.    6,536,536, US, March, 2003

177.    7,225,712, US, June, 2007

178.    7,171,879, US, February, 2007

179.    7,077,039, US, July, 2006

180.    7,290,472, US, November, 2007

181.    7,228,772, US, June, 2007

182.    7,210,383, US, May, 2007

183.    7,197,969, US, April, 2007

184.    7,137,326, US, November, 2006

185.    6,857,345, US, February, 2005

186.    6,826,988, US, December, 2004

187.    2005/0039822, US, February, 2005

188.    2004/0173430, US, September, 2004

189.    2003/0090224, US, May, 2003

190.    2003/0058121, US, March, 2003

191.    2003/0037651, US, February, 2003

192.    2002/0069734, US, June, 2002

193.    2002/0059855, US, May, 2002

194.   2002/0059854, US, May, 2002

195.   2002/0056350, US, May, 2002

196.   2002/0020263, US, February, 2002

197.   2002/0020262, US, February, 2002

198.   2002/0017183, US, February, 2002

199.   2002/0017178, US, February, 2002

200.   2002/0017176, US, February, 2002

201.   6,997,090, US, February, 2006

202.   2002/0017184, US, February, 2002

203.   2004/0163514, US, August, 2004

204.   7,284,467, US, October, 2007

205.   2002/0017336, US, February, 2002

206.   2002/0020261, US, February, 2002

207.   2002/0017181, US, February, 2002

208.   2003/0005588, US, January, 2003

209.   6,813,983, US, November, 2004

210.   2002/0059853, US, May, 2002

211.   7,231,856, US, June, 2007

212.   2002/0190581, US, December, 2002

213.   2003/0019341, US, January, 2003

214.   2002/0020265, US, February, 2002

215.   2002/0017179, US, February, 2002

216.   2003/0015253, US, January. 2003

217.   2004/0040426, US, March, 2004

218.   7,055,417, US, June, 2006

219.   2002/0056348, US, May, 2002

220.   2002/0056349, US, May, 2002

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

221.    2003/0056853, US, March, 2003

222.    6,880,440, US, April, 2005

223.    6,920,814, US, July, 2005

224.    6,922,153, US, July, 2005

225.    6,945,148, US, September, 2005

226.    6,945,149, US, September, 2005

227.    6,957,601, US, October, 2005

228.    6,994,004, US, February, 2006

229.    7,000,514, US, February, 2006

230.    7,024,975, US, April, 2006

231.    7,093,668, US, August, 2006

232.    7,098,800, US, August, 2006

233.    7,100,483, US, September, 2006

234.    7,121,358, US, October, 2006

235.    7,308,843, US, December, 2007

236.    7,328,752, US, February, 2008

237.    2002/0170399, US, November, 2002

238.    2002/0170400, US, November, 2002

239.    2003/0002942, US, January, 2003

240.    2005/0039586, US, February, 2005

241.    3,629,530, US, December 1971

242.    3,728,501, US, April 1973

243.    3,769,473, US, October 1973

244.    3,780,246, US, December 1973

245.    3,873,796, US, March 1975

246.    3,952,239, US, April 1976

247.    3,953,696, US, April 1976

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

248.    3,971,906, US, July 1976

249.    4,002,874, US, January 1977

250.    4,016,490, US, April 1977

251.    4,062,282, US, December 1977

252.    4,107,484, US, August 1978

253.    4,135,068, US January 1979

254.    4,180,716, US, December 1979

255.    4,187,420, US, May 1980

256.    4,276,459, US, June1981

257.    4,277,666, US, July 1981

258.    4,349,814, US, September 1982

259.    4,423,844, US, January 1984

260.    4,449,062, US, May 1984

261.    4,471,915, US, September 1984

262.    4,510,860, US, April 1985

263.    4,549,097, US, October 1985

264.    4,598,182, US, July 1986

265.    4,619,407, US, October 1986

266.    4,664,317, US, May 1987

267.    4,706,895, US, November 1987

268.    4,709,197, US, November 1987

269.    4,751,603, US, June 1988

270.    4,771,359, US, September 1988

271.    4,824,029, US, April 1989

272.    4,893,027, US, January 1990

273.    4,900,881, US, February 1990

274.    4,934,494, US, June 1990

275.    4,947,009, US, August 1990

276.    4,970,355, US, November 1990

277.    4,978,817, US, December 1990

278.    4,982,058, US, January 1991

279.    5,037,033, US, August 1991

280.    5,044,270, US, September 1991

281.    5,140,235, US, August 1992

282.    5,167,374, US, December 1992

283.    5,236,138, US, August 1993

284.    5,310,259, US, May 1994

285.    5,346,342, US, September 1994

286.    5,486,669, US, January 1996

287.    5,561,279, US, October 1996

288.    5,577,600, US, November 1996

289.    5,638,261, US, June 1997

290.    5,638,945, US, June 1997

291.    5,662,280, US, September 1997

292.    5,775,605, US, July 1998

293.    5,969,312, US, October 1999

294.    6,057,518, US, May 2000

295.    6,082,643, US, July 2000

296.    6,091,035, US, July 2000

297.    6,153,838, US, November 2000

298.    6,212,052, US, April 2001

299.    6,288,350, US, September 2001

300.    6,340,124, US, January 2002

301.    6,340,802, US, January 2002

302.    6,375,102, US, April 2002

303.    6,538,218, US, March 2003

304.    6,629,654, US, October 2003

305.    6,753,490, US, June 2004

306.    6,759,609, US, July 2004

307.    6,861,598, US, March 2005

308.    RE030270, US, May 1980

309.    RE036250, US, July 1999

310.    2001/0030114, US, October 2001

311.    84003650, WO, September 1984

312.    91001860, WO, February 1991

313.    93006570, WO, April 1993

314.    94013441, WO, June 1994

315.    96013362, WO, June 1996

316.    98052728, WO, November 1998

317.    00048283, WO, August 2000

318.    0130655, WO, May 2001

319.    01/26064, WO, April 2001


**B.  L. R.3-3(b); Whether each item of prior art anticipates each asserted claim or renders it obvious as to the '096 patent.  If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified.**

Pursuant to L. R.3-3(b), Aurora identifies each item of anticipatory prior art as to each asserted claim.  Aurora takes a broad reading of the scope of the claim limitations only for purposes of this submittal and does not waive, disclaim, or exclude a narrower construction of the terms in the future.  Also, Aurora identifies each item of obviousness prior art and any

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

combination of prior art references that would render a claim obvious as to each such claim and the motivation to combine such references.

Aurora's application of L. R.3-3(b) is in light of the recent Supreme Court decision in the landmark obviousness case of KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742 (U.S. 2007) ("KSR") and subsequent Federal Circuit rulings.

KSR reaffirmed the obviousness investigation for not only the combination of prior art patents and printed publications, but also the general precepts of the obviousness inquiry. No longer is a rigid approach of the teaching, suggestion, or motivation to combine test the exclusive standard for sustaining obviousness as it relates to the combination of multiple prior art references.

Obviousness is determined from the perspective of a person of ordinary skill in the art at the time of the invention. Such a person is deemed to have a working knowledge of the field. This would extend to prior art patents as identified in these infringement contentions.

Such a person would understand the simplicity and desirability of including a proximity sensor with a paper shredder.

A person of ordinary skill in the art is a person of ordinary creativity, not an automaton, and would see the benefits of increasing the safety of a product. This person would also recognize the design incentives and market driven forces associated with improving the safety of a paper shredder

A person of such skill would also be familiar with proximity sensors such as capacitive sensors.

1.    **Anticipatory prior art as to the '096 patent.**

The following table identifies patents each of which anticipates every limitation, either expressly or inherently, of claims 1, 11, 14, 20, 27, 34, 40, 46, 48, 51, 53, 55, and 62 of the '096 patent:

| US6,079,645 | US4,545,537 | | | |
|---|---|---|---|---|

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

Aurora reserves the right to supplement and amend these contentions based on further investigation, construction of the claims by the Court, and modification of Fellowes' contentions.

**2.    References that render the claims of the '096 patent obvious.**

The following table identifies patents the combination of which renders claims 1, 11, 14, 20, 27, 34, 40, 46, 48, 51, 53, 55, and 62 of the '096 patent obvious:

| | | | |
|---|---|---|---|
| US1,525,590 | US1,825,223 | US3,312,794 | US3,619,537 |
| US3,724,766 | US3,764,819 | US3,829,850 | US3,860,180 |
| US3,869,238 | US3,947,734 | US3,991,944 | US4,018,392 |
| US4,044,532 | US4,068,805 | US4,082,232 | US4,125,228 |
| US4,172,400 | US4,187,420 | US4,194,698 | US4,352,980 |
| US4,420,863 | US4,471,915 | US4,562,971 | US4,673,136 |
| US4,683,381 | US4,693,428 | US4,713,509 | US4,767,895 |
| US4,784,601 | US4,784,602 | US4,821,967 | US4,839,533 |
| US4,859,172 | US4,882,458 | US4,910,365 | US4,944,462 |
| US5,045,658 | US5,065,947 | US5,081,406 | US5,100,067 |
| WO00048283 | US5,135,178 | US5,166,679 | US5,171,143 |
| US5,186,398 | US5,207,392 | US5,268,553 | US5,275,342 |
| US5,279,467 | US5,295,633 | US5,345,138 | US5,356,286 |
| US5,397,890 | US5,407,346 | US5,421,720 | US5,432,308 |
| US5,460,516 | US5,494,229 | US5,568,895 | US5,636,801 |
| US5,655,725 | US5,676,321 | US5,680,999 | US5,704,776 |
| US5,724,737 | USD393,607 | US5,775,605 | US5,788,476 |
| US5,829,697 | US5,829,963 | US5,850,342 | US5,868,242 |
| US5,884,855 | US RE 36,250 | US D412,716 | US5,942,975 |
| US5,988,542 | US6,065,696 | US6,079,645 | US6,082,644 |

| | | | |
|---|---|---|---|
| US6,089,482 | US6,247,828 | US D444,809 | US6,260,780 |
| US6,265,682 | US6,274,828 | US6,308,904 | US6,325,909 |
| US6,376,939 | US6,418,004 | US6,550,701 | US6,575,285 |
| US D 481,416 | US6,655,943 | US6,676,050 | US6,676,460 |
| US6,724,324 | US D494,607 | US6,775,018 | US6,779,747 |
| US D502,713 | US D502,714 | US 6,962,301 | US6,966,513 |
| US6,967,648 | US6,979,813 | US6,981,667 | US7,040,559 |
| US7,044,410 | US7,048,218 | US7,150,422 | US2004/0008122 |
| US2004/0194594 | US2004/0226800 | US2005/0132859 | US2005/0157203 |
| US2005/0166736 | US2005/0218250 | US2005/0274834 | 2005/0274836 |
| US2006/0091247 | US2006/0157600 | US2006/0169619 | US2006/0249609 |
| DE32 08 676 | DE33 13 232 | DE 32 47 299 | DE35 40 896 |
| DE78 18 838 | DE37 33 413 | DE86 19 856.4 | DE40 14 669 |
| DE41 21 330 | DE195 19 858 | DE199 60 267 | EP 0 511 535 |
| EP 0 736 886 | EP 0 855 221 | EP 1 195 202 | EP 1 069 954 |
| GB761607 | GB2096919 | GB2203063 | GB2234690 |
| JP52-11691 | JP57-76734 | JP04-157093 | JP04-180852 |
| JP4-110143 | JP5-68906 | JP5-123593 | JP6-277548 |
| JP7-136539 | JP7-155629 | JP7-299377 | JP7-328469 |
| JP8-1026 | JP9-262491 | JP10-34003 | JP11-216383 |
| JP2000-0346288 | JP2004-321993 | TW306323 | TW00139305 |
| TW282696 | TW84317868A01 | WO98/48937 | WO99/52638 |
| WO02/060588 | WO200/070553 | CN99208833 | CN99213588.5 |
| DE222515 | US6,877,410 | US2002/0066346 | US6,834,730 |
| US6,536,536 | US7,225,712 | US7,171,879 | US7,077,039 |
| WO0130655 | US7,228,772 | US7,290,472 | US7,210,383 |

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

| | | | |
|---|---|---|---|
| US7,197,969 | US7,137,326 | US6,857,345 | US6,826,988 |
| US2005/0039822 | US2004/0173430 | US2003/0090224 | US2003/0058121 |
| US2003/0037651 | US2002/0069734 | US2002/0059855 | US2002/0059854 |
| US2002/0056350 | US2002/0020263 | US2002/0020262 | US2002/0017183 |
| US2002/0017178 | US2002/0017176 | US6,997,090 | US2002/0017184 |
| US2004/0163514 | US7,284,467 | US2002/0017336 | US2002/0020261 |
| US2002/0017181 | US2003/0005588 | US6,813,983 | US2002/0059853 |
| US7,231,856 | US2002/0190581 | US2003/0019341 | US2002/0020265 |
| US2002/0017179 | US2003/0015253 | US2004/0040426 | US7,055,417 |
| US2002/0056348 | US2002/0056349 | US2003/0056853 | US6,880,440 |
| US6,920,814 | US6,922,153 | US6,945,148 | US6,945,149 |
| US6,957,601 | US6,994,004 | US7,000,514 | US7,024,975 |
| US7,093,668 | US7,098,800 | US7,100,483 | US7,121,358 |
| US7,308,843 | US7,328,752 | US2002/0170399 | US2002/0170400 |
| US2003/0002942 | US2005/0039586 | US3,629,530 | US3,728,501 |
| US3,769,473 | US3,780,246 | US3,873,796 | US3,952,239 |
| US3,953,696 | US3,971,906 | US4,002,874 | US4,016,490 |
| US4,062,282 | US4,107,484 | US4,135,068 | US4,180,716 |
| US4,187,420 | US4,276,459 | US4,277,666 | US4,349,814 |
| US4,423,844 | US4,449,062 | US4,471,915 | US4,510,860 |
| US4,549,097 | US4,598,182 | US4,619,407 | US4,664,317 |
| US4,706,895 | US4,709,197 | US4,751,603 | US4,771,359 |
| US4,824,029 | US4,893,027 | US4,900,881 | US4,934,494 |
| US4,947,009 | US4,970,355 | US4,978,817 | US4,982,058 |
| US5,037,033 | US5,044,270 | US5,140,235 | US5,167,374 |
| US5,236,138 | US5,310,259 | US5,346,342 | US5,486,669 |

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS

| US5,561,279 | US5,577,600 | US5,638,261 | US5,638,945 |
|---|---|---|---|
| US5,662,280 | US5,775,605 | US5,969,312 | US6,057,518 |
| US6,082,643 | US6,091,035 | US6,153,838 | US6,212,052 |
| US6,288,350 | US6,340,124 | US6,340,802 | US6,375,102 |
| US6,538,218 | US6,629,654 | US6,753,490 | US6,759,609 |
| US6,861,598 | US RE030270 | US RE036250 | US2001/0030114 |
| WO01/26064 | WO84003650 | WO91001860 | WO93006570 |
| WO94013441 | WO96013362 | WO98052728 | |

Any of the patents identified supra that anticipate claim 1 of the '096 patent provide a roadmap as to the elements a person of skill in the art would have known to use in developing the invention of a paper shredder having a proximity sensor. Such anticipating patents also provide the motivation to combine the elements identified infra as to any patents containing such elements. Motivation is also identified as explained in the KSR decision.

Each of the dependent claims of the '096 patent incorporate nothing more than elements known in the prior art performing their established function to achieve a predictable result. Under KSR such a combination of elements is obvious.

Claim 1 is obvious for, at least, the combination of United States Patent No. US6,079,645, US5,561,279, US5,577,600, and US5,638,261. A person of ordinary skill in the art would have recognized that using a switch that had a locking position in combination with a paper shredder would have been an obvious choice of prior art switches that performed nothing more than a known function in a predictable manner.

Claims 11, 14, 20, 27, 34, 40, 46, 48, 51, 53, 55, and 62 include limitations that are nothing more than exercising a design choice void of any novelty. Exhibit E identifies specific instances in the prior art that incorporate such limitations. Further, adding these limitation is nothing more than relying upon prior art elements to do nothing more than what they were designed to do to arrive at a predictable result. The claims are obvious.

The prior art was replete with instances of manual switches having a stop function being used to make potentially dangerous equipment safer. The implementation of such a switch known in the prior art to a paper shredder is merely applying an element according to its known function to potentially dangerous device – a paper shredder. This is obvious in light of KSR.

**C.    L. R.3-3(c); For the '096 patent, a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function.**

Pursuant to L.R. 3-3(c), Exhibit G is provided as an attachment identifying each element of the claims being anticipated by the prior art.

Pursuant to L.R. 3-3(c), Exhibit H is provided as an attachment identifying each element of the claims being rendered obvious by the prior art.

**D.   L. R.3-3(d); For the '096 patent, any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.**

Aurora presents Exhibit I, attached hereto, which specifically identifies where claim elements of the asserted claims of the '096 patent are indefinite, lack enablement, and/or lack written description under 35 U.S.C. § 112.

Aurora reserves the right to modify these charts by adding additional assertions of indefiniteness, lack of enablement, and/or lack of written description to the extent such modification is appropriate in light of any additional information gained through ongoing investigations or through discovery or in light of arguments made or positions taken by Fellowes. Aurora notes that these are initial invalidity contentions and, as such, Aurora is not limited to only the arguments made in said Exhibit.

Date:  <u>August 21 , 2008</u>                    Respectfully Submitted,

<u>/s/Franklin E. Gibbs</u>
Richard F. Cauley (SBN: 109194)
rcauley@whglawfirm.com
Franklin E. Gibbs (SBN: 189015)
fgibbs@whglawfirm.com
Regis A. Guerin (SBN 215170)
rguerin@whglawfirm.com
Erick P. Wolf (SBN: 224906)
ewolf@whglawfirm.com
**WANG, HARTMANN, GIBBS & CAULEY, P.C.**
A Professional Law Corporation
1301 Dove Street, Suite 1050
Newport Beach, CA  92660
Telephone:  (949) 833-8483
Facsimile:   (949) 833-2281

Karl R. Fink
krfink@fitcheven.com
Nicholas T. Peters
ntpete@fitcheven.com
**FITCH, EVEN, TABIN & FLANNERY**
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

*Counsel for Defendant,*
AURORA OFFICE EQUIPMENT, LTD.

AURORA'S PRELIMINARY INVALIDITY CONTENTIONS